Altman & Company P.C.
260 Madison Avenue, 22nd Floor
New York, New York 10016
(212) 683-7600

Attorneys for Plaintiff Praxi, LLC



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PRAXI, LLC,

          Plaintiff,

  -against-

CAP CANA, S.A., DEUTSCHE BANK A.G.,
and DEUTSCHE BANK SECURITIES INC.,

          Defendants.

---

07 Civ. 9727 (LTS)

**FIRST AMENDED
COMPLAINT**

JURY TRIAL
DEMANDED

Plaintiff Praxi, LLC, by its attorneys, Altman & Company P.C., for its Complaint, alleges as follows:

### INTRODUCTION

1. This is an action for breaches of, and tortious interference with, contract and fiduciary duties. In mid-2007 defendant Cap Cana, S.A. conducted a bidding process for the right to acquire and develop the "Las Iguanas" section of Cap Cana, S.A.'s beach-front resort in the Dominican Republic. Praxi worked with defendant Deutsche Bank in order to secure financing of up to $65,000,000 in order to support Praxi's bid and finance the acquisition of Las Iguanas. Praxi's bid of $85,000,000 prevailed.

2. Shortly after winning the bid, Praxi, at Cap Cana S.A.'s forceful request, entered into a joint venture with Cap Cana, S.A. to buy and develop Las Iguanas. Praxi and Cap Cana, S.A. were to contribute labor, expertise, and substantial sums of money to the venture. Consequently, Praxi expended money and effort to complete the purchase of the land, to finalize a financing arrangement with Deutsche Bank, and to obtain architects and others necessary to

exploit Las Iguanas. However, in September 2007, as Praxi was preparing to close on the purchase and financing transactions with Cap Cana, S.A. and Deutsche Bank, those defendants circumvented Praxi, cast aside the bidding process, and ceased working with Praxi in favor of a plan for Deutsche Bank, through its affiliate Deutsche Bank Securities, to finance Cap Cana's development of Las Iguanas together with other parts of the Cap Cana resort without Praxi in a $500 million debt offering. Cap Cana, S.A. effectively repudiated the joint venture in violation of its fiduciary and contractual duties to Praxi in favor of its new deal with Deutsche Bank and Deutschee Bank Securities.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as the plaintiff's state of citizenship (New Jersey) is diverse from those of the defendants (New York, Delaware, Germany, and the Dominican Republic) and the amount in controversy exceeds $1,000,000. Venue is proper here pursuant to 28 U.S.C. § 1391 because the defendants transact substantial business in this District, are subject to the jurisdiction of this Court, and a significant part of the events that give rise to Praxi's claims took place in the State of New York and in this District.

## PARTIES

4. Praxi, LLC is a limited liability company formed and existing pursuant to the laws of the State of Delaware with an office, and its principal place of business, located in the City, County, and State of New York. Praxi's two members are domiciliaries and citizens of the State of New Jersey.

5. Defendant Cap Cana, S.A. is a corporation formed and existing pursuant to the laws of the Dominican Republic with a principal place of business located in Santo Domingo, D.R. It is engaged in the business of developing and operating resort properties in the Dominican Republic and marketing them primarily to individuals in the United States including citizens of New York State. Cap Cana, S.A. has obtained, and is in the process of obtaining, most of its

funding for its Cap Cana resort from sources located in the City, County, and State of New York including Bear Stearns and/or Deutsche Bank Securities.

6. Defendant Deutsche Bank A.G. ("Deutsche Bank") is a corporation formed and existing pursuant to the laws of Germany with its principal place of business located in Frankfurt, Germany. Deutsche Bank maintains substantial offices in the City, County, and State of New York and derives tremendous revenues from business that it conducts through personnel located at those offices. As stated herein, Praxi's claims against Deutsche Bank arise from conduct of Deutsche Bank agents located in New York and which in large part took place here.

7. Defendant Deutsche Bank Securities Inc. ("Deutsche Bank Securities") is a Delaware corporation with its principal offices located in the State, City, and County of New York. Deutsche Bank Securities is a FINRA member broker-dealer and investment banking firm. On information and belief, Deutsche Bank Securities is the United States investment banking and securities arm of Deutsche Bank A.G.

## FACTS

8. Prior to the events described herein, Cap Cana S.A. obtained title to large parcels of undeveloped beachfront land located in La Altagracia Province, Dominican Republic. It began developing some of that land itself and planned to continue development of golf courses, hotels, apartment units, and other amenities in a resort called "Cap Cana." However, it also expressed an interest in selling some of the land in the Cap Cana resort to others to develop.

**Praxi Wins Bid to Develop Las Iguanas**

9. In the spring of 2007, Cap Cana S.A. requested bids for the purchase of a portion of the Cap Cana resort that it named "Las Iguanas," which the winning bidder was to develop. Las Iguanas was to include residential apartments having up to 1,100 bedrooms and possibly also a hotel and a commercial zone. As set forth in Cap Cana, S.A.'s bid request document, each bidder was required to deposit $1,000,000 into an escrow account administered for it by a company called Stewart Title Dominicana. In that document, Cap Cana S.A. also

stated that Las Iguanas would be awarded to the bidder with the offer having the highest present value in excess of $70,000,000. The winning bidder would thereafter have thirty days to complete a formal contract with Cap Cana S.A. for the acquisition of Las Iguanas.

10. Praxi learned of the Las Iguanas opportunity and formed a wholly-owned subsidiary, Praxi Caribbean Realty Partners, LLC ("Praxi Caribbean"), to exploit it. Praxi then prepared to submit a bid. A significant part of Praxi's preparation consisted of securing financing for the project. Praxi approached Deutsche Bank, through its New York City offices, in order to obtain that financing. Deutsche Bank expressed a keen interest in financing the project and assured Praxi that it would work in good faith toward a definitive financing arrangement if Praxi was the bid winner. In support of Praxi's bid, Deutsche Bank delivered to Praxi a June 7, 2007 "Mandate Letter" in which it represented that it and/or its affiliates would "work with" Praxi Caribbean and its current and future affiliates and members to provide a $65,000,000 loan to it, and a June 8, 2007 letter in which Deutsche Bank represented that it was "highly interested" in providing that financing. The Mandate Letter required Praxi and its affiliates to use Deutsche Bank exclusively to finance the proposed Las Iguanas transaction for a period of at least six months from the date of the letter.

11. In June 2007, Praxi submitted a bid of $85,000,000 to Cap Cana, S.A. for Las Iguanas and was declared the bid winner. Within minutes of declaring Praxi the winning bidder, Cap Cana, S.A. communicated its desire to participate with Praxi in the project and to own fifteen percent of the corporation that would own the land and improvements. Later its representatives stated that Cap Cana, S.A. or the families that controlled it wanted to own twenty-five percent of the project. In the meantime Praxi, largely from New York, attempted to consummate a final acquisition agreement with Cap Cana, S.A. and to finalize a financing agreement with Deutsche Bank. Recognizing the impracticality of completing the final agreement with Praxi in thirty days, Cap Cana, S.A. extended the deadline several times. As Praxi, Cap Cana, S.A., and Deutsche Bank understood, finalization of the purchase and sales

agreement depended on the financing that Praxi was working with Deutsche Bank to consummate.

**The Praxi/Cap Cana, S.A. Joint Venture**

12. In or about early August 2007, Cap Cana, S.A. and Praxi agreed to the terms pursuant to which they would own and develop the Las Iguanas project together and share in its profits and losses. Pursuant to that agreement, Praxi was to form a Dominican Republic corporation, which was to enter into the contract with Cap Cana, S.A. for the acquisition of Las Iguanas in Praxi Carribbean's stead. Praxi therefore formed a Dominican corporation called Puerto de Alma, S.A. for that purpose. Praxi and Cap Cana S.A. agreed that twenty-five percent of Puerto de Alma's stock would be issued to Cap Cana, S.A. Puerto de Alma was to pay the $85,000,000 purchase price for Las Iguanas in two installments, in the amounts of $40,000,000 and $45,000,000, respectively. However, Cap Cana, S.A. would pay one quarter of the purchase price, or $21,250,000, as it was paid to the seller (Cap Cana, S.A. itself). Therefore Cap Cana, S.A. was to contribute $10,000,000 of the first $40,000,000 and $11,250,000 of the last $45,000,000, or a total of $21,250,000. Praxi was to contribute the remainder from moneys it would raise.

13. Pursuant to the terms of their agreement, Cap Cana, S.A. would receive twenty-five percent of the profits generated from Las Iguanas and stood to lose the value of its efforts as well as the pro rata share of its capital contributions if the project were not successful. Praxi would absorb the remainder of the profits and losses with adjustments for interests that it might sell to others.

14. Praxi and Cap Cana, S.A. also agreed that they would share management of their Las Iguanas joint venture, including the design, construction, marketing, maintenance, and sales of apartments and other improvements there. Praxi agreed to take ultimate responsibility for those matters in consultation with Cap Cana, S.A., which agreed to provide advice and expertise to Praxi regarding them. Praxi would participate from New York, which was to be the

situs of most of Las Iguanas' marketing efforts and the place from which Praxi would oversee the retention of architects, financiers (i.e., Deutsche Bank), and other necessary service providers. Both Praxi and Cap Cana, S.A. agreed to use their best efforts to obtain financing for the purchase and development of Las Iguanas. Recognizing that obtaining financing was the most immediate critical task that they faced and the only substantial remaining predicate to finalizing the purchase and sale agreement, they agreed to work together to secure that financing from Deutsche Bank.

15. Praxi continued to work with Deutsche Bank in the summer of 2007 in order to reach a definitive financing agreement. Due to the exclusivity provision in the Deutsche Bank "Mandate Letter," Praxi did not approach others to seek financing. Its representatives also communicated with appraisers, architects, interior designers, construction companies, and realtors regarding the project. Cap Cana, S.A., in consultation with Praxi, created a business plan for Las Iguanas. Deutsche Bank, with the assistance of those joint venturers, created the financial projections that were included in that plan. Accordingly, in reliance on Cap Cana's promises, Praxi expended substantial efforts and funds in furtherance of its venture with Cap Cana, S.A.

**Cap Cana, S.A. and**
**<u>Deutsche Bank Betray Praxi</u>**

16. In August or early September 2007, Cap Cana, S.A. and Deutsche Bank, while still purporting to work with Praxi, agreed to circumvent Praxi and to do business directly with each other (and with Deutsche Bank affiliate Deutsche Bank Securities) to the exclusion of Praxi. Ignoring its agreement with Praxi, Cap Cana, S.A. terminated discussions regarding the purchase and sale agreement on the purported basis that it and Praxi had not timely finalized that transaction. It did so notwithstanding Cap Cana, S.A.'s recent assurances to Praxi that it was working toward the final purchase agreement and the fact that Cap Cana, S.A. and Deutsche Bank were largely responsible for any delays in finalizing that agreement.

17. Subsequently, Cap Cana, S.A. demanded that Praxi agree to release it from

the bid contracting process. It threatened that it would otherwise keep Praxi's $1,000,000 deposit, which Praxi had procured from another corporation whose owners had links to family members of one of Praxi's members. As of the date of this complaint, Cap Cana, S.A. on information and belief continues to retain that deposit.

**FIRST CLAIM FOR RELIEF**
**FOR BREACH OF CONTRACT**
(Against Cap Cana, S.A.)

18. Praxi incorporates by reference the allegations set forth in paragraphs 1 through 17 of this complaint.

19. As described herein, Praxi was the winning bidder for the purchase and development of Las Iguanas. It and Cap Cana, S.A. thereafter entered into a joint venture agreement to develop Las Iguanas. However, Cap Cana, S.A. later, among other things, stated to Praxi that it would in fact not sell Las Iguanas to Praxi or its affiliate Puerto de Alma, ceased discussions regarding the pending purchase and sale agreement, and demanded that Praxi release it from the bid process. It also took other steps to exclude Praxi from development of Las Iguanas, including negotiating with Deutsche Bank and Deutsche Bank Securities to finance development of Las Iguanas together with other parts of the Cap Cana resort without Praxi specifically including Las Iguanas in a $500 million debt financing in which Deutsche Bank Securities (with Morgan Stanley & Company Incorporated) is the Joint Bookrunner and Co-Lead Manager.

20. By reason of the foregoing breaches of contract, Praxi suffered damages in an amount to be determined at trial, but which is on information and belief in excess of $200,000,000, for which Cap Cana is liable to Praxi.

**SECOND CLAIM FOR RELIEF**
**FOR BREACH OF FIDUCIARY DUTIES**
(Against Cap Cana, S.A.)

21. Praxi incorporates by reference the allegations set forth in paragraphs 1 through 20 of this Complaint.

22. As Praxi's joint venturer, Cap Cana, S.A. owed fiduciary duties to Praxi in connection with the development of Las Iguanas. Cap Cana, S.A. breached those fiduciary duties by secretly negotiating with Deutsche Bank, Deutsche Bank Securities, and others to circumvent Praxi and finance the development of Las Iguanas without Praxi, abruptly abandoning the venture, ceasing discussions regarding the pending purchase and sale agreement, demanding that Praxi release it from its bid process, and proceeding with the $500 million debt financing with Deutsche Bank Securities to finance the development of Las Iguanas together with other parts of the Cap Cana resort without Praxi's participation.

23. Praxi suffered damages in an amount to be determined at trial, but which is on information and belief in excess of $200,000,000, by reason of the foregoing breaches of fiduciary duties, for which Cap Cana is liable to Praxi.

### THIRD CLAIM FOR RELIEF
### FOR PROMISSORY ESTOPPEL
### (In the Alternative, Against Cap Cana, S.A.)

24. Praxi incorporates by reference the allegations set forth in paragraphs 1 through 23 of this Complaint.

25. Cap Cana, S.A. declared Praxi the winning bidder and promised to develop Las Iguanas with Praxi. Praxi reasonably and foreseeably relied on Cap Cana, S.A.'s promises to its detriment by spending substantial time, effort, and money to exploit that opportunity, including payment of architects and others. Praxi thereby suffered damages in an amount in excess of $500,000, including but not limited to monies spent and incurred for lawyers (more than $65,000), architects (more than $20,000), travel (more than $40,000) and other expenses (more than $30,000) relating to the Las Igaunas project.

26. In consequence of the foregoing, Cap Cana, S.A. is liable to Praxi under a promissory estoppel theory for an amount in excess of $500,000.

## FOURTH CLAIM FOR RELIEF
## FOR TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Deutsche Bank and Deutsche Bank Securities)

27. Praxi incorporates by reference the allegations set forth in paragraphs 1 through 26 of this Complaint.

28. As described above, Praxi won the bid to own and develop Las Iguanas, entered into a joint venture agreement with Cap Cana, S.A. to share in the development of that subdivision, and enlisted Deutsche Bank to finance the acquisition of the property on which Las Iguanas was to be built, all of which was well known to Deutsche Bank and Deutsche Bank Securities. Nonetheless, instead of undertaking the financing it purported to be negotiating with Praxi, Deutsche Bank and Deutsche Bank Securities intentionally persuaded, and thereby induced, Cap Cana, S.A. to abrogate the bid process and breach the joint venture agreement by circumventing Praxi and developing the Cap Cana resort, including Las Iguanas, to the exclusion of Praxi.

29. In consequence of Deutsche Bank's and Deutsche Bank Securities' tortious interference with Praxi's agreement with Cap Cana, S.A., Praxi has been damaged in an amount to be determined at trial but which is on information and belief in excess of $200,000,000.

## FIFTH CLAIM FOR RELIEF
## FOR TORTIOUS INTERFERENCE WITH FIDUCIARY DUTIES
### (Against Deutsche Bank and Deutsche Bank Securities)

30. Praxi incorporates by reference the allegations set forth in paragraphs 1 through 29 of this Complaint.

31. As described above, Cap Cana, S.A. owed Praxi fiduciary duties in the conduct of their joint venture agreement to share in the development of Las Iguanas. Deutsche Bank and Deutsche Bank Securities, with knowledge of Cap Cana, S.A.'s relationship with Praxi, intentionally induced Cap Cana, S.A. to violate its duties to Praxi and participated with Cap Cana, S.A. in its breach of trust by circumventing Praxi and directly financing Cap Cana's development of Las Iguanas without Praxi.

32. In consequence of Deutsche Bank's and Deutsche Bank Securities' tortious interference with Cap Cana, S.A.'s fiduciary duties to Praxi, Praxi has been damaged in an amount to be determined at trial but which is on information and belief in excess of $200,000,000.

WHEREFORE, plaintiff Praxi, LLC prays for judgment in amounts to be determined at trial but which are believed to total in excess of $200,000,000.

### JURY TRIAL DEMANDED

Praxi, LLC hereby demands a trial by jury of all issues so triable in this action.

New York, New York
November 7, 2007

ALTMAN & COMPANY P.C.

By: _____
Steven Altman (SA-5405)
260 Madison Avenue, 22nd Floor
New York, New York 10016
(212) 683-7600

Attorneys for Plaintiff Praxi, LLC