UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRAXI, LLC,<br><br>       Plaintiff,<br><br>    -against-<br><br>CAP CANA, S.A., DEUTSCHE BANK A.G., and DEUTSCHE BANK SECURITIES INC.,<br><br>       Defendants. | **ECF Case**<br><br>Case No. 07 Civ. 9727 (LTS) |

### DECLARATION OF PATRICK J. SMITH IN SUPPORT OF THE DEUTSCHE BANK DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

I, Patrick J. Smith, hereby declare as follows:

1. I am an attorney duly licensed to practice law in the State of New York and am a member of the law firm of Thacher Proffitt & Wood LLP, counsel for defendants Deutsche Bank A.G. and Deutsche Bank Securities Inc. in this action.

2. Attached hereto as Exhibit A is a true and correct copy of a letter, entitled "Senior Secured Financing Mandate Letter," sent from Deutsche Bank A.G. to Praxi Caribbean Realty Partners, LLC, dated June 7, 2007.

3. Attached hereto as Exhibit B is a true and correct copy of a letter, entitled "Acquisition Financing – Highly Interested Letter," sent from Deutsche Bank A.G. to Praxi Caribbean Realty Partners, LLC, dated June 8, 2007.

4. These documents are referenced in Paragraph 10 of the First Amended Complaint in this action.

2

5. I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated: New York, New York
February 7, 2008

        /s/ Patrick J. Smith
        Patrick J. Smith

Case 1:07-cv-09727-LTS    Document 14    Filed 02/07/2008    Page 2 of 16

**EXHIBIT A**

Case 1:07-cv-09727-LTS   Document 14   Filed 02/07/2008   Page 3 of 16

DEUTSCHE BANK AG, LONDON BRANCH
1 Great Winchester Street
Winchester House
London EC2N 2DB
United Kingdom

June 7, 2007

Praxi Caribbean Realty Partners, LLC
60 East 42 Street
New York, NY

Senior Secured Financing
Mandate Letter

Ladies and Gentlemen:

Deutsche Bank AG, London Branch (together with its affiliates, "DB" or "us") is pleased to work with Praxi Caribbean Realty Partners, LLC and its members and its present and future subsidiaries (and any successor thereto) (collectively, "Praxi" or "you") to provide a senior secured term loan of up to US$65,000,000 (the "Senior Financing") to support the acquisition of the approximately 280,000 square meters parcel of land within the Cap Cana Project in Cap Cana Dominican Republic and the development and construction of the Las Iguanas Residential Condominiums thereon, on terms to be mutually agreed upon by DB and you (the "Proposed Transaction"). Indicative Terms and Conditions with respect to the Senior Financing are attached hereto (the "Term Sheet").

You hereby confirm the exclusive engagement of DB to provide the Senior Financing in connection with the Proposed Transaction upon the terms and subject to the conditions set forth or referred to in this Mandate Letter. In addition, you hereby agree that DB shall be the only party appointed to carry out the services relating to the Senior Financing and that you will not engage or utilize (in each case directly or indirectly) any other party with a view toward obtaining alternative debt financing for use in connection with the Proposed Transaction until six (6) months from the date hereof (the "Exclusivity Period"); provided that, notwithstanding the preceding two sentences, Praxi's obligations and liabilities to pay fees and expenses accrued hereunder through the end of the Exclusivity Period and any obligations and liabilities for indemnification, reimbursement and contribution hereof will, in each case, continue in the event of any such termination of the Exclusivity Period in accordance with their terms.

You also agree that, should you obtain the Senior Financing in whole or in part through any other means, including without limitation a public or private issuance of debt, equity or convertible securities or warrants or rights to receive any of the foregoing, or any other incurrence of debt, or should Praxi issue any debt, equity or convertible securities or any warrants or rights to receive any of the foregoing at any time prior to the date that is thirty (30) months from the date of the issuance of the Senior Financing (the "ROFL Period"), DB shall be given a right of first look to present a proposal to act as underwriter, placement agent, initial

purchaser, arranger, bookrunner or the like for any such issuance. If Praxi decides not to accept DB's proposal after a good faith consideration thereof, Praxi may mandate or engage a financial institution other than DB to provide or arrange such issuance or incurrence on terms and conditions that, taken as a whole, are more favorable in all material respects than those proposed by DB; provided that DB shall have the right to participate in such issuance or incurrence on the same terms and conditions provided by such financial institution in an amount to be agreed at a co-manager level (or equivalent level of participation) or better. DB shall have 30 days, after prior written notice by Praxi of such proposed engagement and the price and other terms and conditions thereof, to determine whether it wishes to act in such capacity.

As consideration for DB's commitment and agreements related to the Senior Financing, you also agree to pay to DB for its own account, certain commitment and structuring fees agreed to in writing on or prior to the date of execution and delivery of the definitive documentation with respect to the Senior Financing (the "Fee Letter"); provided, that failure to execute and deliver a Fee Letter shall not discharge you from your other obligations provided for herein. In addition, you hereby agree, whether or not the Senior Financing is consummated, to reimburse DB and its affiliates on demand for their out-of-pocket expenses (including due diligence expenses, expenses related to funding and/or hedging arrangements, travel expenses, and fees, charges and disbursements of counsel and consultants including third party appraisers, environmental consultants, engineering consultants and surveyors) incurred in connection with DB's engagement hereunder to provide the Senior Financing and any due diligence related documentation or other expenses incurred in connection therewith. In connection therewith, on the date hereof, you agree to fund US$250,000 to the account of Praxi to be held in trust by DB (the "Expense Account") for the reimbursement of the above expenses. In addition, DB shall have the right to charge to and set off against the Expense Account and/or any other account(s) established with DB in connection with the Senior Financing any and all amounts owed by you hereunder.

This Mandate Letter (and your rights and obligations hereunder) shall not be assignable by you to any person or entity without the prior written consent of DB (and any purported assignment without such consent shall be null and void). This Mandate Letter may not be amended or modified, or any provision hereof waived, except by an instrument in writing signed by you and DB. This Mandate Letter may be executed in any number of counterparts, each of which shall be an original and all of which, when taken together, shall constitute one agreement. Delivery of an executed signature page of this letter by facsimile transmission shall be effective as delivery of a manually executed counterpart hereof. This Mandate Letter shall be governed by, and construed in accordance with, the laws of the State of New York. This Mandate Letter sets forth the entire agreement between the parties hereto as to the matters set forth herein and supersedes all prior communications, written or oral, with respect to the matters herein. This Mandate Letter is intended to be solely for the benefit of the parties hereto and is not intended to confer any benefits upon, or create any rights in favor of, any person or entity other than the parties hereto and may not be relied upon by any person or entity other than you.

You will furnish to DB such information, including information about Praxi, as DB reasonably requests in connection with the Senior Financing (all such information so

furnished is referred to herein as the "Information"). You understand and agree that DB will use and rely upon the Information in connection with the Senior Financing and that DB does not assume responsibility for independent verification of any information considered by DB in connection with the Senior Financing; provided that DB shall not be permitted to rely on any publicly available information unless Praxi informs DB that it is reliable. With respect to any financial forecasts and projections made available to DB by Praxi and used by DB in its analysis, DB shall be entitled to assume that such forecasts and projections have been prepared on bases reflecting the best currently available estimates and judgments of the management of Praxi as to the matters covered thereby.

Expenses and other amounts payable pursuant to this Mandate Letter and the Fee Letter shall be paid in United States dollars, free and clear of, and without deduction or withholding on account of, taxes of any kind. If any such taxes are so levied or imposed, you agree to pay the full amount of such taxes, and such additional amounts as may be necessary so that every net payment of all amounts due hereunder, after withholding or deduction for or on account of any such taxes, will not be less than the amount provided for herein. You will furnish to DB within thirty days after the date the payment of any taxes is due pursuant to applicable law, certified copies of tax receipts evidencing such payment by you. You will indemnify and hold harmless DB against and reimburse DB upon demand the amount of any such taxes so levied or imposed and paid by DB.

You agree to indemnify and hold harmless DB and its affiliates (and their respective control persons, directors, officers and employees) to the full extent lawful against any and all claims, losses, damages, liabilities, costs and expenses as incurred (including all fees and disbursements of counsel and all travel and other out-of-pocket expenses incurred in connection with investigation of, preparation for and defense of any pending or threatened claim and any litigation or other proceeding arising therefrom, whether or not in connection with pending or threatened litigation in which DB or any other indemnified person is a party) arising out of or related to the Senior Financing or DB's engagement hereunder; provided, however, there shall be excluded from such indemnification any such claims, losses, damages, liabilities, costs or expenses that arise primarily out of or are based primarily upon any action or failure to act by DB, other than an action or failure to act undertaken at the request or with the consent of Praxi, that is found in a final judicial determination (or a settlement tantamount thereto) to constitute bad faith, willful misconduct or gross negligence on the part of DB. In the event that the foregoing indemnity is unavailable or insufficient to hold DB and other indemnified parties harmless, then Praxi shall contribute to amounts paid or payable by DB and other indemnified parties in respect of such claims, losses, damages, liabilities, costs and expenses in such proportion as appropriately reflects the relative benefits received by, and, if applicable law does not permit allocation solely on the basis of benefits, fault of, Praxi and DB in connection with the matters as to which such claims, losses, damages, liabilities, costs and expenses relate and other equitable considerations, subject to the limitation that in any event DB's aggregate contributions in respect of such claims, losses, damages, liabilities, costs and expenses will not exceed the amount of fees actually received by DB pursuant to this Mandate Letter and the Fee Letter. For purposes hereof, relative benefits to Praxi and DB of the Proposed Transaction shall be deemed to be in the same proportion that the total value paid or contemplated to be paid by Praxi and/or

its security holders in connection with the Proposed Transaction bears to the fees paid to DB pursuant to its engagement in respect of the Senior Financing.

Praxi will not, without the prior written consent of DB, settle any litigation relating to DB's engagement hereunder unless such settlement includes an express, complete and unconditional release of DB and its affiliates (and their respective control persons, directors, officers, employees and agents) with respect to all claims asserted in such litigation or relating to DB's engagement hereunder; such release to be set forth in an instrument signed by all parties to such settlement.

Each of the parties hereto hereby waives any right to trial by jury with respect to any claim, action, suit or proceeding arising out of or contemplated by this Mandate Letter or the Fee Letter. You hereby irrevocably submit to the non-exclusive jurisdiction of the federal and New York state courts located in the county of New York in connection with any dispute or proceeding arising out of or relating to this Mandate Letter, the Fee Letter or any matters contemplated hereby or thereby, agree not to commence any suit, action or proceeding relating thereto except in such courts, and waive, to the fullest extent permitted by law, the right to move to dismiss or transfer any action brought in such court on the basis of any objection to personal jurisdiction or venue. You hereby irrevocably consent to the service of process in any such proceeding by the mailing of copies of such process to you at your address set forth above. Your obligation in respect of any sum due from you hereunder or under the Fee Letter to DB shall, notwithstanding any judgment in any other currency, be discharged only to the extent that on the business day following receipt by DB of any sum judged to be so due in such other currency, DB may in accordance with normal banking procedure purchase United States dollars with such other currency; if the United States dollars so purchased are less than the sum originally due to DB in United States dollars, you agree, as a separate obligation, and notwithstanding any such judgment, to indemnify DB against such loss. To the extent that you have or hereafter may acquire any immunity from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to yourself or your property, you hereby irrevocably waive such immunity in respect of your obligations under this Mandate Letter and the Fee Letter.

This Mandate Letter and the Fee Letter and their contents constitute confidential information and may not be disclosed by you to any person without our prior written consent. You agree that you will not file in any public record or otherwise publicly disclose this Mandate Letter or the Fee Letter or the contents hereof or thereof.

In the event of consummation of the Senior Financing, DB shall have the right, at its own expense, to disclose its participation in the Senior Financing, including, without limitation, the placement of "tombstone" advertisements in financial and other newspapers and journals subject to Praxi's prior approval of the contents of such disclosure, such approval not to be unreasonably withheld. DB acknowledges that Praxi may have business reasons to maintain confidentiality about the consummation of the Senior Financing for an extended period beyond the date of such consummation. DB agrees that Praxi shall have the right to announce publicly the execution of this Mandate Letter with DB subject to DB's prior approval of the contents of such announcement, such approval not to be unreasonably withheld.

JUN 08 2007 18:16 FR DEUTSCHE BANK          212 797 4442 TO 917323802615         P.05/09

Praxi acknowledges that DB and its affiliates may have and may continue to have investment banking, financial advisory and other relationships with parties other than Praxi pursuant to which DB may acquire information of interest to Praxi. DB shall have no obligation to disclose such information to Praxi.

DB and its affiliates are engaged in securities trading and brokerage activities as well as investment banking and financial advisory services. In the ordinary course of their trading and brokerage activities, DB and its affiliates may hold positions, for their own account or the account of customers, in equity, debt or other securities of Praxi or any other company that may be involved in the Proposed Transaction.

In order to comply with the USA Patriot Act, DB must obtain, verify and record information that identifies each entity (or individual) that enters into a business relationship with DB. As a result, in addition to Praxi's corporate name and address, DB will obtain Praxi's corporate tax identification number and certain other information.

DB and you acknowledge that the Term Sheet is being provided for informational purposes only and neither party hereto shall be under any legal obligation of any kind whatsoever with respect to consummating the Senior Financing by virtue of this Mandate Letter. This letter does not create any fiduciary relationship between DB and you. Furthermore, this letter is not intended to and does not create a partnership, joint venture or any other business combination between the parties hereto. This letter does not constitute a commitment or promise by either party to proceed with the Senior Financing or provide any funds in connection therewith. If the parties do elect to proceed with the Senior Financing, all agreements, representations, warranties, covenants and conditions with respect thereto will be set forth in separate, mutually acceptable, written agreement(s). The obligations contained in this letter shall remain in full force and effect regardless of whether definitive documentation shall be executed and delivered or the Senior Financing is consummated.

If you are in agreement with the foregoing, please sign and return to DB the enclosed copy of this Mandate Letter no later than 5:00 p.m., New York time, on June 8, 2007. Unless this Mandate Letter is signed and returned by the time and date provided in the immediately preceding sentence, this Mandate Letter shall terminate at such time and date.

Very truly yours,

DEUTSCHE BANK AG, LONDON BRANCH

By: _____
Name:  BARBON
Title:

By: _____
Name:  Scaminaci
Title:

Accepted and agreed to this
___ day of June, 2007:

PRAXI CARIBBEAN REALTY
PARTNERS, LLC

By: _____
Name: Durian Pah
Title: Managing Director

# LAS IGUANAS, CAP CANA
# INDICATIVE TERMS AND CONDITIONS

### June 7, 2007

*The indicative terms and conditions set forth serve as a description of the economic characteristics of the transaction. This term sheet is for informational purposes only and does not constitute a commitment for Deutsche Bank or any of its affiliates to enter into the transaction. Completion of the transaction is subject to satisfactory due diligence and all Deutsche Bank's internal approvals, including legal, credit, tax and other relevant internal approvals.*

## US$65,000,000 – 4 Year Senior Secured Term Loan

| | |
|---|---|
| **Transaction** | Senior secured loan ("**DB Loan**") for the purpose of (i) financing the acquisition ("**Acquisition**") of a portion of land of approximately 280,000 square meters that is within the Cap Cana project in Cap Cana, Dominican Republic and (ii) developing and constructing ("**Project Development**") residential condominiums ("**Las Iguanas**"). Security in the loan will include a pledge over the equity interests of the Borrower and a first priority lien on all assets and real estate of the Borrower. |
| **Borrower** | A company that acquires the land and will develop and construct residential condominiums thereon. |
| **Lender** | Deutsche Bank AG, London Branch (or any of its affiliates) ("**DB**"). |
| **Loan Amount** | Up to US$65,000,000. |
| **Availability Period** | The DB Loan may be drawn down in two installments:<br><br>- On the Closing Date: a minimum of $50,000,000 of the Loan Amount must be drawn to finance the Acquisition.<br><br>- From the Closing Date to a date TBD ("**Availability Termination Date**"): the remaining balance may be drawn, subject to the completion of certain milestones. |
| **Maturity** | 4 years from Closing Date. |
| **Amortization** | TBD based on final business plan of the Borrower. |
| **Indicative Pricing** | 3-months US$ Libor plus 550 basis points, subject to market conditions. |
| **Structuring Fee** | 2.5% of Loan Amount. |
| **Commitment Fee** | Calculated based on the undrawn Loan Amount after the Closing Date until the Availability Termination Date at a rate to be determined by DB. |
| **Closing Date** | TBD. |
| **Collateral** | The DB Loan will be secured by a pledge over the equity interests of the Borrower and a first priority lien on all assets and real estate of the Borrower. |

This document has been prepared by Deutsche Bank AG for information or discussion purposes only and shall not be construed as and does not form part of an offer, nor an invitation to offer, nor a solicitation or recommendation to enter into any transaction, nor is it an official or unofficial confirmation of terms. Although the indicative information set forth herein is reflective of terms, as of the date of this communication, under which we believe an issuance of securities or other transactions might be structured, no assurance can be given that such an issuance or transaction could in fact be executed. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial advisor nor in a fiduciary capacity in respect of the proposed transaction, including the securities or other obligations referred to herein, or any other transaction with you unless otherwise expressly agreed by us in writing. Also no representation is made concerning the tax implications in any applicable jurisdiction of this proposed transaction involving the securities or other obligations referred to herein and we are not advising you in respect of the tax implications. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in light of your own objectives and circumstances, including the possible risks and benefits of entering into such a transaction and also the tax implications of entering into this proposed transaction, including seeking tax advice in any applicable jurisdiction. Reference must be made to the official offering or other transaction documents or official trade confirmation for definitive information with respect to any indicative offering or transaction described herein.

# LAS IGUANAS, CAP CANA
## INDICATIVE TERMS AND CONDITIONS

### June 7, 2007

**US$65,000,000 – 4 Year Senior Secured Term Loan**

| | |
|---|---|
| **Debt Service/ Working Capital Reserve Account** | A Reserve Account ("**DSRA**") will be established at a bank offshore to be determined by DB and funded on the Closing Date with a minimum of 50% of the equity contribution. Funds will be used to (i) pay interest expense during a period to be determined and (ii) finance working capital requirements for the Project Development. |
| **Optional Prepayment** | The DB Loan may not be prepaid during the first 2 years from the Closing Date. Thereafter, the DB Loan may be prepaid in whole or in part at par. |
| **Reps & Warranties** | Standard representations and warranties usual and customary for a transaction of this nature. |
| **Covenants** | Information, financial and operational covenants usual and customary for a transaction of this nature. |
| **Construction Monitoring** | A construction consulting firm acceptable to DB will be appointed for the purpose of (i) certifying the construction plan, specifications, milestones and budget, and (ii) monitoring the ongoing construction of the residential condominiums at Las Iguanas. |
| **Warrants** | Lender will receive on the Closing Date zero-strike warrants, which will be convertible at any time after the Closing Date at the option of the Lender into the following aggregate amounts of equity of the Borrower on a fully diluted basis: |

| Before Month 39 | Month 40 – Month 48 |
|---|---|
| 12.5% | 15.0% |

| | |
|---|---|
| **Events of Default** | Events of Default usual and customary for a transaction of this nature and consistent with market practice. |
| **Conditions Precedent** | Any financing by DB would be subject, but not limited, to: |
| | - Review of sale and purchase agreement with Cap Cana with respect to the Acquisition; |
| | - Satisfactory Business Plan, project design and marketing strategy with respect to the Project Development; |
| | - Adequate insurance provisions, including hurricane insurance; and |
| | - DB's internal approvals, due diligence and documentation satisfactory to DB, and lack of material adverse change. |
| **Transferability** | The Lender may freely transfer, syndicate, repackage, sub-participate or hedge its rights and obligations under the DB Loan without restriction. |
| **Transaction expenses** | All expenses relating to the proposed Transaction, including legal, third party advisory, and travel expenses, will be borne by the Borrower. |

This document has been prepared by Deutsche Bank AG for information or discussion purposes only and shall not be construed as and does not form part of an offer, nor an invitation to offer, nor a solicitation or recommendation to enter into any transaction, nor is it an official or unofficial confirmation of terms. Although the indicative information set forth herein is reflective of terms, as of the date of this communication, under which we believe an issuance of securities or other transactions might be structured, no assurance can be given that such an issuance or transaction could in fact be executed. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser nor in a fiduciary capacity in respect of the proposed transaction, including the securities or other obligations referred to herein, or any other transaction with you unless otherwise expressly agreed by us in writing. Also no representation is made concerning the tax implications in any applicable jurisdiction of this proposed transaction involving the securities or other obligations referred to herein and we are not advising you in respect of the tax implications. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in light of your own objectives and circumstances, including the possible risks and benefits of entering into such a transaction and also the tax implications of entering into this proposed transaction, including seeking tax advice in any applicable jurisdiction. Reference must be made to the official offering or other transaction documents or official trade confirmation for definitive information with respect to any indicative offering or transaction described herein.

## LAS IGUANAS, CAP CANA
## INDICATIVE TERMS AND CONDITIONS

### June 7, 2007

| | |
|---|---|
| **Taxes** | All payments of principal, interest and all other amounts by the Borrower shall be made (i) in US Dollars and (ii) free and clear of any deduction for current or future tax, levy or duty of any nature or other deductions whatsoever. |
| **Governing Law** | New York law with respect to the DB Loan; Dominican Republic law with respect to the Collateral located in the Dominican Republic. |
| **Mortgage Financing** | DB will also work with the Borrower to achieve a financing structure to raise mortgage financing for end-buyers. |

This document has been prepared by Deutsche Bank AG for information or discussion purposes only and shall not be construed as and does not form part of an offer, nor an invitation to offer, nor a solicitation or recommendation to enter into any transaction, nor is it an official or unofficial confirmation of terms. Although the indicative information set forth herein is reflective of terms, as of the date of this communication, under which we believe an issuance of securities or other transactions might be structured, no assurance can be given that such an issuance or transaction could in fact be executed. We have sent you this document in our capacity as a potential counterparty acting at arm's length. We are not acting as your financial adviser nor in a fiduciary capacity in respect of the proposed transaction, including the securities or other obligations referred to herein, or any other transaction with you unless otherwise expressly agreed by us in writing. Also no representation is made concerning the tax implications in any applicable jurisdiction of this proposed transaction involving the securities or other obligation referred to herein and we are not advising you in respect of the tax implications. Before entering into any transaction you should take steps to ensure that you understand the transaction and have made an independent assessment of the appropriateness of the transaction in light of your own objectives and circumstances, including the possible risks and benefits of entering into such a transaction and also the tax implications of entering into the proposed transaction, including seeking tax advice in any applicable jurisdiction. Reference must be made to the official offering or other transaction documents or official trade confirmation for definitive information with respect to any indicative offering or transaction described herein.

**EXHIBIT B**

**DEUTSCHE BANK AG LONDON BRANCH**
**1 GREAT WINCHESTER STREET**
**WINCHESTER HOUSE**
**LONDON EC2N 2DB**
**UNITED KINGDOM**

June 8, 2007

Praxi Caribbean Realty Partners, LLC
60 East 42 Street
New York, NY

Attention: Darien Dash
           Managing Director

Re: <u>Acquisition Financing – Highly Interested Letter</u>

Ladies and Gentlemen:

You have informed Deutsche Bank AG London Branch ("<u>DB</u>" or "<u>us</u>"), a financial institution with an international investment grade rating for its long-term debt of AA- by Standard and Poor's Rating Services, that you are presently considering a transaction pursuant to which you and/or one or more of your subsidiaries would acquire, in a transaction structured in a manner reasonably satisfactory to us (the "<u>Acquisition</u>"), the parcel of land identified for the development and construction of the Las Iguanas Residential Condominiums within the Cap Cana Project in Cap Cana, Dominican Republic (the "<u>Acquired Property</u>").

DB understands that you will pay cash to Cap Cana S.A. in connection with the Acquisition and that debt financing will be required to effect the Acquisition, to pay fees and expenses owing in connection with the foregoing and for your ongoing working capital and other general corporate requirements after giving effect to the Acquisition. DB further understands that such debt financing will be provided through a senior secured term loan facility aggregating up to 62% of the bid price for the Acquired Property (the "<u>Credit Facility</u>"). As used herein, the term "<u>Transaction</u>" means the Acquisition, the entering into of the Credit Facility and the initial borrowings under the Credit Facility.

We are pleased to inform you that, based on our preliminary review of information provided to us by you, our understanding of the Transaction as summarized above and current market conditions and subject to the completion of our due diligence and satisfaction of all other conditions outlined below, we are highly interested in arranging and/or underwriting (either directly and/or through one or more of our affiliates) the Credit Facility in connection with the Transaction.

You understand and agree that (i) this letter does not constitute a commitment on the part of, or engagement of, DB or any of its affiliates to provide, arrange, place, underwrite and/or

1

participate in any or all of the Credit Facility and that neither DB nor any of its affiliates is under any obligation, as a result of this letter, to provide or offer to provide any such commitment or engagement and (ii) DB cannot make any commitments on behalf of any of its affiliates. Any commitment or engagement by DB or any of its affiliates, if forthcoming, in respect of the Credit Facility would be evidenced by a separate written agreement and would be subject to, among other things (x) DB's and its representatives' completion of, and satisfaction with the results of, their business, legal, tax, financial, accounting, environmental and other due diligence, (y) DB's receipt of all credit and other internal approvals and our verification of all assumptions we have made and (z) the satisfaction of all other conditions we would require to be fulfilled with respect thereto.

None of DB, any of its affiliates or any of their respective directors, officers, employees, representatives and agents shall be responsible or liable to you or any other person or entity for any amounts or damages of any kind or character which may be alleged as a result of this letter or the proposed Transaction.

You acknowledge that DB may share with any of its affiliates, and such affiliates may share with DB, any information (including as relating to creditworthiness) related to the Transaction, you or the Acquired Property (and each of their respective subsidiaries and affiliates), or any of the matters contemplated hereby. DB agrees to treat, and cause any such affiliate to treat, all non-public information provided to it by you as confidential information in accordance with customary banking industry practices.

You agree that this letter is for your confidential use only and that, unless DB has otherwise consented, neither its existence nor the terms hereof will be disclosed by you to any person or entity other than (i) your officers, directors, employees, accountants, attorneys and other advisors, and then (in each case) only on a "need to know" basis in connection with the transactions contemplated hereby and on a confidential basis and (ii) in accordance with Section 3 of the Las Iguanas Bidding Process Letter, dated May 31, 2007, on a confidential basis. Notwithstanding the foregoing (x) you may file a copy of this letter in any public record in which it is required by law, in the opinion of your counsel, to be filed and (y) you may make such other public disclosure of the terms and conditions hereof as, and to the extent, you are required by law, in the opinion of your counsel, to make; provided that, in the case of any disclosure pursuant to clause (x) or (y) above, you provide written notification to DB in advance of such disclosure.

[SIGNATURES IMMEDIATELY FOLLOW ON NEXT PAGE]

Please feel free to call Bradshaw McKee at 212-250-3653 if you have any questions or comments on this letter or the proposed Credit Facility.

Very truly yours,

DEUTSCHE BANK AG, LONDON BRANCH

By_____
Name: BARBON
Title:

By_____
Name: Scrmineci
Title:

3