UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
PRAXI, LLC,

                Plaintiff,

      vs.                                 Case No. 07 Civ. 9727

CAP CANA, S.A., DEUTSCHE BANK A.G. and
DEUTSCHE BANK SECURITIES, INC.,

                Defendants.
------------------------------------------------------------x

**DECLARATION OF LUIS MIGUEL PEREYRA C. IN SUPPORT OF DEFENDANT CAP CANA, S.A.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

       I, the undersigned, Luis Miguel Pereyra C., of legal age and a Dominican resident, hereby declare under the penalty of perjury under the laws of the United States of America that what I am herein stating is true and correct.

**I.    BACKGROUND**

       1.     I am a licensed attorney in the City of Santo Domingo, Dominican Republic. I was admitted to the practice of law in the Dominican Republic in 1980. I received a degree in Corporate Law and Economical Legislation in 1996 from Pontificia Universidad Católica Madre y Maestra, Magister and an LL.M (Licenciatura) in 1979 from Universidad Nacional Pedro Henríquez Ureña, UNPHU.

       2.     I have been practicing law since 1980, and am partner of the Dominican law firm of Pereyra & Asociados. My practice includes the areas of Mergers and Acquisitions, Foreign Investment; Banking Law, Aeronautical Law, Corporate Law, Telecommunication Law, Media Law, Energy Law, Free Zone Law, Mining Law, Tourism Law, Agency and

Distributorship Law, Tax Law and Tax Incentives, Antitrust and Trade Regulations, Business Law, Litigation and Arbitration.

3. I am fluent in Spanish and English and knowledgeable in French. I have been a collaborator of "Cuadernos Jurídicos" (a monthly Law Review of Pedro Henríquez Ureña University); a Professor of Contracts and Unfair Practices of Commerce and Civil Procedure at Pedro Henríquez Ureña, University Pontificia, Universidad Católica Madre y Maestra University and APEC University. I am registered as an Arbitrator with the Santo Domingo Chamber of Commerce.

4. This declaration is submitted in support of the motion to dismiss of Cap Cana, S.A. ("Cap Cana") in Praxi, LLC v. Cap Cana, S.A., Deutsche Bank A.G. and Deutsche Bank Securities, Inc., Civil Action No. 07 Civ. 9727 (the "Action").

5. This declaration will examine whether Dominican courts provide a convenient and adequate alternative forum for Praxi, LLC's ("Praxi" or "Plaintiff") claims and will explain Dominican law related to jurisdictional issues.

6. I have reviewed the following documents: a) The First Amended Complaint filed by Praxi, b) the Bases Resumida Licitacion Desarrollo De Las Iguanas (the "Tender Specifications"), dated April 10, 2007 and c) other materials such as: (i) Dominican Procedural Court (and its amendments), (ii) Dominical Civil Code, (iii) Constitution of the Dominican Republic, (Cassation Law No. 3726) and other legal text and precedents as cited throughout this Affidavit.

7. This declaration is based upon and refers to Dominican law. For its preparation I have reviewed and taken into consideration the statutes, decisions and scholarly works cited in this declaration.

## II. THE DOMINICAN LEGAL SYSTEM

8.  Under the constitutional reforms negotiated after the 1994 elections, the 16-member Supreme Court of Justice is appointed by a National Judicial Council, which comprises the President of the Dominican Republic, the Presidents of both houses of Congress, one representative of each house of Congress of a different political party than the President of the house in question, the President of the Supreme Court, as well as a Supreme Court Justice who is elected by the Supreme Court and acts as secretary of the Council. The Supreme Court has sole authority over managing the court system and in hearing actions against the president, designated members of his cabinet and members of Congress when the legislature is in session.

9.  Judicial administration is vested in the Supreme Court of Justice and in lower courts created by the Constitution and the laws, such as the Courts of Peace, Courts of First Instance, Courts of Appeals, specialized courts such as Lands Tribunals, Labor Courts, Traffic Violations Courts, Juvenile Courts, Military and Police Court and the Tax and Administrative Court. The court system is broken down as follows:

10. Justice of Peace Courts – formed by one justice of peace, these courts handle minor cases. The decisions rendered by the Peace Courts, unless they are of very minor monetary value, may be appealed before the Courts of First Instance.

11. Courts of First Instance – these courts have primarily civil (and commercial) and criminal jurisdiction. Formed by one judge, these courts handle all the cases not expressly attributed by law to another court. There is a Court of First Instance in each Judicial District. The court may be divided into a Criminal Chamber and a Civil and Business Chamber, which in turn, depending on the size of the District, may be sub-divided into various chambers with their own territorial jurisdiction. In many judicial districts the Court of First

Instance is presided by a judge who handles all cases: criminal, civil, commercial, labor, etc. In some instances, as related to certain criminal matters, the Court of First Instance may be comprised of three judges who preside over such matters.

12. Judges of Instruction who review evidence and conduct preliminary criminal hearings.

13. The Courts of Appeals – these courts are formed by five judges and review the judgments rendered by the Courts of First Instance, including the facts of the case. There is a Court of Appeals in each Department, each one comprising five Judicial Districts. These courts, depending on the size of the Department, may be divided into a Criminal Chamber and a Civil and Business Chamber.

14. There are a series of specialized courts for initial hearings of matters related to judicial administration, property disputes and registration, traffic accidents, minors and labor disputes.

15. The Dominican judicial system is mainly based on the French judicial organization and the Napoleonic Code, although many dispositions, such as juries for criminal matters, were not adopted. In fact, there are no juries in the Dominican courts and the judge has great authoritative power and issues the verdict.

16. Dominican law, for the most part, is derived from laws or statutes known as Napoleonic codes, which were introduced to the country during the period from 1822 to 1844. It is common in the Dominican Republic to use French case law and doctrine as primary sources of law, whenever the legal texts in question are based on the French Codes.

17. Dominican law theorists make a fundamental distinction between primary sources of law, which can give rise to binding legal norms, and secondary sources, sometimes

called authorities. The primary sources are enacted law and custom, with the former overwhelmingly more important. Sometimes, "general principles of law" are also considered a primary source. Authorities may have weight when primary sources are absent, unclear or incomplete, but they are never binding, and they are neither necessary nor sufficient as the basis for a judicial decision. Case law and the writings of legal scholars are such secondary sources.

18. Primary sources of law include enacted law, custom and general principles. Enacted law includes legal rules adopted by the legislature and executive and administrative agencies. The various types of enacted law form a hierarchy with the constitution at the pinnacle, followed by legislation, then by executive decrees, then by administrative regulations and finally by local ordinances. Account must also be taken of the increasing importance of international treaties and conventions. Parliamentary legislation, including the Civil and Commercial codes, is today the principal source of law in the Dominican Republic.

19. While custom is technically considered a primary source of law, in practice custom is more often than not routinely dismissed as of slight importance. As might be expected, custom (in the form of trade usage) plays a greater role in commercial law than it does in civil law generally.

20. It is sometimes said that "general principles," derived either from norms of positive law or from the existence of the legal order itself, are a primary source of law. They are characterized as such by some French and Dominican scholars in discussions of the judicial doctrine of abuse of rights and the expansion of the notion of unjust enrichment.

21. Authorities, or secondary sources of law, include case law (jurisprudencia) and doctrine. While case law plays an enormous role in the everyday operation of the Dominican law system, because of the necessity to interpret and apply the "written" law, its legal

5

use is mainly limited to deciding particular cases. Judicial pronouncements are not binding on lower courts in subsequent cases, nor are they binding on the same or coordinate courts. As a practical matter, however, it is generally recognized in the Dominican law system that judges do and should take into consideration prior decisions, especially when the settled case law shows that a line of cases has developed.

22.    Dominican judicial decisions have de facto weight in order to provide reasonable certainty and predictability, to meet the elementary demand of fairness that like cases be treated alike, and the related, but distinct, consideration that justice should not only be done, but should appear to have been done.

23.    Dominican courts commonly accept French case law as a source of law whenever the legal texts of the Dominican Republic and France are the same.

24.    The writings of legal scholars (doctrina), like the court decisions, are considered authorities in the Dominican law system. The role of doctrine is, however, quite different from that of the case law. While case law authority operates to settle the law and to assure a degree of consistency within a judicial hierarchy, scholarly writing exerts its greatest direct influence when the law is unsettled or when there is no established law on a point. Thus, the doctrine indirectly controls, to a great extent, the judges' understanding of the case law.

25.    The weight attached by judges to doctrinal writing varies according to a number of circumstances, including the reputation of the author and whether the view expressed is an isolated one or represents the consensus of the most respected writers. In general, it can be said that Dominican judges pay close attention to scholarly opinions (from Dominican as well as French sources), as expressed in general and specialized treatises, commentaries on the codes, monographs, law review articles and case notes and expert opinions rendered in connection with



litigation. Persistent doctrinal criticisms will often prompt re-examination of a holding and will sometimes even lead to the abandonment of an established judicial position.

26.     Dominican law has given a commercial nature to all acts, operations or activities carried out by business organizations. Therefore, in considering the applicable law in the generality of cases involving corporations in the Dominican Republic, first priority is given the basic principles contained in the Dominican Commercial Code enacted on the July 4, 1882.

27.     Dominican Commercial Law, whose direct and main source is the Commercial Code, has as subsidiary sources the Civil Code and the trade customs. Many consider Article 18 of the Dominican Commercial Code as the text that legitimizes the Civil Law as an important source of the Commercial Law. However, there are important stipulations of the Civil Code that evidence the interdependence of both texts, as for example Article 1107 of the Civil Code.

28.     The legitimacy of trade customs as a subsidiary source of the Dominican Commercial Law can be derived from several articles of the Dominican Civil Code such as articles 1135, 1159 and 1160.

III.    JURISDICTION

29.     Rule on jurisdiction – in order to determine which court is competent to review a case, Dominican procedural law first considers the different category or classes of courts (justice of peace, court of first instance, court of appeals, etc.) and then specifically assigns competence to each of such courts to review certain matters based on the nature of the same (*ratione materiae* criterion). This first criterion determines the nature of the competent court.



30. A second criterion is then applied to determine which courts, among several of the same class or category, has particular competence to review the case (*ratione personae vel loci*), considering the domicile or residence of the defendant, the location of the object of the litigation, the place where the contract that has caused the litigation has been formed (signed) or where performance under the same should take place.

31. A third criterion is Functional Competence, which is a combination of the two above mentioned principles. Functional Competence is used because the law dictates competence based on both the nature of the case and the territorial situation (of the parties, object of litigation, place of payment, location of assets involved, place where the contract was executed or should be performed, etc.).

32. Under current Dominican procedural regulations (Dominican Procedural Code, as amended), the Courts of First Instance have common law jurisdiction and thus are competent to review cases unless the law has specifically limited such jurisdictional competence or has expressly awarded the same to any other category or class of court.

33. Based on the above and applying the *rationae materiae* criterion, the Courts of First Instance are basically competent to review all civil and commercial claims over DR$1,000 (approximately US$30 based on an exchange rate of DR$34 per US$1.00). All decisions of the Courts of First Instance in such matters may be appealed to the next level, the Courts of Appeal. Normally, the Courts of Appeal must hear all cases brought before them and review cases on the merits under a *de novo* standard, hearing facts and interrogating witness to re-decide the case.



34. Under the *ratione personae vel loci* criterion (after determining the competent court under the *ratione materiae* criterion) the basic rules to determine competence of a court are as follows:

    a. With respect to personal matters, the competent court shall be the one of jurisdiction in the defendant's place of reference (*actor sequitour forum rei* principle). This principle is based on the rational presumption that, unless the court decides otherwise, the defendant has committed no wrong doing; hence if the parties are not residing or are domiciled in the same jurisdiction, the costs and inconveniences inherent to a process outside one's jurisdiction shall be borne by the plaintiff and not by the defendant.

    b. In the case of entities (as defendants), the above mentioned principle applies inasmuch as the competent court shall be the one with jurisdiction over the main domicile of the entity or where the same has a branch or established office.

    c. In the event of multiple defendants, the competent court shall be the one with jurisdiction where any of the defendants has its domicile.

    d. In connection with mixed issues (civil and commercial matters), the competent court shall be the one with jurisdiction over the litigious object or the defendant's domicile.

    e. As a general rule, in the event that the parties have chosen a domicile or applicable jurisdiction, the competent court shall be the one thus chosen by the parties (unless the chosen jurisdiction is not competent based on

> the *rationae materiae* criterion or the Functional Competence criterion) or the one with jurisdiction at the location of the defendant's residence.
>
> f. With respect to general commercial issues, rules of competence are basically as established above. However other competence rules may apply as foreseen by Article 420 of the Civil Procedural Code, which also establishes competence to the courts with jurisdiction over the location where the promise has been made (agreement reached) or where payment should have been made.

35.  As to jurisdiction of Dominican Courts over foreign entities and individuals, pursuant to Article 14 of the Dominican Civil Code, a foreigner not resident in the Dominican Republic may be summoned or sued before a Dominican Court, with respect to the performance of obligations assumed by such foreigner in the Dominican Republic vis a vis a Dominican national, as well as with respect to obligations assumed abroad vis a vis a Dominican national.

36.  Conversely, pursuant to Article 15 of the Dominican Civil Code, a Dominican national may be summoned before a Dominican Court with respect to obligations assumed by such Dominican national abroad and even vis a vis a foreigner.

37.  In view of the above, contract, equitable and fiduciary duty related claims such as those included in the Complaint, against a Dominican entity or individual involving amounts exceeding DR$1,000, may be filed before the Dominican Court of First Instance with jurisdiction where such Dominican entity or individual's domicile is located.

38.  Furthermore, where the parties freely agree to submit to a specific jurisdiction and governing law with respect to a dispute arising between them in connection with

an agreement, such agreement is binding and actionable as to each of the parties and will be enforced by Dominican Courts, except where the forum selected or choice of law is contrary to Dominican public order regulations. Such is the case where Dominican law specifically attributes competence (based on the ratione materiae and/or ratione personae vel loci criteria) to a court or jurisdiction other than the one contractually chosen by the parties. Likewise Dominican courts will accept and apply the laws of the jurisdiction chosen by the parties to the extent such laws do not contravene public policy regulations.

      39.    With respect to the Complaint, it is possible to assert jurisdiction in the Court of First Instance of the domicile of the Defendant to decide over such Complaint based on Dominican law, pursuant to the application of several of the principles concerning competence and jurisdiction as explained above, and because (i) the Tender Specifications set forth the terms and conditions governing the bidding process that gave cause to such Complaint; (ii) such Tender Specifications specifically state that "it is expressly understood that, in the event of conflicts or interpretations of the terms and regulations of this agreement, they shall be governed by the laws and law-courts of the Dominican Republic. All Documents to be executed as a result of this document shall be governed by the laws of the Dominican Republic;" (iii) the Defendant is a Dominican Company, which assets and business are mainly located in the Dominican Republic; (iv) the bidding process was undertaken in the Dominican Republic (including the signing of the Tender Specifications) and (v) the asset which was the subject of such bidding process is real property located in the Dominican Republic. Pursuant to the terms of the Tender Specifications, the causes of action lodged against Cap Cana in the Complaint should be heard by a court in the Dominican Republic.



## IV. CAUSES OF ACTION

40. There are causes of action available under Dominican law that would permit the Plaintiff to litigate the subject matter of the Complaint.

### A. Action for Breach of Contract.

41. Under Dominican law, specifically section 1184 of the Civil Code, in the event of breach, violation or non-performance of a valid contract, the non-breaching party may (in principle) seek compliance under the agreement, compensatory damages for the delay or the termination of the same and the payment of damages caused by such breach, violation or non-performance.

42. A plaintiff allegedly harmed by the violation or non-performance of contractual obligations may bring an action through a lawsuit served on the defendants through the Bailiff Act, summoning them to appear at the empowered court and outlining the basic arguments upon which the action is based. After the Bailiff Act is served, a duly registered copy of the same is filed at the Presidency of the competent court (which in this case is the Civil and Commercial Chamber of the Court of First Instance of at least one of the defendant's domiciles) for the purpose of assigning the courtroom which will be reviewing the case and subsequent scheduling of the first hearing concerning the same.

43. In its claim, the plaintiff may request compensation for such losses and damages caused by the breach or delay in the performance of the contractual obligations. Such damages may be, in principle, the actual losses suffered and potential gains lost, provided that the breaching party is not obligated to compensate for more losses and damages that were foreseen or may have been foreseen when entering into the contract, except in the event of bad



faith in such breach or non performance. Even in this last case, the losses and damages may only be those that are an immediate and direct consequence of the non-performance or breach.

44. Based on legal precedents, in order to be successful in its claim, the Plaintiff shall prove the existence of three (3) basic elements: (a) the existence of a contract; (b) the validity of such contract; and (c) that the contract has been realized between the Defendant and the Plaintiff and the claimed damages have resulted from the breach of the contract.[1]

45. Likewise, the Dominican Supreme Court has indicated that "pursuant to the provisions of Articles 1315 and 1147 of the Dominican Civil Code, those claiming compensation for loss and damages caused by the breach of a contract; are obligated to prove not only the existence of the obligation, but the alleged breach on such obligation in which the Plaintiff base its demand of compensation."[2]

46. Section 1315 of the Civil Code places the burden of proof on the Plaintiff, inasmuch as it has to present to the court evidence to support its claims. However, if the defendants argue the non-existence of the contract or deny the alleged non-performance or breach, they have to provide the evidence supporting such arguments.

47. In principle, the judge may determine the extent of the loss and damages applicable based on the evidence presented in the case. A decision in such regard may not be subject to cassation to the extent that the court has justified its decision and explained the motives upon which its decision was based. The Cassation Court may verify if the compensation was granted based on the actual damages caused and the applicable regulations.[3]

---

[1] Cas. Civil March 14, 2001. B.J 1084.80.

[2] Cas. Civil June 21, 1982; B.J. 859.982.

[3] Cass. Civil, May 5, 1999, B.J. 1062.99; Cass Civil, Dec. 9, 1998, B.J. 1057.99.

Notwithstanding the above, the decision of the Court of First Instance may be revoked by a competent Court of Appeals pursuant to its review of the case on the merits under a *de novo* standard.

### B.    Action for Breach of Fiduciary Duty.

48.    Under Dominican law, actions for breach of fiduciary duty may be filed based on the joint interpretation of the provisions of Sections 1184 and 1135 of the Dominican Civil Code. Section 1135, however, in principle, binds the parties not only to what is expressly indicated in such contract, but also to those consequences that equity recognizes in such obligation, depending on its nature. Consequently, if such fiduciary duties being breached are the inherent consequence of a binding contract between the Plaintiff and the Defendant, the former may file an action against the latter for breach of a contractual obligation as explained and under the circumstances indicated in item "A" above.

49.    Alternatively, an action may be based on Article 1382 of the Civil Code of the Dominican Republic which foresees that any individual or entity causing damages to another shall be obligated to repair the same. This is the basis of the civil liability system (tort) in the Dominican Republic. Such action may differ from the contractual claims as follows:

    a. Based on legal precedents on the subject, in order to be successful in its claim, the Plaintiff shall prove the existence of three (3) basic elements: (a) the existence of a fault as committed by the Defendant, (b) the damages suffered and (c) the cause-effect relationship between the fault and the damages suffered. [4]

---

[4] Cass. Civil. April 17, 2002. B. J. 1097.197.

  b. Determination of damages may be freely made by the Court and such decision is not subject to Cassation, except that the Supreme Court may verify if the damages awarded are proportional to the damages caused. Notwithstanding the foregoing, the decision of the Court of First Instance may be revoked by a competent Court of Appeals pursuant to its review of the case on the merits under a *de novo* standard.

  c. Compensation for moral damages (mental anguish, damage to reputation, etc.) may be awarded if requested by Plaintiff and supported with evidence at court.

All other procedural requirements and rules of evidence (including burden of proof) are similar to contractual claims as explained in Section A herein above.

  **C. Action for Promissory Estoppel.**

  50. Under Dominican law, there are no specific actions for promissory estoppel, but the same may be covered by civil liability actions pursuant to section 1382 of the Dominican Civil Code as outlined in Section B herein. Consequently, the description of section 1382 in Section B as well as those applicable statements in Section A shall be applicable to claims such as the promissory estoppel claim described in the Complaint.

  51. Based on applicable legal precedents if a breach of a contractual obligation coincides with an extra-contractual fault, the plaintiff is obligated to compensate for damages not originally foreseen in the contract when such damages are the result of a grave fault.[5] Consequently, a Promissory Estoppel action such as that included in the Complaint may or may not coexist with a contractual action, depending on the court's assessment as to whether

---

[5] Cass. Civil December 15, 1989. B.J.949. 1772.

or not the basis of such Promissory Estoppel action complies with the criterion above explained (extra-contractual fault grave in its nature). An extra-contractual fault shall be an action or omission not reputed to be a direct breach of a contractual obligation.

### D. Actions for Tortious Interference

52. The Complaint contains claims against Deutsche Bank for tortious interference. Under Dominican law, there are no specific actions for Tortious Interference, but the same may be covered by civil liability actions pursuant to section 1382 of the Dominican Civil Code as outlined in Section B herein above.

## V. EVIDENCE

53. At trials in the Dominican Republic, parties have the right to be represented by counsel and to present evidence. While Dominican Law exhibits a preference for documentary evidence rather than live witness testimony (similar to other code-based, civil law countries), judges routinely allow a party to call and question witnesses in the Dominican Courts when that party has requested to do so, provided that the facts to be proved may be established though the testimony of a witness. Also, once a party calls a witness, the other party will be allowed to cross examine that witness and even to call (pursuant to a request to the court in such regard) and question its own witness in order to refute or counteract the statements of the opposing party's witness.

54. With respect to civil discovery under Dominican Law, the parties produce documents relevant to the litigation to the opposing party. If either party fails to produce the documents at the opposing party's request, the interested party may request that the court order production of these documents. Alternately, the party may ask the court not to consider such documents as evidence. In this way, the party who failed to produce the documents is prevented

from using these improperly disclosed documents to support its arguments, and the court's decision will not be based on evidence not properly disclosed to one of the parties

55. Parties are generally free to submit expert testimony in the form of expert reports which are filed with the court. In addition, the court may appoint independent experts and order that reports from such experts be filed. Accordingly, the parties file evidence in support of their arguments and the court bases its ruling on the parties' arguments, the filed evidence, any live witness testimony which the court decides to hear and any expert testimony and reports that the court has allowed.

## VI. CONCLUSIONS

56. Dominican courts provide a convenient and adequate alternative forum for plaintiff's contract, breach of fiduciary duty and promissory estoppel claims. The Dominican legal system provides fair and effective procedures for the proper adjudication of plaintiff's claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this ‘7_th day of _____ of 2008.

_____
Luis Miguel Pereyra C.