UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

PRAXI, LLC,

                Plaintiff,

          vs.                            Case No. 07 Civ. 9727 (LTS)

CAP CANA, S.A., DEUTSCHE BANK A.G. and
DEUTSCHE BANK SECURITIES, INC.,

                Defendants.

-------------------------------------------------------------------x

# MEMORANDUM OF LAW OF DEFENDANT CAP CANA, S.A. IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Simpson Thacher & Bartlett LLP
Jonathan K. Youngwood
Tamala T. Boyd
425 Lexington Avenue
New York, New York  10017-3954
(212) 455-2000

*Attorneys for Defendant*
CAP CANA, S.A.

## Table of Contents

Page

PRELIMINARY STATEMENT ........................................................................................................ 1

COMPLAINT & BACKGROUND .................................................................................................... 3

STANDARD OF REVIEW ............................................................................................................... 6

ARGUMENT .................................................................................................................................... 7

I.      THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE CASE IS NOT
        PROPERLY VENUED BEFORE THIS COURT ............................................................... 7

        A.      The Case Must Be Dismissed Because The Parties Agreed To Litigate
                Matters Related To The Bid, Purchase And Development Of Las Iguanas In
                The Dominican Republic .................................................................................... 7

        B.      In The Alternative, The Complaint Should Be Dismissed Pursuant To The
                Doctrine Of Forum Non Conveniens ................................................................. 10

II.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
        STATE ANY CLAIM UPON WHICH THIS COURT MAY GRANT RELIEF ............ 15

        A.      The Law Of The Dominican Republic Applies To This Case ............................ 15

        B.      Count I:  Cap Cana Did Not Breach Any Alleged Agreement ............................ 16

                1.      The Tender Specifications ...................................................................... 16

                2.      The Alleged Joint Venture ...................................................................... 17

        C.      Count II:  Cap Cana Did Not Owe Any Fiduciary Duties To Praxi ................... 19

        D.      Count III:  Praxi's Promissory Estoppel Claim Is Insufficient As A Matter Of
                Law .................................................................................................................... 20

CONCLUSION ............................................................................................................................... 22

i

## Table of Authorities

## <u>CASES</u>

*Acosta v. JPMorgan Chase & Co.*, 219 Fed. Appx. 83 (2d Cir. 2007) ..............................1, 12, 14

*Albany Ins. Co. v. Banco Mexicano, S.A.*, No. 98-9531, 1999 U.S. App. LEXIS 14987 (2d Cir. July 2, 1999) ........................................................................................... 8

*Alfadda v. Fenn*, 159 F.3d 41 (2d Cir. 1998) .......................................................................... 11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007).................................. 7

*B. Lewis Prods. v. Angelou*, 99 Fed. Appx. 294 (2d Cir. 2004).................................................. 20

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)..........................................................6, 16, 20

*BFI Group Divino Corp. v. JSC Russian Aluminum,* 481 F. Supp. 2d 274 (S.D.N.Y. 2007)........................................................................................................ 11

*Brown v. Cara*, 420 F.3d 148 (2d Cir. 2005) .......................................................................... 19

*Calavo Growers of Cal. v. Generali Belg.*, 632 F.2d 963 (2d Cir. 1980) .................................. 10

*Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991) .................................................................. 9

*Chambers v. Time Warner*, 282 F.3d 147 (2d Cir. 2002) ............................................................ 1

*Clark-Fitzpatrick Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (1987) ................................ 21, 22

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)...................................................... 8

*Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64 (2d Cir. 2003).................................................. 18

*DIRECTV Group, Inc. v. Darlene Invs., LLC*, 05 Civ. 5819, 2006 U.S. Dist. LEXIS 69129 (S.D.N.Y. August 10, 2006) ...........................................................18, 19, 20

*Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7 (2nd Cir. 1995) .................................................. 9, 10

*Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London et al.*, 940 F. Supp. 528 (S.D.N.Y. 1996), *aff'd* 147 F.3d 118 (2d Cir. 1998) ...................................... 14

*Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386 (2d Cir. 2001) .......................................... 15

*Freedom Holdings, Inc. v. Spitzer*, 363 F.3d 149 (2d Cir. 2004).................................................. 6

*Globalnet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377 (2d Cir. 2006) ................................................................................................................ 15, 16

*Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142 (2d Cir. 2000) ................................................. 11

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ..................................................... 10, 11

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976 (S.D.N.Y. 1989) .................................................................................................... 21

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549 (2d Cir. 2000) ............................................................................................... 15

*Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272, 2004 U.S. Dist. LEXIS 83 (S.D.N.Y. Jan. 6, 2004) ........................................................................ 17

*Iragorri v. United Tech. Corp.*, 274 F.3d 65 (2d Cir. 2001) ........................................... 11

*Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698 (2d Cir. 1990) ........................................................................................................... 18

*J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, No. 98-9191, 1999 U.S. App. LEXIS 8577 (2d Cir. May 4, 1999) ....................................................................................... 7

*Jones v. Weibrecht*, 901 F.2d 17 (2d Cir. 1990) ........................................................ 8

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000) ...................................................... 21

*Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164 (S.D.N.Y. 2004) ..................... 18

*Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947) ...................................... 10

*LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246 (S.D.N.Y. 2007) ..................... 12

*Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606, 2006 U.S. Dist. LEXIS 55638 (S.D.N.Y. August 10, 2006) ................................................................................. 17

*Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996) ............................................................. 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985) ................. 8

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, Inc.*, 392 F.3d 520 (2d Cir. 2004) ...................... 17

*New Moon Shipping Co. v. Man B & W Diesel AG*, 121 F.3d 24 (2d Cir. 1997) ................. 8

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ......................................................... 6

*Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007) ...................................... 10

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ............................................... 10, 11

*Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) ................. 11, 12

iii

*Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295 (2d Cir.1996) ............................................. 21

*RIJ Pharm. Corp. v. Ivax Pharms., Inc.*, 322 F. Supp. 2d 406 (S.D.N.Y. 2004) ......................... 16

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) ................................................................. 7

*Solutia, Inc. v. FMC Corp.*, 456 F. Supp. 2d 429 (S.D.N.Y. 2006) ..................................... 18, 19

*Sotheby's Fin. Servs. v. Baran*, 107 Fed. Appx. 235 (2d Cir. 2004) ......................................... 20

*St. Paul Guardian Ins. Co. v. Neuromed Med. Sys. & Support, GmbH*, 00 Civ. 9344, 2002 U.S. Dist. LEXIS 5096 (S.D.N.Y. Mar. 26, 2002) ................................................. 1

*Strategic Value Master Fund v. Cargill Fin. Servs. Corp.*, 421 F. Supp. 2d 741 (S.D.N.Y. 2006) ......................................................................................................... 12, 14

*The Bremen v. Zapata Offshore Co.*, 407 U.S. 1 (1972) .............................................................. 7

*Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105 (2d Cir. 2004) ...................... 18

*Tully v. Sylvan Lawrence Co.*, No. 97 Civ. 5762, 1999 U.S. Dist. LEXIS 1207 (S.D.N.Y. Feb. 4, 1999) ....................................................................................................... 18

*Usha (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129 (2d Cir. 2005) ................................... 11

*Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956) .......................................... 1

## STATUTES AND RULES

Fed. R. Civ. P. 12(b)(3) ................................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 6

Fed. R. Civ. P. 41.1 ....................................................................................................................... 1

## OTHER AUTHORITIES

E. Allan Farnsworth, *Contracts*, § 2.19 (1982) .......................................................................... 21

iv

Defendant Cap Cana, S.A. ("Cap Cana") respectfully submits this memorandum of law, together with the declarations of George Spence, sworn to on February 6, 2008, and Luis Miguel Pereyra C.[1], sworn to on February 7, 2008, in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6), to dismiss the First Amended Complaint ("Complaint") of Praxi, LLC ("Praxi" or "Plaintiff") for improper venue and failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

This case involves an alleged agreement to develop land in a resort community in the Dominican Republic. Although Plaintiff is allegedly a Delaware limited liability company, whose two members reside in New Jersey, the alleged actions giving rise to this case took place in the Dominican Republic. Other than several conclusory clauses, the Complaint does not suggest that any of the alleged acts at issue took place in New York or even in the United States. Most significantly, the relationship between Plaintiff and Defendant Cap Cana, a Dominican company, is governed by a contract that contains a forum selection clause mandating that this

---

[1]     The Declarations of Luis Miguel Pereyra C., an expert on Dominican Republic law, and George Spence, Chief Executive Officer of Cap Cana, are submitted in support of the lack of venue and forum non conveniens arguments. *See Acosta v. JPMorgan Chase & Co.*, 219 Fed. Appx. 83, 87 (2d Cir. 2007) ("It has long been the law of this Circuit that 'in the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties,' and make findings of fact") (quoting *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 645 (2d Cir. 1956)). Mr. Pereyra's Declaration also outlines the substantive law of the Dominican Republic as it applies to the Complaint. *See St. Paul Guardian Ins. Co. v. Neuromed Med. Sys. & Support, GmbH*, 00 Civ. 9344, 2002 U.S. Dist. LEXIS 5096, at *6 (S.D.N.Y. Mar. 26, 2002) (citing Fed. R. Civ. P. 44.1 in allowing the submission of opinions by foreign law legal experts in consideration of a 12(b)(6) motion). Attached to George Spence's Declaration are copies of Praxi's bid, the Tender Specifications and an English translation of the Tender Specifications. Plaintiff references and relies on these documents throughout the Complaint. As such, they may be considered by this Court. *See Chambers v. Time Warner*, 282 F.3d 147, 152-53 (2d Cir. 2002) (pleadings include "statements or documents incorporated in it by reference," and other documents if the complaint "relies heavily upon its terms and effect, which renders the document integral to the complaint."). All citations to "Ex. __" refer to exhibits to the Declaration of George Spence.

1

dispute be adjudicated by the courts of the Dominican Republic and pursuant to Dominican law. The case cannot and should not be heard in the Southern District of New York or in any United States Court. The Dominican legal system provides a convenient and more than adequate forum for the fair and efficient adjudication of Plaintiff's claims. Importantly, the system provides for a fair and full hearing of the claims alleged in the complaint by a trial level court with the right to appeal. The Dominican legal system also provides for the collecting and taking of documentary, testimonial and expert discovery. In short, there is no legal or logistical reason why this matter could not be adjudicated by a Dominican court. This case should be dismissed for lack of proper venue or pursuant to the doctrine of forum non conveniens.

In the alternative, the case should be dismissed for failure to state a claim under either New York or Dominican law. Plaintiff's first claim for relief is for breach of contract. The only express operative agreement between Plaintiff and Cap Cana is the *Bases Resumida Licitacion Desarrollo De Las Iguanas* (the "Summary Tender Specifications, Las Iguanas Development," or the "Tender Specifications"), a copy of which, signed by Praxi's representative in the bidding process, is attached to the Declaration of George Spence as Exhibit 1 (with an English translation attached as Exhibit 2). The Tender Specifications set out the process through which "Las Iguanas," a valuable portion of the land owned by Cap Cana in the Dominican Republic, was to be developed. The Complaint does not identify a single provision of the Tender Specifications that has been breached. Nor does the Complaint plead that any other binding contract, written or otherwise, exists between Plaintiff and Cap Cana. The Complaint also does not plead facts that establish that the parties ultimately bound themselves through a joint venture. At most, the Complaint suggests that the parties considered forming a joint venture, but ultimately never entered into one.

2

Plaintiff's second claim for relief is for breach of fiduciary duty related to the alleged joint venture. Absent allegations sufficient to suggest that there was a joint venture, there obviously cannot be a breach of fiduciary duty related to it.

Plaintiff's third claim for relief against Cap Cana is for promissory estoppel. Promissory estoppel requires a promise or an act on the part of the defendant that is separate and apart from those promises or acts covered by an express contract. Here, Praxi has failed to plead the existence of a promise separate and apart from the Tender Specifications and has failed to plead that its claim of estoppel is based on facts separate and apart from those surrounding the bidding process. This claim too must be dismissed.

## <u>COMPLAINT & BACKGROUND</u>

Taking the facts alleged in the Complaint as true for purposes of this motion to dismiss (except where they are contradicted by the documents referenced therein), the following is before this Court:

Defendant Cap Cana holds title to a large parcel of undeveloped beachfront and other land in La Altagracia Province, Dominican Republic. Ex. 2 at 3.

In spring 2007, Cap Cana began a bidding process for the sale and development of "Las Iguanas" (the "Project"), a section of its overall resort area. Complaint ¶ 1. The bidding process, and all negotiations arising therefrom, was at all times governed by the Tender Specifications, which was signed on behalf of Praxi by its local representative. The base price for the bidding of the Project was $70 million US ("Base Price"). Ex. 2 at 8.

Pursuant to the Tender Specifications, participants interested in competing in the bidding process were to read, sign and return the Tender Specifications, thereby signaling familiarity and acceptance of the terms and conditions therein. *Id.* at 10, Signature Page ("By signing on this document, the undersigned states that he/she is familiar with, and accepts the

terms of the tender of the Las Iguanas property within the CAP CANA Project; which is described in this Tender Specifications document, and accepts the invitation received from CAP CANA to participate in said process"). Additionally, each participant was required to sign confidentiality and escrow agreements and submit a guarantee deposit in the amount of $1 million US (the "Guarantee Deposit") to the escrow account opened by Stewart Title Dominicana, S.A. ("Stewart"). *Id*. Once payment of the Guarantee Deposit was credited to the Stewart account and the confidentiality and escrow agreements were duly signed, the participant was deemed formally part of the bidding process and received the information necessary to carry out due diligence. *Id*.

All bids were delivered in sealed envelopes to the Cap Cana offices in the Dominican Republic. *Id*. at 12. Bids were to include, in clear and concise terms, the price offered for the Project, as well as the form of payment of the price. *Id*. The form of payment of the Base Price could vary according to the criteria of each participant; however, the Tender Specifications set forth minimum required parameters, which included the timing and completion of payment. *Id*. at 9. Importantly, the Tender Specifications required an initial down payment of twenty percent of the Base Price upon signing of the sale purchase agreement ("SPA"). *Id*. Payment would go directly into the Stewart account, and Stewart would not release any payment to Cap Cana until Cap Cana presented documentation evidencing a transfer of title to the winning bidder. *Id*.

Once chosen, the winning bidder was required to sign the final SPA within 30 working days from the opening of the bids. *Id*. at 12. Cap Cana reserved the right to extend, at its own discretion, all of the established term periods. *Id*. at 13. Pursuant to the Tender

Specifications, Guarantee Deposits of bidders who were chosen but failed to sign the SPA within the specified time period were not to be returned. *Id.*

On June 8, 2007, Praxi was selected as the winning bidder. Complaint ¶ 11. Praxi's bid, which proposed payment of $85 million US in cash to be paid in full at closing, did not indicate in any way that Praxi would require financing or that the bid was contingent on Praxi obtaining financing. *See* Ex. 3. The Complaint does not contain any allegations to the contrary.

The Complaint alleges that Cap Cana and affiliated entities were interested in up to a twenty-five percent participation in the development of Las Iguanas. Complaint ¶ 11. The Complaint vaguely and in conclusory fashion alleges an "agreement" pursuant to which a new Dominican company would be created to purchase and develop the property and that this new company would be twenty-five percent owned by Cap Cana and seventy-five percent owned by Praxi. *Id.* ¶ 12. The new company would be funded in the same twenty-five/seventy-five percent ratio and profits and losses would be split along the same percentages. *Id.* ¶¶ 12-13. Significantly, the Complaint does not suggest that Cap Cana ever became a shareholder of this new company or that any portion of the "agreement" was ever reduced to a binding writing. The only written contract involving Praxi and Cap Cana referenced by the Complaint is the Tender Specifications.

The Complaint also contains a number of allegations regarding the alleged involvement of defendants Deutsche Bank A.G. and Deutsche Bank Securities, Inc. (collectively "Deutsche Bank") in providing financing for the development of the Project. *Id.* ¶¶ 1, 2, 10-11, 15-16. None of these allegations suggest that the Tender Specifications were modified through

the alleged involvement of Deutsche Bank, nor do the Deutsche Bank allegations suggest that any other binding agreement was formed between Praxi and Cap Cana.

As the Complaint alleges, three months after being adjudicated the winning bidder, Praxi still had not signed the SPA, and, on that basis, Cap Cana canceled the bidding process. *Id.* ¶ 16.

Praxi filed the present lawsuit on November 2, 2007, naming Cap Cana and Deutsche Bank A.G. On November 7, 2007, Praxi amended its Complaint to include Deutsche Bank Securities, Inc.

## **STANDARD OF REVIEW**

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true the material factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff. *Freedom Holdings, Inc. v. Spitzer*, 363 F.3d 149, 151 (2d Cir. 2004). Although the pleading standard is a liberal one, "plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("bald assertions and conclusions of law will not suffice"). The complaint must provide factual allegations sufficient to raise a right to relief above the level of speculation. *Twombly*, 127 S. Ct. at 1964-65; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In assessing legal sufficiency, "the court may consider those facts alleged in the complaint, as well as 'documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'" *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (citation omitted).

6

## ARGUMENT

**I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE CASE IS NOT PROPERLY VENUED BEFORE THIS COURT**

Courts have consistently rejected efforts by plaintiffs seeking to avoid litigation in a proper forum by filing suit in a remote jurisdiction with little or no connection to the relevant issues in the case. Plaintiff's failure to plead any facts that show more than a tenuous connection to New York (and to the United States) warrants dismissal.

**A.    The Case Must Be Dismissed Because The Parties Agreed To Litigate Matters Related To The Bid, Purchase And Development Of Las Iguanas In The Dominican Republic**

The Tender Specifications contain a forum selection clause which, translated into English, reads: "[i]t is expressly understood that, in the event of conflicts or interpretation of the terms and regulations of this agreement, they shall be governed by the laws and law-courts of the Dominican Republic. All documents to be executed as a result of this document shall be governed by the laws of the Dominican Republic." Ex. 2 at 13. This clause acts to waive any claim Praxi or related entities have to litigate anything related to the bidding process in a jurisdiction other than the Dominican Republic. *See The Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 9-10 (1972) ("It is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ") (citations omitted); *J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, No. 98-9191, 1999 U.S. App. LEXIS 8577, at *2 (2d Cir. May 4, 1999) ("For reasons of international commerce, comity, and general principles of contract law, forum selection clauses are presumptively valid."); *see also Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir. 1993) (same). The clause covers the Tender Specifications, the alleged joint venture and the alleged promissory estoppel claim which, as discussed below, is subsumed within the contract claim.

7

The courts of the Dominican Republic will enforce a freely negotiated forum selection clause so long as the parties' choice of forum is not contrary to public order or public policy regulations. Pereyra Dec. ¶ 38. A forum selection clause like the one at issue here, which simply requires litigation of issues related to and stemming from the contract in the Dominican Republic, would not violate such regulations. *See* Pereyra Dec. ¶ 39. Likewise, the Second Circuit gives substantial deference to forum selection clauses, particularly where (as here) "the choice of forum was made in an arm's-length negotiation by experienced and sophisticated businessmen." *New Moon Shipping Co. v. Man B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) (citation omitted). International forum selection clauses have a "strong presumption in favor of [their] validity." *Albany Ins. Co. v. Banco Mexicano, S.A.*, No. 98-9531, 1999 U.S. App. LEXIS 14987, at *8 (2d Cir. July 2, 1999) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 629 (1985)).

Courts within this Circuit analyze three criteria in assessing the validity of forum selection clauses. Each of these three criteria is met here. First, a court must determine that the clause was reasonably communicated to the parties. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). Here, Plaintiff does not – and cannot – claim that it was unaware of the clause; the Tender Specifications required that participants state that they were "familiar with, and accept" its terms. Second, a forum selection clause will be upheld unless "the clause was obtained through fraud or overreaching." *Id*., (quoting *Jones v. Weibrecht*, 901 F.2d 17, 18 (2d Cir. 1990) (internal citation omitted)). There is no suggestion in the Complaint, nor could there be, that the Tender Specifications were procured by fraud or overreaching. Finally, unless it is clearly shown that "enforcement would be unreasonable and unjust," *id*., forum selection clauses will be enforced. Once again, no such assertion is or could be made here. Praxi was allegedly

willing to own and develop a property in the Dominican Republic.  It cannot now legitimately claim that litigating a dispute regarding this development in the courts of the Dominican Republic is "unreasonable or unjust."

In *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2nd Cir. 1995), Plaintiff passenger filed an action against defendants, a cruise line and a shipping company, for injuries she sustained aboard a cruise ship.  *Id*. at 8.  Defendant shipping company filed a motion to dismiss that the trial court denied.  *Id*.  On appeal, the court reversed because the trial court should have enforced the forum selection clause in the passenger agreement.  *Id.*  The court found that plaintiff was reasonably notified of the choice of forum clause and that plaintiff could not unilaterally negate the agreement with conclusory assertions that she could not afford to travel to Greece, that she was afraid to stay in strange cities and that she did not know any Greek lawyers, because those unsupported statements did not meet the heavy burden of proof required to set aside a forum selection clause.  *Id*. at 11.

The court was not persuaded by plaintiff's argument that the forum selection clause violated notions of fundamental fairness because it found "no evidence that appellants obtained appellee's accession to the forum clause by fraud or overreaching." *Id.* at 9-10. Moreover, the court found "no indication that appellants designated Greece as the forum to 'discourage cruise passengers from pursuing legitimate claims'" where appellant Sun Line Greece is a Greek corporation that maintains its office in Piraeus, Greece, the Stella Solaris sails from Piraeus to the Greek Islands and the ship's port of registry is Piraeus.  *Id*. at 10 (quoting *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991)).  Finally, the court considered that "[a]ppellee made no showing whatsoever that she would not receive a fair hearing on her claims in Greece." *Id*.

9

The *Effron* court noted that "[a] forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel." *Id*. at 10 (quoting *Calavo Growers of Cal. v. Generali Belg.*, 632 F.2d 963, 969 (2d Cir. 1980)). Additionally, the court noted that the increased costs and difficulties entailed in suing in a foreign jurisdiction are concomitant with choosing to litigate abroad. *Id*. at 10-11; *see also Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 393 (2d Cir. 2007) (enforcing a forum selection clause providing that "any legal proceedings that may arise out of [the agreement] are to be brought in England" where extra costs or difficulties of litigating abroad were known at time of contract formation). This reasoning applied even where the party forced to litigate abroad was an individual passenger and the defendant an international cruise company. Here, there is no such disparity. If Praxi was prepared to purchase land in the Dominican Republic for $85 million, surely it cannot object to litigating the matter in the Dominican Republic.

### B.     In The Alternative, The Complaint Should Be Dismissed Pursuant To The Doctrine Of Forum Non Conveniens

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). A court should decline to exercise jurisdiction when conducting the trial in a foreign jurisdiction would "best serve the convenience of the parties and the ends of justice." *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947). We submit that even if the Tender Specifications' forum selection clause does not compel dismissal of this entire case, this Court should still in its discretion defer to the courts of the Dominican Republic.

In deciding a motion for dismissal on grounds of forum non conveniens, the district court is "endowed with substantial discretion." *Piper Aircraft Co. v. Reyno*, 454 U.S.

10

235, 257 (1981).  To guide the exercise of that discretion, the Second Circuit, sitting en banc in *Iragorri v. United Tech. Corp.*, outlined a three-step process to be followed by district courts. 274 F.3d 65, 71-73 (2d Cir. 2001).  First, a court considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  *Usha (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005).  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).  "'[T]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum,' nor on identical remedies."  *BFI Group Divino Corp. v. JSC Russian Aluminum,* 481 F. Supp. 2d 274, 283 (S.D.N.Y. 2007) (citations and quotations omitted).

Second, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  "[P]laintiff's choice of forum moves on a sliding scale depending on several relevant considerations."  *Iragorri*, 274 F.3d at 71.  Deference to the plaintiff's choice is diminished when the "plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts."  *Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000).

Finally, courts balance the private and public interests implicated in the alternate choice of forum.  *Pollux*, 329 F.3d at 70, 76-77 (2d Cir. 2003) (citing *Gilbert*, 330 U.S. at 507-09).  Such factors include the:  (1) relative ease of access to sources of proof; (2) availability of compulsory process for obtaining attendance of unwilling witnesses; and (3) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *See Piper Aircraft*, 454 U.S. at 259; *Gilbert*, 330 U.S. at 508; *Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998).  When the alleged misconduct and the majority of evidence is centered in a foreign forum, private factors

11

favor dismissal. *See Strategic Value Master Fund v. Cargill Fin. Servs. Corp.*, 421 F. Supp. 2d 741, 766 (S.D.N.Y. 2006); *Acosta v. JPMorgan Chase & Co.*, 219 Fed. Appx. 83, 87 (2d Cir. 2007) (upholding the district court's conclusion that inconvenience in transporting witnesses and translating documents from Spanish to English favored dismissal).

In *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, the court dismissed a bank fraud claim by an American company against the Bank of Cyprus for forum non conveniens, following the *Irrigori* three-step process. 510 F. Supp. 2d 246, 248-54 (S.D.N.Y. 2007). First, the court analyzed whether Cyprus was an adequate alternative forum. The court found Cyprus adequate because it would allow litigation of three but not all five of the plaintiff's causes of action. *Id.* at 256. Next, the court found that deference to the plaintiff's choice of forum was diminished because plaintiff could expect to litigate abroad and the operative facts of the litigation took place in Cyprus. *Id.* at 257-58. Lastly, the court balanced the private and public interests implicated in the alternate choice of forum. Private factors favored Cyprus because most of the evidence related to plaintiff's allegations was in Cyprus, transportation costs would be vast and the difficulties involved with translation favored adjudicating the claim in Cyprus. *Id.* at 261. Public interest factors also pointed to Cyprus because Cyprus's interest in regulating its banks was stronger than any interest of the United States, which merely had the transmission of dollars through its banks. *Id.* at 262. In addition, a choice of law analysis found that Cyprus law applied, which weighed in favor of a Cyprus forum. *Id.* at 263.

Here, the Complaint should be dismissed because Dominican courts provide a suitable alternative forum for Plaintiff's claims, Plaintiff's choice of this forum is entitled to only partial deference and the private and public interest factors overwhelmingly favor trial of this action in the Dominican Republic. The Dominican legal system provides a mature and

12

thoughtful legal process which includes processes for taking discovery, examining evidence and

obtaining full and fair hearings on the issues with the right of appeal.  Pereyra Dec. ¶ 33 and § V.

Cap Cana is a Dominican company whose employees, documents, books and records are located

only in the Dominican Republic.  Spence Dec. ¶¶ 2-3.  Cap Cana has no office or real property in

the United States.  Spence Dec. ¶¶ 4, 6.

The Dominican Republic is a more than adequate forum in which to adjudicate

the parties' dispute.  The defendants are amenable to service of process there and it permits

litigation of the subject matter of the dispute.  *See* Pereyra Dec. ¶¶ 35-37, 53 and § IV.

Additionally here, as in *LaSala*, the deference owed Plaintiff's choice of forum is significantly

diminished because plaintiff, though a United States corporation, participated in a bid process

that involved Dominican Republic land and specifically required litigation in the Dominican

Republic.  Pereyra Dec. ¶ 39.

An examination of private interest factors weighs in favor of the Dominican

Republic.  The case is about the development of real property in the Dominican Republic.  *See*

Spence Dec. ¶¶ 2-3.  Not surprisingly, the operative facts of the litigation took place, and most of

the evidence related to the allegations of the complaint is located, in the Dominican Republic.

*Id*.  The Complaint references no witnesses who would be unavailable in the Dominican

Republic, while Defendants can list many outside of New York (and the United States),

including the employees of Cap Cana, Stewart and the corporation that supplied the Guarantee

Deposit.  Many of these witnesses are non-parties and presumably would be unavailable if the

case were litigated in New York.  Moreover, even if the parties would encounter no jurisdictional

problems compelling witnesses to testify (hardly a safe assumption), the cost would still be

significant.  *See Cargill*, 421 F. Supp. 2d at 766 (finding that where "most of the witnesses and

documentary evidence reside in a foreign country, conducting trial in the U.S. could impose such significant burdens on the parties that dismissal is favored."); *Acosta*, 219 Fed. Appx. at 87 (affirming the district court's holding that inconvenience in transporting witnesses and translating documents from Spanish to English favored dismissal); *Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London et al.*, 940 F. Supp. 528, 538 (S.D.N.Y. 1996), *aff'd* 147 F.3d 118 (2d Cir. 1998) (where nearly all witnesses reside overseas, "transporting witnesses from England to the United States -- even if they were within this Court's subpoena power or would appear voluntarily -- would be extremely inconvenient and would impose a prohibitive cost on defendants"). The cost of translating documents from Spanish to English also supports a dismissal of the case in favor of the courts of the Dominican Republic. Conversely, these issues likely would not arise if this case were heard by a court in the Dominican Republic. The only possible witnesses even suggested by the Complaint located in the United States are employees of Praxi and Deutsche Bank, both of which are parties to this litigation.

Public interest factors mandate the same result. Plaintiff should not be permitted to bring a foreign defendant into a U.S. court based upon allegations that have little or nothing to do with this country. The Dominican Republic has a much stronger interest in this controversy because it has an interest in regulating the transactions of its citizens regarding land and the development of land within its borders. Further, as discussed below, Dominican Republic law is going to control this case no matter where it is litigated. Surely it will be easier for a Dominican court to properly apply Dominican law than it will be for a U.S. court to do so.

14

## II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE ANY CLAIM UPON WHICH THIS COURT MAY GRANT RELIEF

Even if this Court does not dismiss this case on venue or forum non conveniens grounds, it should still dismiss all of the claims lodged against Cap Cana because the allegations in the Complaint do not state a claim.

### A.    The Law Of The Dominican Republic Applies To This Case

The Tender Specifications themselves compel application of Dominican law.  Ex. 2 at 13.  "A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law."  *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001).  Where there is an express choice of law provision like the one in this case, New York law is clear – "[a]bsent fraud or a violation of public policy, a court is to apply the law selected in the contract as long as the [jurisdiction] selected has sufficient contacts with the transaction."  *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000).  As discussed in more detail above, this is a case involving the development of land in the Dominican Republic – the contacts with the Dominican Republic are extremely strong.

Moreover, even if the Tender Specifications did not make clear the applicable law, common law choice of law principles would still dictate the application of Dominican law. In contracts cases, New York uses a "center of gravity" or "grouping of contacts" approach. *Fieger*, 251 F.3d at 394.  This analysis takes into account several factors, including the place of contracting, the place of performance, the location of the subject matter and the domicile of the contracting parties. *Globalnet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006).  Here, these factors weigh heavily in favor of applying Dominican law.  Cap Cana's domicile is the Dominican Republic.  The Tender Specifications were signed in the

15

Dominican Republic.  The land itself and the development that is to take place on it is in the Dominican Republic.  The center of gravity of this contract clearly resides in the Dominican Republic.  Therefore, Dominican law should govern.

Notwithstanding the applicability of Dominican law to this case, we analyze the claims themselves below under both Dominican and New York law.  Under either set of laws, the claims should be dismissed.

**B.    Count I:  Cap Cana Did Not Breach Any Alleged Agreement**

Praxi has failed properly to allege breach of contract under both Dominican and New York law.  To establish a prima facie case for breach of contract under Dominican law, a plaintiff must prove that a contract: (1) exists; (2) is valid; and (c) has been realized and breached.  Pereyra Dec. ¶ 44.  Claimed damages must be a result of that breach.  *Id.*  Likewise under New York law, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach.  *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, Inc.*, 392 F.3d 520, 525 (2d Cir. 2004) (citing *RIJ Pharm. Corp. v. Ivax Pharms., Inc.*, 322 F. Supp. 2d 406, 412 (S.D.N.Y. 2004)).

**1.    The Tender Specifications**

As an initial matter, the only operative agreement involving Praxi and Cap Cana was the Tender Specifications, which set out the process through which Las Iguanas was to be developed.  Praxi has not identified a single provision or aspect of that agreement that has been breached by Cap Cana.  Merely alleging that an agreement existed and was breached is not enough.  *See Twombly*, 127 S. Ct. at 1964-65 (requiring the grounds of entitlement to be based on more than labels and conclusions).  This is true under both Dominican and New York law.  Under Dominican law, the burden rests with the plaintiff to "prove not only the existence of the obligation, but the alleged breach of such obligation."  Pereyra Dec. ¶ 45.  Here, Plaintiff fails to

16

specifically allege the existence of an obligation pursuant any written agreement at all, much less

one that was valid, realized and subsequently breached.  Under New York law, a plaintiff fails as

a matter of law to successfully plead a breach of contract claim if the pleading does not describe

the specific provisions of the contract upon which liability is predicated.  *See Leadsinger, Inc. v.*

*Cole*, No. 05 Civ. 5606, 2006 U.S. Dist. LEXIS 55638, at *31-32 (S.D.N.Y. August 10, 2006)

(motion to dismiss contract claim granted where complaint was silent as to the parties'

obligations under the contract); *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272,

2004 U.S. Dist. LEXIS 83, at*24-25 (S.D.N.Y. Jan. 6, 2004) ("A breach of contract claim will be

dismissed [] as being too vague and indefinite, where the plaintiff fails to allege, in

nonconclusory fashion, the essential terms of the parties purported contract, including the

specific provisions of the contract upon which liability is predicated." (internal quotations

omitted)).

   Plaintiff has not identified a single provision of the Tender Specifications

breached by Cap Cana, nor could it.  The Tender Specifications required the winning bidder to

sign the final SPA within 30 working days of the opening of the bids.  Cap Cana could and did,

within its discretion, extend this term.  However, if the winning bidder failed to sign the SPA

within the specified term, Cap Cana reserved the right to cancel the bidding process.  Ex. 2 at 12.

That is what happened here.  The Complaint does not allege anything to the contrary.  There has

been no breach of the Tender Specifications under either Dominican or New York law.

   **2.**  **The Alleged Joint Venture**

   In a series of confusing and conclusory allegations, Plaintiff also appears to allege

that, separate and apart from the Tender Specifications, Cap Cana entered into a joint venture

with Praxi.  Under Dominican law, this claim fails for the same reason the breach of contract

claim fails – Plaintiff does not allege the existence of a valid contract that was subsequently breached.  *See* Pereyra Dec. ¶ 45.

Under New York law, a joint venture requires five elements: (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must a mutual promise or undertaking of the parties to share in the profits of the business and submit to the burden of making good the losses.  *Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 109 (2d Cir. 2004) (citing *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir. 2003)); *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990).  All of these elements must be present before a joint venture will be found to exist.  *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004) ("The absence of any one factor 'is fatal to the establishment of a joint venture.'") (citation omitted).  Finally, proof of a joint venture must be express. *DIRECTV Group, Inc. v. Darlene Invs., LLC*, 05 Civ. 5819, 2006 U.S. Dist. LEXIS 69129, at *16 (S.D.N.Y. August 10, 2006) (failure to proffer express evidence of intent fatal to joint venture claim) ; *Tully v. Sylvan Lawrence Co.*, No. 97 Civ. 5762, 1999 U.S. Dist. LEXIS 1207, at *6 (S.D.N.Y. Feb. 4, 1999) (no intent to form a joint venture from a contract shown where the term "joint venture" was not in the parties' contract); *see also Solutia, Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 444 (S.D.N.Y. 2006) ("sophisticated parties . . . would not 'usually' enter into joint ventures involving . . . hundreds of millions of dollars without memorializing every element of their agreement in a writing") (quoting *Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005)).

Here, Praxi fails to plead the existence of any document showing a "specific agreement," separate and apart from the Tender Specifications, by Cap Cana to enter into a joint venture. Praxi's conclusory statements regarding the existence of such a venture are insufficient as a matter of law. *Darlene,* 2006 U.S. Dist. LEXIS 69129, at *14 (conclusory statements that a joint venture was formed are insufficient as a matter of law).

Each of the allegations in the Complaint that reference a joint venture relate only to preliminary discussions between Cap Cana and Praxi. When parties contemplate further negotiations and the execution of a final contract, preliminary discussions do not create a binding contract. *Cara*, 420 F.3d at 153. While a preliminary agreement that comprises all of the elements of the ultimate objective may be enforced, one that does not commit the parties to that ultimate objective does not create an obligation. *Solutia*, 456 F. Supp. 2d at 443 (S.D.N.Y. 2006). Although Praxi alleges that it formed Puerto de Alma for purposes of creating a joint investment opportunity with Cap Cana, Complaint ¶ 12, the Complaint does not suggest in any way that Cap Cana ultimately invested in the new company, signed any document outlining the terms of the alleged agreement or entered into any binding agreement to make the investment and form a joint venture. *See id.* at 445 (finding that an agreement to enter into a joint venture at a later date did not bind the parties before finalization). Indeed, it is telling that in referring to the proposed joint venture, the Complaint uses phrases like "was to form," "was to enter," "would be issued" and "was to contribute." Complaint ¶ 12. The alleged joint venture was never consummated and no liability can arise from an alleged breach of it under either Dominican or New York law.

## C. Count II: Cap Cana Did Not Owe Any Fiduciary Duties To Praxi

Cap Cana could not have breached a duty based on the existence of a joint venture, because as already set out above, there was no joint venture. Pereyra Dec. ¶ 48 (breach

of "fiduciary duties" must be the "inherent consequences of a binding contract"); *Darlene* 2006 U.S. Dist. LEXIS 69129, at *14 (finding a claim for breach of fiduciary duty insufficient as a matter of law when party made nothing more than conclusory statements that a joint venture was formed); s*ee also Sotheby's Fin. Servs. v. Baran*, 107 Fed. Appx. 235, 238 (2d Cir. 2004) (finding that no joint venture existed, and thus, there was no breach of fiduciary duty based on the existence of a joint venture); *accord B. Lewis Prods. v. Angelou*, 99 Fed. Appx. 294, 295-296 (2d Cir. 2004) (same).  Furthermore, the allegations concerning the joint venture are too vague and conclusory to determine how any duty was breached.  *See Twombly*, 127 S. Ct. at 1964-65. Because the Complaint does not specify what agreement constituted the joint venture and what the terms of that agreement would have been, neither Cap Cana nor this Court can properly determine what would constitute a breach.

> **D.    Count III:  Praxi's Promissory Estoppel Claim Is Insufficient As A Matter Of Law**

There are no specific causes of action explicitly termed "promissory estoppel" under Dominican law.  Such an action may, however, be covered by civil liability pursuant to section 1382 of the Dominican Civil Code.  *See* Pereyra Dec. ¶ 50.  Such a claim requires proof of: (1) the existence of fault by defendant; (2) damages by plaintiff; and (3) a causal connection between defendant's fault and plaintiff's damages.  Pereyra Dec. ¶ 49.  Where there is an express contract, such a claim will only stand if defendant's fault is "extra-contractual" and "grave." Pereyra Dec. ¶ 51.

Similarly, to establish a claim for promissory estoppel under New York law, a plaintiff must prove three elements: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance. *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).  A clear and unambiguous promise may

not be based on conclusory allegations or otherwise ambiguous terms. *See Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir.1996) (dismissing a promissory estoppel claim based on a lack of promise because the promise depended upon an ambiguous term as determined by the court rather than the plaintiffs). Furthermore, injury must be substantial and directly based upon the alleged promise. *Kaye* 202 F.3d at 615. Finally, promissory estoppel substitutes for contractual consideration only "where one party relied on another's promise without having entered into an enforceable contract." *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 993 (S.D.N.Y. 1989) (referencing E. Allan Farnsworth, *Contracts*, § 2.19 at 89-98 (1982)). In general, a valid contract will prevent a claim for estoppel when the events arise out of the same subject matter. *See Clark-Fitzpatrick Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (affirming dismissal of claim because "existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter").

Praxi's promissory estoppel claim fails for the same reason its breach of contract and breach of fiduciary duty claims fail – the only contract ever entered into between Praxi and Cap Cana is the Tender Specifications. The Tender Specifications required that the parties formally execute a SPA, but this was never done. The express nature of the Tender Specifications negates any possible claim of promissory estoppel. *See Clark-Fitzpatrick*, 70 N.Y.2d at 388 (written contract precludes quasi-contract claim). This is true under Dominican law because any alleged "fault" on the part of Defendants would be covered by the express contract, thus not "extra-contractual," and it is true in New York as a matter of law.

Further, every alleged promise referenced by the Complaint is encompassed by the Tender Specifications and was contingent upon the signing of the SPA. Any reliance by

Praxi in expending funds on lawyers, architects, travel and other expenses was reliance upon the Tender Specifications and not on some other promise. Thus, under Dominican law, Plaintiff fails to plead the necessary causal connection between an alleged extra-contractual fault and its alleged damages; and under New York law, Plaintiff utterly fails to plead any semblance of a "clear and unambiguous promise" upon which it "reasonably" relied that was not already encompassed by the Tender Specifications. The fact that Praxi ultimately had to absorb its expenditures is a result of its own failure rather than any alleged, non-specific promise by Cap Cana.

### <u>CONCLUSION</u>

For the foregoing reasons, Cap Cana, S.A. requests that the Court dismiss the Complaint with prejudice.

Dated: New York, New York
February 7, 2008

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By  <u>s/Jonathan K. Youngwood</u>
Jonathan K. Youngwood
Tamala T. Boyd
425 Lexington Avenue
New York, New York  10017-3954
Telephone: (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for Defendant*
CAP CANA, S.A.