Altman & Company P.C.
260 Madison Avenue
22nd Floor
New York, New York 10016
(212) 683-7600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PRAXI, LLC,

        Plaintiff,

-against-

CAP CANA, S.A., DEUTSCHE BANK A.G.,
and DEUTSCHE BANK SECURITIES INC.,

        Defendants.

07 Civ. 9727 (LTS)

**DECLARATION OF DARIEN DASH**

---

STATE OF NEW YORK )
                ) ss.:
COUNTY OF NEW YORK)

      DARIEN DASH declares, pursuant to 28 U.S.C § 1746, as follows:

      1. I am an individual residing in the State of New Jersey and am a managing director of plaintiff Praxi, LLC ("Praxi"). I submit this declaration in opposition to the motions of defendants Cap Cana, S.A., Deutsche Bank A.G., and Deutsche Bank Securities Inc.

**My Background; Praxi;**
**Las Iguanas Opportunity**

      2. I am a businessman and have been involved in several businesses. In the 1990's I formed the first internet service provider marketed primarily to minorities in the United States. I have also been involved in assisting individuals and companies to obtain financing and in the operation of an

information technology servicing company. Most relevant to this matter, I am one of the two managing directors of Praxi, which is a Delaware limited liability company with offices in New York.

3. Both I and the other person who manages Praxi with me reside in New Jersey and work there and in New York City. Praxi has not done business abroad except to the extent it did so with Cap Cana. We have brought this action here because it is by far the most convenient place for us to maintain it. Litigation in the Dominican Republic would be problematic for us, not only because I do not speak Spanish but also because we do not have the great resources of the defendants to litigate overseas.

4. In the spring of 2007, an opportunity to own and develop a subdivision of a major new resort called "Cap Cana" in the Dominican Republic came to our attention. The subdivision was named "Las Iguanas." In or about April 2007, Cap Cana, S.A. requested bids for the purchase of Las Iguanas, which the winning bidder was to develop. We received a bid tender document from Cap Cana, S.A. The English version of that document (Exh. C hereto) was entitled "Summary Basis Bidding Development of Las Iguanas" and was dated April 10, 2007. Strangely, that document is not identical to the English translation of the bid tender document attached as Exhibit 2 to Cap Cana, S.A.'s motion to dismiss Praxi's claims against it. The Spanish version of the bid tender document is annexed as Exhibit 1 to those papers.

5. As set forth in Cap Cana, S.A.'s English-language bid tender document (Exh. C), each bidder was required to deposit

$1,000,000 into an escrow account. (Exh. C at pp. 3, 10, 13) That amount and all other monetary sums relating to Las Iguanas were denominated in U.S. dollars alone; none were denominated in Dominican pesos. (Id. at pp. 3, 8, 10, 13; see also Cap Cana, S.A. motion Exh. 1) The bid tender document provided that the winning bidder would thereafter have thirty "working days" to complete a formal contract with Cap Cana S.A. for the acquisition of the Las Iguanas property. (Id. at p. 12)

      6. As also stated in Cap Cana, S.A.'s bid solicitation document, the escrow account of Cap Cana, S.A.'s escrow agent for the Las Iguanas transactions was located in a California branch of Comerica Bank, a United States bank with no offices in the Dominican Republic.[1] Not only the bidders' $1 million "guarantee deposits," but also payments that the winning bidder was to make to purchase the Las Iguanas property, were to be transmitted to that U.S. account. (Id. at p. 9, 10, 13) That document also refers to the "bond issue prospectus [for Cap Cana] through Bear Stearns." (Id. at p. 11)

      7. Cap Cana, S.A.'s bid tender document also contained a choice of law provision. Each of Cap Cana, S.A.'s three English-language versions of that provision that I have now seen is different.[2] In the English-language version that it provided

---

[1] See Exh. A at p. 10; the same reference is of course made in Exhibits 1 and 2 to the declaration of George Spence in support of Cap Cana, S.A.'s motion.

[2] The other two English language versions of that provision that Cap Cana, S.A. has provided are found in the "translation" at Exhibit 2 to its moving papers and the quotation

to Praxi in the Spring of 2007, Section 8 of that document, which is headed "applicable law," provides:

> It is expressly understood in case of conflict or interpretation of the terms and regulations of the present document, that same shall be governed by the laws and courts of the Dominican Republic.
>
> All documents to be signed as a result of the present document shall be governed by the laws and courts of the Dominican Republic.

Exh. A at p. 13.  The appearance of the word "courts" in the last sentence appears to be an error.[3]

   8.   Praxi formed a wholly-owned subsidiary, Praxi Caribbean Realty Partners, LLC ("Praxi Caribbean"), to exploit the Las Iguanas opportunity.  Praxi then prepared to submit a bid.  We approached Deutsche Bank through its New York City offices in order to obtain financing for the bid.  Deutsche Bank expressed a keen interest in financing the project and assured Praxi that it would work in good faith toward a definitive financing arrangement if Praxi was the bid winner.

   9.   In support of Praxi's bid, Deutsche Bank delivered to Praxi a June 7, 2007 "Mandate Letter" in which Deutsche Bank represented that it (and/or its affiliates) would "work with"

---

of that choice of law provision at paragraph 39(ii) of the declaration of Luis Miguel Pereyra C. in support of its motion.

   [3]   See Cap Cana, S.A. Exhibit 1 at p. 13, ¶ VIII.  In his declaration, Cap Cana, S.A. attorney Luis Miguel Pereyra C. quotes the language of that provision to be: "it is expressly understood that, in the event of conflicts or interpretations of the terms of this agreement, they shall be governed by the laws and law-courts of the Dominican Republic.  All Documents to be executed as a result of this document shall be governed by the laws of the Dominican Republic."  (Pereyra C. declaration at ¶ 39(ii))

4

Praxi Caribbean and affiliated companies to provide a $65,000,000 loan to it, and a June 8, 2007 letter in which Deutsche Bank represented that it was "highly interested" in providing that financing.[4] The Mandate Letter (Deutsche Bank Exh. A) required Praxi to use Deutsche Bank exclusively to finance the proposed Las Iguanas transaction for a period of at least six months from the date of the letter. It contained a New York forum selection clause and the "Highly Interested Letter" (Deutsche Bank Exh. B) referred Praxi to a New York Deutsche Bank officer named Bradshaw McKee for questions.

    10. Charise Espinosa (Praxi's other managing director) and I discussed the bidding and contracting process with Cap Cana, S.A. officers and agents prior to and after Praxi's submission of a bid for the Las Iguanas project. Those Cap Cana, S.A. personnel included its principal Ricardo Hazoury and its chief financial officer, Juan Vidiella. They of course spoke with me in English, as I do not speak Spanish. They and everyone else with whom I spoke at Cap Cana, S.A. spoke English well.

**Winning Praxi Bid; Joint Venture With Cap Cana, S.A.**

    11. In June 2007, Praxi, through a local company, submitted a bid of $85,000,000 to Cap Cana, S.A. for Las Iguanas and was declared the bid winner. As set forth in the complaint, after negotiations that we conducted largely from New York, Praxi thereafter entered into a joint venture agreement with Cap Cana,

---

[4] The Mandate Letter and Highly Interested Letter are annexed as Exhibits A and B to Deutsche Bank's papers.

S.A. The substance of the agreement is summarized in paragraphs 12-14 of Praxi's current complaint. Praxi was to participate in the project from New York, which was to be the site of most of Las Iguanas' marketing efforts and the place from which Praxi would oversee the retention of architects (e.g. Richard Meiers' firm), interior designers, consultants, financiers (i.e. Deutsche Bank), and other necessary service providers.

12. Praxi conducted discussions with Deutsche Bank for financing for Las Iguanas. Bradshaw McKee was our principal contact at Deutsche Bank, though we also spoke to his colleagues Nicholas Ferrario and Alex Etkes and Deutsche Bank managing director Gonzalo Barbon. All of those persons worked out of Deutsche Bank's New York offices and virtually all of our communications with them occurred within the United States. For some reason Deutsche Bank's "Highly Interested" and "Mandate" letters purported to come from the "Deutsche Bank A.G. London Branch." I did not to my knowledge have significant communications with any of that bank's London employees.

**Cap Cana Emphasis on U.S.**

13. It was no coincidence that Cap Cana, S.A. found us and Deutsche Bank in the United States. Although Las Iguanas and the rest of the Cap Cana resort are located on land in the Dominican Republic, just about everything else having to do with it is centered in the United States. The intended market is not Dominican citizens but those of the United States (and to a

lesser extent Europe).  Advertisements for Cap Cana routinely appear in United States publications.[5]  Cap Cana, S.A. and Deutsche Bank have even announced that U.S.-based Deutsche Bank subsidiary Mortgage IT will provide financing to qualified purchasers of properties at Cap Cana.  (Exh. E)  That financing is obviously aimed at United States residents.

14.  A late July 2007 draft of a business plan that Cap Cana, S.A. created for Las Iguanas with Praxi's input (Exh. F hereto) provides a hint as to some of Cap Cana's contacts with the United States.  Once more, all of the monetary figures are stated in U.S. dollars and not in pesos.  The plan touts the short flight times from Miami (two hours) and New York (three hours) to Punta Cana airport some ten minutes from Cap Cana. (Id. at p. 4)[6]  A chart at page 5 of that document touts some of the major companies taking part in the project.  The companies Cap Cana, S.A. lists there are:

- Nicklaus Design
- Soto Grande
- Stewart Title
- The Trump organization
- Sinercon
- Bear Stearns
- GVA Worldwide
- Simpson Thacher
- CB Richard Ellis (Real Estate)
- Troon Golf
- Hillier & Assocs.
- Coastal Systems Int'l
- Alta Bella Hotels
- Weitz Golf
- Deutsche Bank
- Deloitte & Touche
- KPMG
- International Marinas

---

[5]   See e.g. the advertisements annexed hereto as Exhibit D, which I found in copies of a December 2007 New York Times Homes advertising supplement.

[6]   Direct flights are also available between Santo Domingo, D.R. and New York on American Airlines, Delta Airlines, and Continental Airlines.  Many other airlines offer one stop flights between the two cities.  Flight times from New York actually run a little longer than three hours.

7

        - Jack Nicklaus Signature Golf Course

Of those companies, only Sinercon, a construction firm, is headquartered in the Dominican Republic. The vast majority of those companies are of course headquartered in the United States, as are most of the other companies mentioned in the plan, including RWO Acquisitions, Centurion Realty, and Richard Meier & Partners. A few others are headquartered in Europe.

        15. If anything, the draft business plan underemphasizes the contacts between Cap Cana and the United States. Its mention of an expansion into the United States and other international markets is understated and outdated, particularly as to Las Iguanas, as those are and for some time have been the main focus of the marketing efforts. Las Iguanas was directed primarily toward the young millionaire population in New York, Los Angeles, Florida, and Chicago.

**Cap Cana, S.A. and
Deutsche Bank Betray Praxi**

        16. In late August 2007 Cap Cana, S.A. officers told me that Deutsche Bank had proposed to finance its development of Las Iguanas directly to the exclusion of Praxi. Ricardo Hazoury informed me of that proposal in a telephone call from New York or New Jersey to the Dominican Republic in late August 2007. Messrs. Vidiella and Manuel Jimenez told it to me at Mr. Chow's and the Hilton Hotel in New York City, also in late August 2007. The defendants ultimately did that and excluded Praxi from the opportunity. In the course of those events, we exchanged

communications with Messrs. Hazoury and Vidiella, as well as Mr. Jimenez and Ms. Ana Roman, from Cap Cana, S.A.

17. Most of the discussions between Praxi and Cap Cana, S.A. took place between me (and sometimes also Ms. Espinosa) in New York (sometimes New Jersey) and Cap Cana in the Dominican Republic. We visited the Dominican Republic several times and Cap Cana officers visited New York on at least three occasions in connection with the Las Iguanas transaction.

Dated: February 29, 2008

DARIEN DASH