UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

PRAXI, LLC,

                      Plaintiff,                         07 Civ. 9727 (LTS)

       -against-

CAP CANA, S.A., DEUTSCHE BANK A.G.,
and DEUTSCHE BANK SECURITIES INC.,

         Defendants.

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
CAP CANA, S.A'S MOTION TO DISMISS CLAIMS AGAINST IT**

ALTMAN & COMPANY P.C.
260 Madison Avenue
22nd Floor
New York, New York 10016
(212) 683-7600

Attorneys for Plaintiff
 Praxi, LLC

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    THIS ACTION SHOULD REMAIN IN THIS COURT. . . . . . . . . . . . . . . . . . 6

    A.    Cap Cana's Bid Tender Does Not
        Require Litigation of Praxi's
        Claims in the Dominican Republic. . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    This Action Should not Be Dismissed on
        The Basis of the Forum Non Conveniens Doctrine. . . . . . . . . . . . . . . 9

        i.    Praxi is Entitled to a Strong Presumption
            That This Action Will be Litigated Here. . . . . . . . . . . . . . . . . 9

        ii.   Cap Cana, S.A. Has Not Overcome
            the Presumption Favoring This Forum. . . . . . . . . . . . . . . . . . 11

II.   PRAXI'S CLAIMS AGAINST CAP
    CANA, S.A. SHOULD BE SUSTAINED. . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.    New York Law Governs Praxi's Claims. . . . . . . . . . . . . . . . . . . . . . . 14

    B.    Pleading Standards for Joint Venture
        Agreements and Fiduciary Duty Claims. . . . . . . . . . . . . . . . . . . . . . 16

    C.    Praxi Has Alleged The
        Existence and Breach of its Joint
        Venture Agreement with Cap Cana, S.A. . . . . . . . . . . . . . . . . . . . . 17

    D.    Praxi Has Alleged that Cap Cana,
        S.A. Owed Fiduciary Duties to It. . . . . . . . . . . . . . . . . . . . . . . . . . 19

    E.    Praxi Has Alleged a Claim For
        Promissory Estoppel Against Cap Cana, S.A. . . . . . . . . . . . . . . . . . 19

III.  IF THE COURT DEEMS PRAXI'S
    ALLEGATIONS INSUFFICIENT IN
    ANY WAY, THEN PRAXI SHOULD BE
    GIVEN LEAVE TO AMEND ITS COMPLAINT. . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Altman & Company P.C.
260 Madison Avenue
22nd Floor
New York, New York 10016

Attorneys for plaintiff Praxi, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRAXI, LLC,

                Plaintiff,               07 Civ. 9727 (LTS)

    -against-

CAP CANA, S.A., DEUTSCHE BANK A.G.,
and DEUTSCHE BANK SECURITIES INC.,

      Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CAP CANA, S.A'S MOTION TO DISMISS CLAIMS AGAINST IT

### PRELIMINARY STATEMENT

Plaintiff Praxi, LLC submits this memorandum of law in opposition to the motion of defendant Cap Cana, S.A., to dismiss Praxi's claims against it. This memorandum is supported by the accompanying declarations of Eric Rosenberg and Darien Dash (the "Rosenberg Declaration" and "Dash Declaration," respectively) and the exhibits thereto.

Cap Cana, S.A.'s motion should be denied because this forum is not inconvenient, Praxi did not agree to litigate its claims elsewhere, and Praxi has stated claims against Cap Cana, S.A. Litigation of Praxi's claims in this forum is most convenient for Praxi. Its office is located here and one of its two officers speaks only English. The relevant Deutsche Bank A.G. and Deutsche Bank Securities (collectively, "Deutsche Bank") offices and officers are also located in New York City. Although Cap Cana, S.A. is headquartered in the Dominican Republic, it does most of its business in the United States. Its financing and marketing are primarily conducted here and its customers are located here. Its officers speak English and have easy access to New

York. More of the important witnesses are located in New York than in the Dominican Republic. Cap Cana, S.A. has therefore not come close to establishing the overwhelming balance of inconvenience necessary to justify dismissal on grounds of forum non conveniens. Praxi's claims are also outside the scope of the garbled choice of law and forum provision that Cap Cana, S.A. included in its bid tender document.

Cap Cana, S.A.'s contention that Praxi has failed to state claims against it under New York and Dominican law is also meritless. New York law should govern Praxi's claims because Cap Cana, S.A. has not shown the relevant laws of the two jurisdictions to be materially different, the "gravity" of those claims is centered more in New York than in the Dominican Republic, and the scope of Cap Cana, S.A.'s narrow choice of law provision does not encompass them. To support its motion, Cap Cana, S.A. mischaracterizes Praxi's complaint and purports to dispute its allegations. It repeatedly argues that Praxi does not refer to written proof of a joint venture in its complaint, though it cites no legal authority suggesting that such a reference is necessary. Cap Cana, S.A. cites eight totally irrelevant cases to support its assertion that Praxi has not adequately alleged a joint venture. Not a single one of them involves motions to dismiss on the pleadings or the pleading requirements for a claim of breach of a joint venture agreement.

In the event that the Court finds Praxi's complaint to be deficient in any respect, Praxi should be given leave to amend it. This case has just begun. In its single amendment to date, made a week after it filed its initial complaint, Praxi simply added Deutsche Bank Securities as a defendant. Praxi is submitting a proposed second amended complaint in which it adds more details to its allegations.

## BACKGROUND

Praxi commenced this action by complaint dated November 2, 2007. On November 9, 2007, prior to service of that complaint on the defendants, Praxi filed a first amended complaint in order to add Deutsche Bank Securities Inc. as a defendant. (Rosenberg

2

Dec. Exh. A). In the amended complaint (the "Complaint"), Praxi alleges that its principal place of business is located in New York City (id. ¶ 4) and that defendant Cap Cana, S.A. is a Dominican Republic corporation that was formed to own and operate a resort development in the Dominican Republic. (Id. at ¶ 5) Cap Cana, S.A. is alleged to have important contacts with, and to do most of its business in, the United States and specifically New York. It obtained its financing from Deutsche Bank and Bear Stearns in New York. (Id. at ¶¶ 5-7) It markets itself primarily to individuals in the United States. (Id. at ¶ 5)

In the spring of 2007, Cap Cana, S.A. allegedly requested bids for the purchase of a portion of the Cap Cana resort that it named "Las Iguanas," which the winning bidder was to develop. (Rosenberg Dec. Exh. A: Complaint at ¶ 9) Cap Cana, S.A. published its tender for bids in both Spanish -- the official Dominican language -- and English, obviously for the benefit of United States bidders. As set forth in that document (Dash Exh. C; Cap Cana, S.A. exhs. 1 and 2), each bidder was required to deposit $1,000,000 into an escrow account. That amount and all other monetary sums were denominated in U.S. dollars alone; none were denominated in Dominican currency. The bid tender document provided that the winning bidder would thereafter have thirty days to complete a formal contract with Cap Cana S.A. for the acquisition of the Las Iguanas property. (Id.)

As also stated in Cap Cana, S.A.'s bid tender document, the escrow account of Cap Cana, S.A.'s escrow agent for the Las Iguanas transactions was located in a California branch of Comerica Bank, a United States bank with no offices in the Dominican Republic. (Dash Exh. C at p. 10)[1] Not only the bidders' $1 million "guarantee deposits," but also payments that the winning bidder was to make to purchase the Las Iguanas property, were to be transmitted to that U.S. account. (Id. at p. 9, 10, 13) That document also refers to the "bond issue prospectus [for Cap Cana] through Bear Stearns," the New York investment bank. (Id. at p. 11)

---

[1]      See also Exhibit 2 to the declaration of George Spence in support of Cap Cana, S.A.'s motion at p. 10.

3

Cap Cana, S.A.'s bid tender document contained a choice of law provision. Section VIII of that document, which is headed "applicable law," provides:

> It is expressly understood that, in the event of conflicts or interpretations of the terms of this agreement, they shall be governed by the laws and law-courts of the Dominican Republic. All documents to be executed as a result of this document shall be governed by the laws of the Dominican Republic."[2]

According to Praxi, it formed a wholly-owned subsidiary, Praxi Caribbean Realty Partners, LLC ("Praxi Caribbean"), to exploit the Las Iguanas opportunity. (Exh. A: Complaint at ¶ 10) Praxi then prepared to submit a bid. It approached Deutsche Bank, through the bank's New York City offices, in order to obtain financing for its bid. Deutsche Bank expressed a keen interest in financing the project and assured Praxi that it would work in good faith toward a definitive financing arrangement if Praxi was the bid winner.

Praxi further alleges that in support of its bid, Deutsche Bank delivered to it a June 7, 2007 "Mandate Letter" in which Deutsche Bank represented that it (and/or its affiliates) would "work with" Praxi Caribbean to provide a $65,000,000 loan to it, and a June 8, 2007 letter in which Deutsche Bank represented that it was "highly interested" in providing that financing. (Complaint ¶ 10) The "Mandate Letter" contained a New York forum selection clause and the "Highly Interested Letter" referred Praxi to a New York Deutsche Bank officer named Bradshaw McKee for questions.[3]

In June 2007, Praxi submitted a bid of $85,000,000 to Cap Cana, S.A. for Las Iguanas and was declared the bid winner. (Exh. A: Complaint at ¶ 11) However, Cap Cana, S.A. indicated that it did not simply want to allow Praxi to develop Las Iguanas as the bidding process

---

[2]    Declaration of Luis Miguel Pereyra C. in support of Cap Cana, S.A.'s motion, at ¶ 39(ii). The English translation that Cap Cana, S.A. provided to Praxi together with the Spanish version was different. See Dash Dec. ¶ 6 and Exh. C at p. 13. Cap Cana, S.A. offers a third translation as Exhibit 2 to its papers.

[3]    See Declaration of Patrick Smith in support of Deutsche Bank's motion to dismiss, Exh. A (Mandate Letter) p. 4 and Exh. B (Highly Interested Letter) p. 3.

had implied. Its representatives stated that it or the families that controlled it wanted to own twenty-five percent of the project. In the meantime Praxi, largely from New York, attempted to consummate a final acquisition agreement with Cap Cana, S.A. and to finalize a financing agreement with Deutsche Bank. Recognizing the impracticality of completing the final purchase and sale agreement with Praxi in thirty days, Cap Cana, S.A. extended the deadline several times.

Praxi alleges that while it was negotiating with Deutsche Bank and Cap Cana, S.A. to consummate its acquisition of Las Iguanas pursuant to the bidding process, it finalized a joint venture agreement with Cap Cana, S.A. to exploit Las Iguanas. (Exh. A: Complaint at ¶ 12) Praxi alleges the terms of that agreement in some detail. (Id. at ¶¶ 12-14) Pursuant to it, Praxi and Cap Cana, S.A. agreed to share management of their Las Iguanas joint venture, including the design, construction, marketing, maintenance, and sales of apartments and other improvements there. (Id. at ¶ 14) Praxi agreed to take ultimate responsibility for those matters in consultation with Cap Cana, S.A., which agreed to provide advice and expertise to Praxi regarding them. They agreed that Praxi would participate from New York, which was to be the situs of most of Las Iguanas' marketing efforts and the place from which Praxi would oversee the retention of architects, financiers (i.e. Deutsche Bank), and other necessary service providers. (Id. at ¶ 14)

Both Praxi and Cap Cana, S.A. allegedly agreed to use their best efforts to obtain financing for the purchase and development of Las Iguanas. (Exh. A: Complaint ¶ 14) Recognizing that obtaining financing was the most immediate critical task that they faced and the only substantial remaining predicate to finalizing the purchase and sale agreement, they agreed to work together to secure that financing from Deutsche Bank.

Praxi alleges that it continued to work with Deutsche Bank in the summer of 2007 in order to reach a definitive financing agreement. (Complaint ¶ 15) Praxi's representatives also communicated with appraisers, architects, interior designers, construction companies, and realtors regarding the project. In reliance on Cap Cana, S.A.'s promises, Praxi expended substantial efforts and funds in furtherance of their venture.

5

According to Praxi, Cap Cana, S.A. breached its joint venture agreement with it in late August or early September 2007. (Rosenberg Exh. A: Complaint at ¶¶ 16, 19)  At that time, Deutsche Bank persuaded Cap Cana, S.A. to breach that agreement and instead develop Las Iguanas with Deutsche Bank. (Id. at ¶ 28)  Praxi and Deutsche Bank, while still purporting to work with Praxi, agreed to circumvent Praxi and to do business directly with each other to the exclusion of Praxi. (Id. at ¶ 16)  Cap Cana, S.A.'s failure to go forward with Praxi in developing Las Iguanas was of course a fundamental and total breach of their joint venture agreement to exploit Las Iguanas together. (Id. at ¶¶ 16, 19)

In consequence of the foregoing allegations, Praxi asserts five claims for relief. The first is for breach of contract against Cap Cana, S.A. (Rosenberg Exh. A: Complaint at ¶¶ 18-20)  The second, also against Cap Cana, S.A., is for breach of its fiduciary duties as a joint venture partner. (Id. at ¶¶ 21-23)  The third claim, in the alternative, is for promissory estoppel in order to recover the expenditures Praxi made in reliance on Cap Cana, S.A.'s promises. (Id. at ¶¶ 24-26)  Praxi asserts its fourth and fifth claims, for tortious interference with contract and fiduciary duties, against Deutsche Bank. (Complaint at ¶¶ 27-31)  Those claims are predicated on Deutsche Bank's intentional and knowing inducement of Cap Cana, S.A. to breach its joint venture agreement with, and fiduciary duties to, Praxi.

## ARGUMENT

### I.    THIS ACTION SHOULD REMAIN IN THIS COURT.

#### A.    Cap Cana's Bid Tender Does Not Require Litigation of Praxi's Claims in the Dominican Republic.

Courts in the Second Circuit use a "four-part analysis" to decide whether to dismiss a claim on the basis of a forum selection clause. Phillips v. Audio Active Limited, 494 F.3d 378, 383 (2d Cir. 2007).  Specifically, they determine the (1) validity and (2) type of the clause at issue, (3) decide whether the claims and parties in the action are within its scope, and if it is valid and governs the claims, (4) ascertain whether the resisting party has rebutted the

presumption of enforceability.  Id. at 383-84.  The plaintiff's choice of forum will not be

disturbed by such a provision "unless the contract evinces agreement by the parties that [the

plaintiff's] claims cannot be heard there."  Id. at 387.  In deciding the third question, regarding the

scope and applicability of a forum selection clause, the courts accept the plaintiff's allegations as

true and draw all inferences in the plaintiff's favor.  Rey-Willis v. Citibank, N.A., 2003 WL

21714947 at * 3 (S.D.N.Y. 2003).

      The issue of the applicability of a forum selection provision to a plaintiff's claims

"is one of contract interpretation.  Hence, [the courts'] initial focus is on the language of the

contract."  Phillips, 494 F.3d at 386.[4]  In that "language-specific" inquiry, the courts do not

resolve doubts in favor of a broad reading of the clause, as they do in the case of arbitration

provisions.  Id. at 389-90.  Indeed, because general contract law governs the issue, courts

interpret ambiguous forum selection provisions against their drafters.[5]  Where the forum

selection provision covers only claims "concerning" an agreement or provides that the agreement

is "governed" by the laws of a certain jurisdiction, it will not apply to tort and other claims not

directly dependent on that agreement.  See e.g. Light v. Taylor, 2007 WL 274798 at * 5-6

(S.D.N.Y. 2007).  A provision relating to one contract will also generally not cover claims

brought pursuant to another contract.[6]

      Section VIII of Cap Cana, S.A.'s bid tender does not require dismissal of this

action in favor of a Dominican Republic forum because this action is outside the scope of that

---

[4]    See also Mellon Stuart Company v. North River Ins. Co., 1990 WL 13168 at * 4 (S.D.N.Y. 1990).

[5]    See Photopaint Technologies v. Smartlens Corp., 335 F.3d 152, 161 (2d Cir. 2003); Valley Juice Ltd. v. Evian Waters of France, 87 F.3d 604, 610 fn. 5 (2d Cir. 1996); Finch v. BHF (USA) Capital Corp., 2004 WL 1621180 at * 5 (S.D.N.Y. 2004); Unity Creations, Inc. v. Trafcon Inds., Inc., 137 F. Supp.2d 108, 111 (E.D.N.Y. 2001).

[6]    Rohrbaugh v. U.S. Management, Inc., 2007 WL 1965417 at * 3-4 (E.D.N.Y. 2007); Sempra Energy Trading Corp. v. Algoma Steel, Inc., 2001 WL 282684 at * 5-6 (S.D.N.Y. 2001), aff'd, 300 F.3d 242 (2d Cir. 2002).

7

hopelessly garbled provision. Assuming that that provision is even a forum selection clause, it is on its face applicable only to conflicts regarding, or interpretations of, the terms of the bid tender document. Even the declaration of Cap Cana, S.A.'s own expert witness confirms that construction of it. As he translates it, the relevant passage reads: "it is expressly understood that, in the event of conflicts or interpretations of the terms and regulations of this agreement, they shall be governed by the laws and law-courts of the Dominican Republic."[7] Only disputes directly concerning the bid tender document ("this agreement") are included in that phrase. The actual bid document, which reads "this document" rather than "this agreement," is even clearer in that respect. (Cap Cana Exhs. 1 and 2 at p. 13)

Praxi does not allege a conflict regarding the terms of Cap Cana, S.A.'s bid tender document.[8] Rather, Praxi alleges breach of, and interference with, a separate joint venture agreement and Cap Cana, S.A.'s fiduciary duties arising from that separate agreement. To the extent the choice of law/forum provision is ambiguous -- and it is at the very least ambiguous -- it should be interpreted against Cap Cana, S.A because it was part of a document that Cap Cana, S.A. drafted and purported to impose on all bidders.[9] In sum, that provision should have no bearing on the location of this lawsuit.

---

[7]    Luis Miguel Pereyra C. declaration at ¶ 39(ii). According to Mr. Pereyra, the Dominican courts would be willing to hear the case. Id. That of course does not mean that this Court cannot hear it.

[8]    Indeed, Praxi does not even assert a claim under any purchase and sale agreement that might have resulted after it was declared the winning bidder.

[9]    See cases cited in footnote 5 above.

**B.    This Action Should not Be Dismissed on
The Basis of the Forum Non Conveniens Doctrine.**

      **i.    Praxi is Entitled to a Strong Presumption
That This Action Will be Litigated Here.**

"[F]orum non conveniens is a discretionary device permitting a court in rare instances to 'dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim.'"  Wiwa v. Royal Dutch Shell Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000).  In order to decide forum non conveniens motions, the courts (1) determine the degree of deference to which the plaintiff's choice of forum is entitled, (2) ascertain whether an alternative forum exists, and (3) if one does exist, weigh certain factors relating to private and public interests affected by the choice of forum.  Wesoke v. Contract Svces. Ltd., 2002 WL 1560775 at * 4-5 (S.D.N.Y. 2002).  In making those determinations, the courts accept the plaintiff's allegations as true.  Dagen v. CFC Group Holdings, Ltd., 2003 WL 194208 at * 1 (S.D.N.Y. 2003).  In the absence of a hearing, "all pleadings and affidavits are construed in the light most favorable to the plaintiff, and where doubts exist, they are resolved in the plaintiff's favor."  Id.

Praxi's choice of this forum is entitled to great deference because it is a U.S. citizen residing in this District and has chosen this forum for legitimate reasons.  "While any plaintiff's selection of a forum is entitled to deference, that deference increases as the plaintiff's ties to the forum increase."  Wiwa, 226 F.3d at 101.  "This presumption 'is fortified where an American plaintiff brings suit against a foreign entity and the alternate forum is foreign."  American Stock Exchange v. Towergate Consultants Ltd., 2003 WL 21692814 at * 3 (S.D.N.Y.2003).[10]  Indeed, "a plaintiff's U.S. citizenship and residence is entitled to consideration in favor of retaining jurisdiction, such that the Gilbert factors will favor dismissal (in the absence of strong public interest factors favoring dismissal) only if the defendant can establish "such

----

[10]    See also Iragorri v. United Technologies Corp., 274 F.3d 65, 71 (2d Cir. 2001); Wiwa, supra, 226 F.3d at 102; Dagen v. CFC Group Holdings, Ltd., supra, 2003 WL 194208 at * 3.

oppressiveness and vexation . . . as to be out of all proportion to plaintiff's convenience." Wiwa, 226 F.3d at 102, quoting Guidi v. Intercontinental Hotels Corp., 224 F.3d 142, 146 (2d Cir. 2000). See also Wesoke v. Contract Svcs. Ltd., 2002 WL 1560775 at * 8.

In determining the level of deference to be accorded the plaintiff's choice of forum, the courts also examine the plaintiff's apparent motives for choosing that forum. Iragorri, supra, 274 F.3d at 71-72. "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." Id. "On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion . . ." Id. at 72.

Praxi's motivation for choosing this forum only enhances its claim to deference because it brought its case here for legitimate reasons. Its primary motive is the convenience of litigating it in its home jurisdiction. (Dash Dec. at ¶ 3) Praxi's two managing directors (both of them important witnesses) reside in nearby New Jersey; only one of them speaks Spanish. Two of the three defendants are located here and the witnesses affiliated with those defendants are also found in New York. (Id. at ¶¶ 3, 10, 12; Rosenberg Exh. A: Complaint ¶¶ 4-6, 10) Further, Cap Cana, S.A. conducts substantial business here, including its financing and most of its marketing and sales, and Praxi's performance was to take place primarily in New York. (Exh. A: Complaint at ¶¶ 11, 14; Dash Dec. at ¶¶ 5-6, 13-15) Conversely, no untoward motivation for Praxi's choice of the Southern District of New York can be ascribed to it. Cap Cana, S.A. has not offered any evidence to show that Praxi chose New York to inconvenience it, to take advantage of hostility toward it or toward Dominicans, or to obtain a forum that is particularly generous to plaintiffs. See Iragorri, 274 F.3d at 72; Wesoke, 2002 WL 1560775 at * 5-6. Praxi's choice is therefore entitled to the highest level of deference.

That Praxi did business with Cap Cana, S.A. in part in the Dominican Republic

does not lessen the deference owed its choice of forum as Cap Cana, S.A. contends.[11]  Praxi is

not a large corporation with "extensive foreign business" like the one that the Second Circuit

distinguished in Guidi v. Intercontinental Hotels, 224 F.3d at 147 (cited at p. 11 of Cap Cana,

S.A.'s brief).  Nor is it similar to the plaintiff trustees of a trust that conducted several

international litigations and "more closely resemble a corporation with substantial resources than

ordinary citizens" in LaSala v. Bank of Cyprus, 510 F. Supp.2d 246, 257 (S.D.N.Y. 2007) (on

which Cap Cana, S.A. heavily relies).  (Dash Dec. ¶ 3)  The equitable balance to which those

cases relate certainly favors Praxi over Cap Cana, S.A.

> ### ii.     Cap Cana, S.A. Has Not Overcome
> ###         the Presumption Favoring This Forum.
>
> Having determined [the level of deference to which plaintiff's choice of
> forum is entitled], the court must proceed to conduct the analysis set forth
> in Gilbert, Koster, and Piper.  First the court must balance the so-called
> "private interest factors," which generally pertain to convenience of the
> litigants.  These factors include: the relative ease of access to sources of
> proof; availability of compulsory process for attendance of unwilling, and
> the cost of obtaining attendance of willing, witnesses; and "all other
> practical problems that make trial of a case easy, expeditions and
> inexpensive."  Gilbert, 330 U.S. at 508.

Wesoke, 2002 WL 1560775 at * 6.  See also e.g. Byrne v. British Broadcasting Corp., 132 F.

Supp.2d 229, 238 (S.D.N.Y. 2001).

The defendant bears the burden of establishing each of those factors and the heavy

"tilt" of the factors in its favor.  Wiwa, 226 F.3d at 100; Jacobs v. Felix Block Erben Verlag Fur

Buhne Film und Funk, 160 F. Supp.2d 722, 742 (S.D.N.Y. 2001); Dagen, 2003 WL 194208 at *

4.  Making that showing is even more difficult now than it previously was due to the relative ease

of international travel of witnesses and copying of documents.  Jacobs, 160 F. Supp. 2d at 744

(burden of transportation of documents and witnesses has been "lessened"); Dagen, 2003 WL

---

[11]     See e.g. Wesoke, 2002 WL 1560775 at * 6 (forum choice of corporation doing
business in Poland with UK partners entitled to "considerable deference"); Leutwyler v. Officer
of Her Majesty Queen Rania al-Abdullah, 184 F. Supp.2d 277, 300 (S.D.N.Y. 2001) (choice of
plaintiff and his corporation, who travelled to Jordan to photograph royal family, entitled to great
deference due to U.S. residence).

194208 at * 4 ("no forum is as inconvenient today as it was in 1947").

The private interest factors do not support dismissal of this action.  Litigation will certainly be more convenient in this District than in the Dominican Republic for Praxi and Deutsche Bank and their affiliated witnesses, all of whom are located here.  (Exh. A: Complaint ¶¶ 6-7, 10, 14; Dash Dec. at ¶¶ 3, 9-15; Rosenberg Dec. ¶¶ 3-7)  Overall, most of the witnesses and documents are located in the United States and specifically in New York, including Praxi's members and the relevant Deutsche Bank officers.  (Id.)  Further, Praxi's Darien Dash, and presumably some of Deutsche Bank's employees, would be handicapped in a Dominican court because they do not speak Spanish.  (Dash Dec. at ¶ 3)  By contrast, all of the important witnesses, including Cap Cana, S.A.'s officers, speak English.  (Id. at ¶ 10)  Most of the relevant documents are almost certainly located in New York, though that factor is not particularly important due to the relative ease of copying and shipping them to either jurisdiction.  Wesoke, 2002 WL 1560775 at * 7.

Cap Cana, S.A. has not shown that it will be prejudiced by litigation in this Court. As a substantial corporation that obtained its financing, and does most of its marketing, in the U.S. and specifically in New York, it is familiar with and has access to this jurisdiction. (Complaint ¶¶ 5-7; Dash Dec. ¶¶ 13-15)  Its own officers can easily come to New York if and when required.  It has not shown that any witnesses will be unavailable if the litigation proceeds in this District.  See e.g. Wesoke, 2002 WL 1560775 at * 6; American Stock Exchange, 2003 WL 21692814 at * 5.  Cap Cana, S.A.'s failure to specifically identify a single witness who will be unavailable here undermines any argument it might make regarding witness availability.[12]  It has hardly established the overwhelming balance of inconvenience that it needs in order to oust Praxi from its chosen forum.

---

[12]    Deston Songs v. Wingspan Records, 2001 WL 799811 at * 6 (S.D.N.Y. 2001). See also Jacobs v. Felix Bloch Erben Verlag, supra, 160 F. Supp.2d at 743 (defendants' "surmise" that certain witnesses will be unwilling to testify).

The "public interest factors" also do not support dismissal of this action. Those factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home;" the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Jacobs v. Felix Bloch Erben Verlag, 160 F. Supp.2d at 742-43.[13]

Those factors are of no assistance to Cap Cana, S.A. Nothing indicates that congestion or administrative difficulties are greater in this Court than in the Dominican Republic. American Stock Exchange, 2003 WL 21692814 at * 5; Byrne, 132 F. Supp.2d at 238. New York's courts and juries have some interest in the case because Praxi is located here and some of the relevant events occurred in this District. Byrne, 132 F. Supp.2d at 238; Wesoke, 2002 WL 1560775 at * 7. And, as shown below, it is likely that United States, and specifically New York, law will govern most or all of the issues relevant to this action. However, even if Dominican law governed the entire case, and even if Cap Cana, S.A. had shown that a substantial number of witnesses resided in the Dominican Republic, those facts would not warrant dismissal. Wesoke, 2002 WL 1560775 at * 7. Giving Cap Cana, S.A. the benefit of the doubt -- something the courts do not do -- its motion is at best an effort to shift the burdens of an international litigation from itself to Praxi. That, however, is not a legitimate basis on which to grant that motion.[14]

---

[13]    See also Wesoke v. Contract Svcs. Ltd., 2002 WL 1560775 at * 7; American Stock Exchange v. Towergate Consultants, 2003 WL 21692814 at * 5; Byrne v. British Broadcasting, 132 F. Supp.2d at 238.

[14]    Jacobs, 160 F. Supp.2d at 743-44; Wesoke, 2002 WL 1560775 at * 8; Byrne, 132 F. Supp.2d at 238-39.

## II.     PRAXI'S CLAIMS AGAINST CAP CANA, S.A. SHOULD BE SUSTAINED.

### A.     New York Law Governs Praxi's Claims.

New York law should govern Praxi's claims because Cap Cana, S.A. has not shown that the relevant Dominican law is materially different from New York law. "The first question to resolve . . . is whether there is an actual conflict of laws . . . Where there is no actual conflict between the potentially applicable bodies of law, the court should dispense with the choice of law analysis and apply the law of the forum."[15]  New York courts[16] generally apply New York's laws where the parties do not sufficiently prove the foreign law and its differences from New York law or if they rely on New York law.[17]  Although Cap Cana, S.A. has tendered a vague declaration regarding Dominican law, neither it nor Cap Cana, S.A.'s other papers show the relevant parts of that law to be substantially different from New York's.

New York law is also applicable because the "gravity" of Praxi's claims is centered more in New York than in the Dominican Republic.  For contract claims, New York courts evaluate the "'center of gravity,' or 'grouping of contacts,' with the purpose of establishing which state has 'the most significant relationship to the transaction and the parties.'"[18]  The factors the courts examine for that analysis are the "place of contracting, . . . the places of

---

[15]     National Oil Well Maintenance Co. v. Fortune Oil & Gas, 2005 WL 1123735 at * 1 (S.D.N.Y. 2005).  See also IBM v. Liberty Mutual Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004).

[16]     "A federal court, sitting in diversity, applies the choice of law rules of the state in which it sits." American Special Risk Ins. Co. v. Delta America Re Ins. Co., 836 F. Supp. 183, 189 (S.D.N.Y. 1993).

[17]     Nigeria Charter Flights Contract Lit., 520 F. Supp.2d 447, 456-58 (E.D.N.Y. 2007) (party did not sufficiently prove foreign law); Haywin Textile Prods. v. Int'l Finance Investment and Commerce Bank, 152 F. Supp.2d 409, 413 (S.D.N.Y. 2001) (same).  See also Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 121 n. 5 (2d Cir. 1998) (parties relied on New York law).

[18]     Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 394 (2d Cir. 2001).  The test is also sometimes called the "paramount interest" test.  See also American Specialty Risk Ins. Co. v. Delta America Re Ins. Co., supra, 836 F. Supp. at 189; Stillman v. Nickel Odeon, S.A., 608 F. Supp. 1050, 1054 (S.D.N.Y. 1985).

negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties." Id.[19] The location of real estate involved in a lawsuit is not dispositive unless the plaintiff seeks to effect the transfer of title to land. Fieger, 251 F.3d at 396-98.

New York's relevant contacts to Praxi's claims exceed those of the Dominican Republic. Praxi is of course located in New York. Cap Cana, S.A. obtained its financing in New York, directed its bid process largely to Americans, and at all times expected to market Las Iguanas primarily in the United States. (Complaint ¶¶ 5-7, 14; Dash Dec. ¶¶ 13-15) Indeed, Las Iguanas' contacts are so heavily centered in the United States that it can accurately be said to be an American resort set on Dominican soil. Praxi's performance of its joint venture with Cap Cana, S.A. was to take place almost entirely in New York.

Other relevant contacts with Praxi's claims are neutral. The joint venture negotiations between Cap Cana, S.A. and Praxi took place in both the Dominican Republic and New York, with Praxi communicating largely from New York. (Exh. A: Complaint at ¶ 11; Dash Dec. at ¶¶ 11, 17) The "place of contracting" is for that reason uncertain. See American Special Risk Ins. Co., supra, 836 F. Supp. at 190. And Cap Cana, S.A.'s breach, together with Deutsche Bank, occurred in New York and the Dominican Republic. The location of the resort in the Dominican Republic is not dispositive because Praxi's joint venture agreement with Cap Cana, S.A. did not itself effect a transfer of title to land.

The "choice of law" provision in Cap Cana, S.A.'s bid tender document should not affect the law applicable to Praxi's claims. By its (garbled) terms it applies only to "conflicts or interpretations of the terms of this [the bid tender] document" and documents executed as a result of that document [the purchase and sale agreement]. (Dash Dec. Exh. C) The same is true

---

[19]    See also St. Paul Fire & Marine Ins. Co. v. Employers Reinsurance Corp., 919 F. Supp. 133, 136 (S.D.N.Y. 1996); Kristinus v. H. Stern Com. E Ind. S.A., 463 F. Supp. 1263, 1264-65 (S.D.N.Y. 1979).

pursuant to Mr. Pereyra C.'s translation, in which the word "agreement" is substituted for "document." (Pereyra C. Declaration at ¶ 39(ii)) That language is not broad enough to encompass Praxi's claims for breach of its separate joint venture agreement[20] or its other claims against Cap Cana, S.A. and Deutsche Bank.[21]

### B.    Pleading Standards for Joint Venture Agreements and Fiduciary Duty Claims.

Claims for breach of contract and breach of fiduciary duties require only compliance with Fed.R.Civ.Pro. 8.[22] As Judge Batts recently recited in Selmanovic v. NYSE Group, Inc., 2007 WL 4563431 at * 2 (S.D.N.Y. 2007):

> Federal Rule of Civil Procedure 8(a)(2) provides that civil complaints "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has explained that Rule 8(a)(2) requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . ." Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965, (2007). However, under Rule 8(a)(2), "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

"[A] plaintiff must allege "'only enough facts to state a claim to relief that is plausible on its face.'" Barkley v. Olympia Mortgage Co., 2007 WL 2437810 at * 9 (E.D.N.Y. 2007), quoting Bell Atlantic v. Twombly. See also 1st Rochdale Cooperative Group v. Geltzer, 2008 WL 170410 at * 2 (S.D.N.Y. 2008).

---

[20]    See e.g. Nat'l Oil Well Maintenance Co. v. Fortune Oil & Gas, supra, 2005 WL 1123735 at * 3-4.

[21]    See e.g. Krock v. Lipsay, 97 F.3d 640, 645-46 (2d Cir. 1996); Winter-Wolff Intern., Inc. v. Alcan Packaging Food and Tobacco, Inc., 499 F. Supp.2d 233, 240-41 (E.D.N.Y. 2007); Drenis v. Haligiannis, 452 F Supp.2d 418, 426 (S.D.N.Y. 2006); E-Trade Financial Corp. v. Deutsche Bank A.G., 420 F. Supp.2d 273, 290 (S.D.N.Y. 2006); In Re West Pan, Inc., 372 B.R. 112, 124 n. 10 (Brpty S.D.N.Y. 2007) (fiduciary duty claim not governed by narrow choice of law clause).

[22]    Diversified Carting, Inc. v. City of New York, 423 F. Supp.2d 85, 96 (S.D.N.Y. 2005) (breach of contract); Schupack v. Florescue, 1993 WL 256572 at * 3 (S.D.N.Y. 1993) (fiduciary duty claim).

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6):

> the court "assesses the legal feasibility of the complaint, but does not
> weigh the evidence that might be offered to support it." [citations omitted]
> The court therefore "must accept as true all of the factual allegations set
> out in plaintiff's complaint, draw inferences from those allegations in the
> light most favorable to plaintiff, and construe the complaint liberally."
> Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) . . .

Selmanovic, 2007 WL 4563431 at * 2.

**C.**   **Praxi Has Alleged The
Existence and Breach of its Joint
Venture Agreement with Cap Cana, S.A.**

> The indicia of the existence of a joint venture are: acts manifesting the
> intent of the parties to be associated as joint venturers, mutual
> contributions to the joint undertaking through a combination of property,
> financial resources, effort, skill or knowledge, a measure of joint
> proprietorship and control over the enterprise, and a provision for the
> sharing of profits and losses.

Milton Abeles, Inc. v. Creekstone Farms Premium Beef, 2007 WL 1434990 at * 3 & fn. 2

(E.D.N.Y. 2007), quoting Richbell Inf. Svces. v. Jupiter Partners, L.P., 309 A.D.2d 288, 298, 765

N.Y.S.2d 575, 584 (1st Dep't 2003).  Praxi has alleged all of those elements.

Cap Cana, S.A.'s argument,[23] that Praxi has failed to allege the existence of a

contract other than the "tender specifications," is absurd.  As alleged in the Complaint, Cap Cana

and Praxi agreed to the terms of the joint venture in or about early August 2007.  (Id. at ¶ 12)

Praxi alleges those terms in some detail at paragraphs 12-14 of its Complaint.  The most

fundamental of them was of course to exploit the Las Iguanas opportunity together.[24]

Cap Cana, S.A. tenders plainly defective reasoning in support of its argument that

---

[23]   Cap Cana, S.A. memorandum of law at pp. 16-17.

[24]   Abandoning Praxi and usurping the Las Iguanas opportunity for itself was a
fundamental breach of the joint venture agreement.  See e.g. ESI, Inc. v. Coastal Power
Production Co., 995 F. Supp. 419, 434 (S.D.N.Y. 1998) ("excluding and ejecting" plaintiff from
venture); Ackerman v. Landes, 112 A.D.2d 1081, 1082, 493 N.Y.S.2d 59, 60 (2nd Dep't 1985)
(defendants denied making oral joint venture agreement and "wholly excluded" plaintiffs from
venture); Glenmark, Inc. v. Carity, 30 Misc.2d 1065, 221 N.Y.S.2d 330 (S. Ct. N.Y. Co. 1961)
(exclusion of venturer before business done).

17

Praxi has alleged no contract. Cap Cana, S.A.'s assertion that "[p]laintiff fails to specifically allege the existence of an obligation pursuant [to] any written agreement at all," without so much as a reference to a statute of frauds defense,[25] is laughable. Its effective repetition of that contention in the following section of its brief[26] and elsewhere hardly enhances its credibility. The same is true of Cap Cana, S.A.'s observation that "it is telling that in referring to the proposed joint venture, the Complaint uses phrases like 'was to form,' 'was to enter,' 'would be issued' and 'was to contribute.'" (Cap Cana, S.A. brief at p. 19) That form of linguistic construction is of course necessary to describe the terms of executory contracts because they consist of promises to do things in the future, not just memorialization of things that have already been done.[27]

Cap Cana, S.A.'s argument, that Praxi has not adequately alleged the creation of a joint venture, is similarly frivolous. Not a single one of the eight cases that it cites in that section of its brief[28] involves a motion to dismiss or pleading standards for joint venture agreements. In some of Cap Cana, S.A.'s cases the courts granted summary judgment to defendants on the ground that they did not produce evidence sufficient to overcome their adversaries' factual showings that no joint ventures existed. Those cases are of course irrelevant to a motion to dismiss a claim on the pleadings in which Cap Cana, S.A. has not begun to meet the requirements for a summary judgment motion. In Tully v. Sylvan Lawrence Co., 1999 WL

---

[25]    Cap Cana, S.A. brief at pp. 16-17. The statute of frauds of course does not apply to joint venture agreements. See Milton Abeles, Inc. v. Creekstone Farms Premium Beef, supra, 2007 WL 1434990 at * 3 & fn. 2. Nor are plaintiffs required to plead evidentiary detail.

[26]    Cap Cana, S.A. brief at pp. 17-19.

[27]    "[A] prospective business partner's 'promissory statement[s] as to what will be done in the future' . . . give rise . . . to a breach of contract claim . . ." Stewart v. Jackson & Nash, 976 F.2d 86, 89 (2d Cir. 1992). See also Richbell Inf. Svces. v. Jupiter Partners, supra, 309 A.D.2d at 290-93, 765 N.Y.S.2d at 579-80 (terms of alleged joint venture and also terms of other agreements described as actions the parties "would" take pursuant to those agreements).

[28]    That section runs from the bottom of page 17 to the top of page 19 of Cap Cana, S.A.'s brief.

60148 (S.D.N.Y. 1999), which Cap Cana, S.A. cites at page 18 of its brief, the court denied the

defendants' summary judgment motions! There the court held that factual issues remained even

though the parties' written agreement did not appear to support plaintiff's claim of a joint venture

and the plaintiff's representatives had made several deposition admissions undermining that

claim. Id. at * 2.

> **D.    Praxi Has Alleged that Cap Cana,**
> **S.A. Owed Fiduciary Duties to It.**

For the same reasons, Cap Cana, S.A.'s argument, that it did not owe fiduciary

duties to Praxi because it did not enter into a joint venture agreement with Praxi, is meritless.

Joint venturers owe each other fiduciary duties. See Milton Abeles, Inc. v. Creekstone Farms

Premium Beef, supra, 2007 WL 1434990 at * 5; ESI, Inc. v. Coastal Power Production Co.,

supra, 995 F. Supp. at 434. Praxi's allegations are therefore adequate to allege fiduciary duties,

which Cap Cana, S.A. breached.

> **E.    Praxi Has Alleged a Claim For**
> **Promissory Estoppel Against Cap Cana, S.A.**

> Under New York law, a properly pled promissory estoppel claim must
> assert the following elements: "(1) a promise, (2) reliance on the promise,
> (3) injury caused by the reliance, and (4) an injustice if the promise is not
> enforced." [citations omitted] However, "a detailed showing of the
> elements of promissory estoppel need not be shown to survive a pre-
> answer motion to dismiss." [citations omitted]

Peter L. Leepson, P.C. v. Allan Riley Co., Inc., 2006 WL 2135806 at * 5 (S.D.N.Y. 2006).

Praxi has properly alleged a promissory estoppel claim. Certainly Cap Cana,

S.A.'s argument, that "the only contract ever entered into between Praxi and Cap Cana is the

Tender Specifications," is misguided for the reasons described above. Nor does the rule, that the

existence of an enforceable contract precludes recovery in quasi contract, undermine Praxi's

claim. Praxi may plead that claim in the alternative. See Polargrid LLC v. Videsh Sanchar

Nigam Ltd., 2006 WL 903184 at * 3 (S.D.N.Y. 2006). See also Dagen v. CFC Group Holdings,

supra, 2003 WL 194208 at *3.

**III.    IF THE COURT DEEMS PRAXI'S
ALLEGATIONS INSUFFICIENT IN
ANY WAY, THEN PRAXI SHOULD BE
<u>GIVEN LEAVE TO AMEND ITS COMPLAINT.</u>**

If Praxi's claims are seen to be deficient in any way then it should be given leave to submit an amended complaint.  Praxi has already drafted a proposed second amended complaint in response to the defendants' current motions.  As stated in more detail in its papers in opposition to Deutsche Bank's pending motion to dismiss, the proposed pleading is not futile and Praxi has not previously had the opportunity to allege its claims in more detail in response to the defendants' objections.

<u>**CONCLUSION**</u>

For the foregoing reasons, Cap Cana, S.A.'s motion to dismiss the claims against it should be denied.

Dated: March 3, 2008

ALTMAN & COMPANY P.C.

By:_____
      Eric Rosenberg

260 Madison Avenue
22nd Floor
New York, New York 10016
(212) 683-7600

Attorneys for Plaintiff
  Praxi, LLC