UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PRAXI, LLC,

             Plaintiff,            07 Civ. 9727 (LTS)

     -against-

CAP CANA, S.A., DEUTSCHE BANK A.G.,
and DEUTSCHE BANK SECURITIES INC.,

         Defendants.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEUTSCHE
BANK DEFENDANTS' MOTION TO DISMISS CLAIMS AGAINST THEM**

ALTMAN & COMPANY P.C.
260 Madison Avenue
22nd Floor
New York, New York 10016
(212) 683-7600

Attorneys for Plaintiff
  Praxi, LLC

### TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . 10

I.   PRAXI HAS STATED A CLAIM AGAINST DEUTSCHE
     BANK FOR TORTIOUS INTERFERENCE WITH CONTRACT. . . . . 10

     A.   Pleading Standards for
          Tortious Interference Claims. . . . . . . . . 10

     B.   Praxi Has Alleged The
          Existence and Breach of its
          Contract with Cap Cana, S.A. . . . . . . . . . 12

     C.   Praxi Has Adequately Alleged that
          Deutsche Bank Caused Cap Cana, S.A.
          to Breach The Joint Venture Agreement. . . . . . 14

II.  PRAXI HAS STATED A CLAIM AGAINST
     DEUTSCHE BANK FOR TORTIOUS
     INTERFERENCE WITH FIDUCIARY DUTIES. . . . . . . . . 18

     A.   Praxi Has Adequately Alleged that
          Cap Cana Owes It Fiduciary Duties. . . . . . . 18

     B.   Praxi Has Sufficiently Alleged
          Deutsche Bank's Tortious Inter-
          ference with Cap Cana's Fiduciary Duties. . . . . 20

     C.   Praxi has Not Failed to Allege Causation. . . . . 21

     III. IF THE COURT DEEMS PRAXI'S
          ALLEGATIONS INSUFFICIENT IN
          ANY WAY, THEN PRAXI SHOULD BE
          GIVEN LEAVE TO AMEND ITS COMPLAINT. . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . 24

Altman & Company P.C.
260 Madison Avenue
22nd Floor
New York, New York 10016

Attorneys for plaintiff Praxi, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————

PRAXI, LLC,

                    Plaintiff,              07 Civ. 9727 (LTS)

          -against-

CAP CANA, S.A., DEUTSCHE BANK A.G.,
and DEUTSCHE BANK SECURITIES INC.,

                    Defendants.

——————————————————————

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEUTSCHE BANK DEFENDANTS' MOTION TO DISMISS CLAIMS AGAINST THEM

#### PRELIMINARY STATEMENT

          Plaintiff Praxi, LLC submits this memorandum of law in opposition to the motion of defendants Deutsche Bank A.G. and Deutsche Bank Securities Inc. (collectively, "Deutsche Bank") to dismiss Praxi's claims against them.  This memorandum is supported by parts of the accompanying declarations of Eric Rosenberg and Darien Dash (the "Rosenberg Declaration" and "Dash Declaration," respectively) and the exhibits thereto.

          Deutsche Bank's motion should be denied because Praxi has stated claims against it for tortious interference with contract and with Cap Cana, S.A.'s fiduciary duties to Praxi. Praxi alleges inter alia that it entered into a joint venture agreement with Cap Cana, S.A. to develop and operate a resort

called "Las Iguanas."  Praxi tapped Deutsche Bank to finance its participation in Las Iguanas and Deutsche Bank agreed to work with Praxi toward that end.  According to Praxi, Deutsche Bank instead induced Cap Cana, S.A. to cast Praxi aside and complete that project with Deutsche Bank to the exclusion of Praxi.  Praxi alleges the defendants' misconduct in sufficient detail to meet the requirements of Fed.R.Civ.P. 8.  Its contention that Deutsche Bank's interference caused Cap Cana, S.A. to breach its joint venture is hardly implausible, as Deutsche Bank suggests.

The contentions Deutsche Bank makes in support of its motion are meritless.  Its suggestion that Praxi's expenditure of some $500,000 on the Las Iguanas project somehow undermines its claim to $200 million in damages is erroneous because a party need not spend a penny to enter into a substantial binding contract.  Deutsche Bank's unsupported attempts to dispute Praxi's factual allegations are irrelevant to its present motion.  Another argument it makes, that Praxi cites no documents memorializing the joint venture, is meritless both because it does not cite any statute of frauds and because complaints need not contain evidentiary detail.  And Deutsche Bank's occasional reference to Dominican law is pointless because inter alia it effectively relies on New York law and does not show that law to be materially different from that of the Dominican Republic.  Ironically, many of Deutsche Bank's assertions and arguments suffer from the very infirmities of which it accuses Praxi: they are conclusory and unsupported.

2

In the event that the Court finds Praxi's complaint to be deficient in any respect, Praxi should be given leave to amend it. This case has just begun. In its single amendment to date, made a week after it filed its initial complaint, Praxi simply added Deutsche Bank Securities as a defendant. Praxi is submitting herewith a proposed second amended complaint in which it adds more details to its allegations regarding Deutsche Bank's interference with Praxi's joint venture agreement.

## BACKGROUND

Praxi commenced this action by complaint dated November 2, 2007. (Rosenberg Dec. ¶ 2) On November 9, 2007, prior to service of that complaint on the defendants, Praxi filed a first amended complaint in order to add Deutsche Bank Securities Inc. as a defendant. (Rosenberg Dec. ¶ 2 and Exh. A). In the amended complaint (the "Complaint"), Praxi alleges that its principal place of business is located in New York City (id. ¶ 4) and that defendant Cap Cana, S.A. is a Dominican Republic corporation that was formed to own and operate a resort development in the Dominican Republic. (Id. at ¶ 5) Cap Cana, S.A. is alleged to have important contacts with, and to do most of its business in, the United States and specifically New York. It obtained its financing from Deutsche Bank and Bear Stearns in New York. (Id. at ¶¶ 5-7) It markets itself primarily to individuals in the United States. (Id. at ¶ 5)

In the spring of 2007, Cap Cana, S.A. allegedly

requested bids for the purchase of a portion of the Cap Cana resort that it named "Las Iguanas," which the winning bidder was to develop. (Rosenberg Dec. Exh. A: Complaint at ¶ 9)  Cap Cana, S.A. published its tender for bids in both Spanish -- the official Dominican language -- and English, obviously for the benefit of United States bidders.  (Dash Dec. Exh. C)[1]  As set forth in that document, each bidder was required to deposit $1,000,000 into an escrow account.  That amount and all other monetary sums were denominated in U.S. dollars alone; none were denominated in Dominican currency.  The bid tender document provided that the winning bidder would thereafter have thirty days to complete a formal contract with Cap Cana S.A. for the acquisition of the Las Iguanas property.  (Id.)

As also stated in Cap Cana, S.A.'s bid document, the escrow account of Cap Cana, S.A.'s escrow agent for the Las Iguanas transactions was located in a California branch of Comerica Bank, a United States bank with no offices in the Dominican Republic.[2]  Not only the bidders' $1 million "guarantee deposits," but also payments that the winning bidder was to make to purchase the Las Iguanas property, were to be transmitted to that U.S. account.  (Dash Exh. C at p. 9, 10, 13'

---

[1]    See also exhibits 1 and 2 to Cap Cana, S.A.'s motion to dismiss Praxi's claims against it for Spanish and English versions of that same document.

[2]    See Dash Dec. Exh. C: English version of Cap Cana, S.A. bid tender request at p. 10.  A copy of another English translation of the Spanish version of that document is annexed as Exhibit 2 to the declaration of George Spence in support of Cap Cana, S.A.'s motion.

Cap Cana, S.A. Exhs. 1 and 2)    That document also refers to the "bond issue prospectus [for Cap Cana] through Bear Stearns," the New York investment bank.  (Id. at p. 11)

Cap Cana, S.A.'s bid tender document contained a choice of law provision.  Section VIII of that document, which is headed "applicable law," provides:

> it is expressly understood that, in the event of conflicts or interpretations of the terms of this agreement, they shall be governed by the laws and law-courts of the Dominican Republic.  All documents to be executed as a result of this document shall be governed by the laws of the Dominican Republic."[3]

According to Praxi, it formed a wholly-owned subsidiary, Praxi Caribbean Realty Partners, LLC ("Praxi Caribbean"), to exploit the Las Iguanas opportunity.  (Exh. A: Complaint at ¶ 10)  Praxi then prepared to submit a bid.  It approached Deutsche Bank, through the bank's New York City offices, in order to obtain financing for its bid.  Deutsche Bank expressed a keen interest in financing the project and assured Praxi that it would work in good faith toward a definitive financing arrangement if Praxi was the bid winner.

Praxi further alleges that in support of its bid, Deutsche Bank delivered to it a June 7, 2007 "Mandate Letter" in which Deutsche Bank represented that it (and/or its affiliates) would "work with" Praxi Caribbean to provide a $65,000,000 loan

---

[3]    Declaration of Luis Miguel Pereyra C. in support of Cap Cana, S.A.'s motion, at ¶ 39(ii).  The English translation that Cap Cana, S.A. provided to Praxi together with the Spanish version was slightly different.  See Dash Exh. C. at p. 13.  Cap Cana, S.A. offers a third translation as Exhibit 2 to its papers.

to it, and a June 8, 2007 letter in which Deutsche Bank
represented that it was "highly interested" in providing that
financing.  (Complaint ¶ 10)  The Mandate Letter is alleged to
have required Praxi to use Deutsche Bank exclusively to finance
the proposed Las Iguanas transaction for a period of at least six
months from the date of the letter.  The "Mandate Letter"
contained a New York forum selection clause and the "Highly
Interested Letter" referred Praxi to a New York Deutsche Bank
officer named Bradshaw McKee for questions.[4]

In June 2007, Praxi allegedly submitted a bid of
$85,000,000 to Cap Cana, S.A. for Las Iguanas and was declared
the bid winner.  (Rosenberg Exh. A: Complaint at ¶ 11)  However,
Cap Cana, S.A. indicated that it did not simply want to allow
Praxi to develop Las Iguanas as the bidding process had implied.
Its representatives stated that it or the families that
controlled it wanted to own twenty-five percent of the project.
In the meantime Praxi, largely from New York, attempted to
consummate a final acquisition agreement with Cap Cana, S.A. and
to finalize a financing agreement with Deutsche Bank.
Recognizing the impracticality of completing the final purchase
and sale agreement with Praxi in thirty days, Cap Cana, S.A.
extended the deadline several times.

Praxi alleges that while it was negotiating with

---

[4]    See Mandate Letter at p. 4 and Highly Interested Letter
at p. 3.  Those letters are attached as Exhibits A and B to the
declaration of Patrick Smith in support of Deutsche Bank's
motion.

Deutsche Bank and Cap Cana, S.A. to consummate its acquisition of Las Iguanas pursuant to the bidding process, it finalized a joint venture agreement with Cap Cana, S.A. to exploit Las Iguanas. (Exh. A: Complaint at ¶ 12)  Praxi alleges the terms of that agreement in some detail.  (Id. at ¶¶ 12-14)

Pursuant to the joint venture agreement, Praxi formed a Dominican Republic corporation called Puerto de Alma, S.A., which was to enter into the contract with Cap Cana, S.A. for the acquisition of Las Iguanas.  (Rosenberg Exh. A: Complaint at ¶ 12)  Praxi and Cap Cana, S.A. agreed that twenty-five percent of Puerto de Alma's stock would be issued to Cap Cana, S.A.  Puerto de Alma was to pay the $85,000,000 purchase price for Las Iguanas in two installments, in the amounts of $40,000,000 and $45,000,000, respectively.  (Id.)  However, Cap Cana, S.A. would pay one quarter of the purchase price, or $21,250,000, as it was paid to the seller (Cap Cana, S.A. itself).  Therefore Cap Cana, S.A. was to contribute $10,000,000 of the first $40,000,000 and $11,250,000 of the second $45,000,000, or a total of $21,250,000. Praxi was to contribute the remainder from moneys it would raise. Even with the joint venture agreement, Praxi therefore still needed financing, which it was negotiating with Deutsche Bank.

Praxi alleges that, pursuant to the terms of their joint venture agreement, Cap Cana, S.A. was to receive twenty-five percent of the profits generated from Las Iguanas and stood to lose the value of its efforts as well as the pro rata share of its capital contributions if the project were not successful.

7

(Complaint ¶ 13)  Praxi would absorb the remainder of the profits and losses with adjustments for interests that it might sell to others.  They also agreed that they would share management of their Las Iguanas joint venture, including the design, construction, marketing, maintenance, and sales of apartments and other improvements there.  (Id. at ¶ 14)  Praxi agreed to take ultimate responsibility for those matters in consultation with Cap Cana, S.A., which agreed to provide advice and expertise to Praxi regarding them.  They agreed that Praxi would participate from New York, which was to be the situs of most of Las Iguanas' marketing efforts and the place from which Praxi would oversee the retention of architects, financiers (i.e. Deutsche Bank), and other necessary service providers.  (Id. at ¶ 14)

Both Praxi and Cap Cana, S.A. allegedly agreed to use their best efforts to obtain financing for the purchase and development of Las Iguanas.  (Complaint ¶ 14)  Recognizing that obtaining financing was the most immediate critical task that they faced and the only substantial remaining predicate to finalizing the purchase and sale agreement, they agreed to work together to secure that financing from Deutsche Bank.

Praxi alleges that it continued to work with Deutsche Bank in the summer of 2007 in order to reach a definitive financing agreement.  (Complaint ¶ 15)  Due to the exclusivity provision in the Deutsche Bank "Mandate Letter," Praxi did not approach others to seek financing.  Praxi's representatives also communicated with appraisers, architects, interior designers,

8

construction companies, and realtors regarding the project.  Cap
Cana, S.A., in consultation with Praxi, created a business plan
for Las Iguanas.  Deutsche Bank, with the assistance of those
joint venturers, created the financial projections that were
included in that plan.  Accordingly, in reliance on Cap Cana's
promises, Praxi expended substantial efforts and funds in
furtherance of its venture with Cap Cana, S.A.

        According to Praxi, Cap Cana breached its joint venture
agreement with Praxi in late August or early September 2007.
(Rosenberg Exh. A: Complaint at ¶¶ 16, 19)  At that time,
Deutsche Bank persuaded Cap Cana, S.A. to develop Las Iguanas
with Deutsche Bank alone.  (Id. at ¶ 28)  Praxi and Deutsche
Bank, while still purporting to work with Praxi, agreed to
circumvent Praxi and to do business directly with each other to
the exclusion of Praxi.  (Id. at ¶ 16)  Cap Cana, S.A.'s
usurpation of the Las Iguanas opportunity without Praxi was of
course a fundamental and total breach of their joint venture
agreement to exploit Las Iguanas together.  (Id. at ¶¶ 16, 19)

        In consequence of the foregoing allegations, Praxi
asserts five claims for relief.  The first is for breach of
contract against Cap Cana, S.A.  (Rosenberg Exh. A: Complaint at
¶¶ 18-20)  The second, also against Cap Cana, S.A., is for breach
of its fiduciary duties as a joint venture partner.  (Id. at ¶¶
21-23)  The third claim, in the alternative, is for promissory
estoppel in order to recover the relatively modest expenditures

Praxi made in reliance on Cap Cana, S.A.'s promises.[5]  (Id. at ¶¶ 24-26)  Praxi asserts its fourth and fifth claims, for tortious interference with contract and fiduciary duties, against Deutsche Bank.  (Complaint at ¶¶ 27-31)  Those claims are predicated on Deutsche Bank's intentional and knowing inducement of Cap Cana, S.A. to breach its joint venture agreement with and fiduciary duties to Praxi.

## ARGUMENT

I.    **PRAXI HAS STATED A CLAIM AGAINST DEUTSCHE BANK FOR TORTIOUS INTERFERENCE WITH CONTRACT.**

A.    **Pleading Standards for Tortious Interference Claims.**

Claims for tortious interference of contract must "meet the modest standards of notice pleading under Fed.R.Civ.P. 8." Wells Fargo Bank Northwest, N.A. v. Energy Ammonia Transp. Corp., 2002 WL 1343757 at * 2 (S.D.N.Y. 2007).  See also Chronicle Holdings, Ltd. v. Alexander Int'l Holding Corp., 1992 WL 183424 at * 2 (S.D.N.Y. 1992) (same); Sommer v. PMEC Assocs., 1992 WL 196748 at * 4 (S.D.N.Y. 1992).  As Judge Batts recently recited in Selmanovic v. NYSE Group, Inc., 2007 WL 4563431 at * 2 (S.D.N.Y. 2007):

> Federal Rule of Civil Procedure 8(a)(2) provides that civil complaints "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P.

---

[5]    As indicated in the complaint, Cap Cana, S.A. also continues to hold the $1,000,000 that Praxi deposited at the outset of the bidding process, which it obtained from a company affiliated with some family members of one of its managing directors.

10

8(a)(2).  The Supreme Court has explained that
Rule 8(a)(2) requires that a complaint's
"[f]actual allegations must be enough to raise a
right to relief above the speculative level, on
the assumption that all the allegations in the
complaint are true . . ."  <u>Bell Atlantic v.
Twombly</u>, 127 S. Ct. 1955, 1965, (2007).  However,
under Rule 8(a)(2), "[s]pecific facts are not
necessary; the statement need only 'give the
defendant fair notice of what the . . . claim is
and the grounds upon which it rests.'"  <u>Erickson v.
Pardus</u>, 127 S. Ct. 2197, 2200 (2007).

"[A] plaintiff must allege "'only enough facts to state a claim

to relief that is plausible on its face.'"  <u>Barkley v. Olympia</u>

<u>Mortgage Co.</u>, 2007 WL 2437810 at * 9 (E.D.N.Y. 2007), quoting

<u>Bell Atlantic v. Twombly</u>.  <u>See also</u> <u>1st Rochdale Cooperative</u>

<u>Group v. Geltzer</u>, 2008 WL 170410 at * 2 (S.D.N.Y. 2008).

On a motion to dismiss pursuant to Fed.R.Civ.P.

12(b)(6):

the court "assesses the legal feasibility of the
complaint, but does not weigh the evidence that
might be offered to support it."  [citations
omitted]  The court therefore "must accept as true
all of the factual allegations set out in
plaintiff's complaint, draw inferences from those
allegations in the light most favorable to
plaintiff, and construe the complaint liberally."
<u>Gregory v. Daly</u>, 243 F.3d 687, 691 (2d Cir. 2001)
. . .

<u>Selmanovic</u>, 2007 WL 4563431 at * 2.

11

**B.     Praxi Has Alleged The
        Existence and Breach of its
        Contract with Cap Cana, S.A.[5]**

In New York, in order to state a claim for
tortious interference with contract, a plaintiff
must allege four elements: (1) the existence of a
valid contract between the plaintiff and a third
party; (2) defendant's knowledge of the contract;
(3) defendant's intentional inducement of the
third party to breach the contract or otherwise
render performance impossible; and (4) damages to
plaintiff.

Union Carbide Corp. v. Montell N.V., 944 F. Supp. 1119, 1138

(S.D.N.Y. 1996). See also Czech Beer Importers, Inc. v. C. Haven

Imports, LLC, 2005 WL 1490097 at * 7 (S.D.N.Y. 2005).

Deutsche Bank's first argument,[6] that "Praxi has

Failed to Allege the Existence of a Contract," is nothing short

of absurd.  As alleged in the complaint, Cap Cana and Praxi

agreed to the terms of the joint venture in or about early August

2007.  (Id. at ¶ 12)  Praxi alleges those terms in detail at

paragraphs 12-14 of its complaint.  The most fundamental of them

was of course to complete the Las Iguanas purchase and exploit

---

[5]     Praxi analyzes its claims under New York law because
New York law should govern its claims against Deutsche Bank
(Discover Group, Inc. v. Lexmark Int'l, 333 F. Supp.2d 78, 85
(E.D.N.Y. 2004)), Deutsche Bank has relied on New York law
(Merrill Lynch Interfunding v. Argenti, 155 F.3d 113, 121 fn. 5
(2d Cir. 1998)), and it has not shown that and how relevant
Dominican Republic law differs from New York law (Nigeria Charter
Flights Lit., 520 F. Supp.2d 447, 457-58 (E.D.N.Y. 2007)).
Certainly the garbled choice of law provision that Cap Cana, S.A.
included in a bid document does not govern Praxi's tort claims
against Deutsche Banik or its claims against Cap Cana, S.A.
pursuant to a separate joint venture agreement. Drenis v.
Haligiannis, 452 F. Supp.2d 418, 426 (S.D.N.Y. 2006); National
Oil Well Maintenance Co. v. Fortune Oil & Gas, 2005 WL 1123735 at
* 3 (S.D.N.Y. 2005).

[6]     Deutsche Bank memorandum of law at pp. 9-10.

that opportunity together.

The reasoning Deutsche Bank tenders in support of its first argument is plainly defective.  Its assertion that "Praxi cannot refer to a document memorializing the purported joint venture," without so much as a reference to a statute of frauds defense,[7] is laughable.  The same is true of its observation that "Praxi expresses [the joint venture agreement's] attributes in a forward-looking manner, using phrases such as "was to" and "would be."  That form of linguistic construction is of course necessary to describe the terms of executory contracts because they consist of promises to do things in the future, not just memorializations of things that parties already did.[8]  Deutsche Bank's contention, that Praxi "admits that no agreement was in place when Cap Cana exercised its right to cancel the adjudication of the bidding process," is also obviously false.  That latter error apparently results from Deutsche Bank's confusion -- real or feigned -- between the joint venture agreement and the purchase and sale agreement that was to result from the bidding process.

---

[7]     Deutsche Bank brief at p. 9.  The statute of frauds of course does not apply to joint venture agreements.  See Milton Abeles, Inc. v. Creekstone Farms Premium Beef, 2007 WL 1434990 at * 3 & fn. 2 (E.D.N.Y. 2007).

[8]     "[A] prospective business partner's 'promissory statement[s] as to what will be done in the future' . . . give rise . . . to a breach of contract claim . . ." Stewart v. Jackson & Nash, 976 F.2d 86, 89 (2d Cir. 1992).  See also Richbell Inf. Svcs. v. Jupiter Partners, 309 A.D.2d 288, 290-93, 765 N.Y.S.2d 575, 579-80 (1st Dep't 2003) (terms of alleged joint venture and also terms of other agreements described as actions the parties "would" take pursuant to those agreements).

Deutsche Bank fares no better in its argument that Praxi has not alleged a breach of the joint venture agreement. (Deutsche Bank brief at pp. 12-13)  Cap Cana, S.A. breached the joint venture agreement by abandoning the joint venture and usurping the Las Iguanas opportunity for itself together with Deutsche Bank.  (Exh. A: Complaint at ¶¶ 16-17, 19)  A more fundamental and obvious breach can scarcely be imagined.  See e.g. Ackerman v. Landes, 112 A.D.2d 1081, 493 N.Y.S.2d 59 (2nd Dep't 1985) (defendants denied making oral joint venture agreement and "wholly excluded" plaintiffs from venture).[9]  In sum, Praxi does not allege simply that Cap Cana, S.A. and/or Deutsche Bank walked away from negotiations, as Deutsche Bank pretends.  Deutsche Bank's cases relating to that scenario are therefore irrelevant.

C.  **Praxi Has Adequately Alleged that Deutsche Bank Caused Cap Cana, S.A. to Breach The Joint Venture Agreement.**

Some courts have held that in order to state a tortious interference claim, a plaintiff must plead that its contract would not have been breached "but for" the defendant's interference.  Union Carbide, supra, 944 F. Supp. at 1137-38.[10]

_____

[9]  For other examples, see also ESI, Inc. v. Coastal Power Production Co., 995 F. Supp. 419, 434 (S.D.N.Y. 1998) ("excluding and ejecting" plaintiff from venture); Glenmark, Inc. v. Carity, 30 Misc.2d 1065, 221 N.Y.S.2d 330 (S. Ct. N.Y. Co. 1961) (exclusion of venturer before any business done).

[10]  Other courts have questioned whether the plaintiff is even required to allege "but-for" causation.  See e.g. Astor Holdings, Inc. v. Roski, 325 F. Supp.2d 251, 259 & fn. 5 (S.D.N.Y. 2003); B. Lewis Productions, Inc. v. Angelou, 2005 WL 1138474 at * 13 (S.D.N.Y. 2005); Twentieth Century Fox Film Corp.

14

As properly conceived, it is not a difficult requirement to meet. Neither the phrase "but for" nor any other particular language is required to allege or imply that the defendant's conduct caused the plaintiff's contracting counterparty to breach it. <u>Id</u>. at 1138. Indeed, an allegation that the defendant intentionally procured the contract breach implies that the breach would not have occurred absent that procurement or interference. <u>Czech Beer Importers</u>, 2005 WL 1490097 at * 7. The Court should sustain the claim where "it cannot be said that [the breaching counterparty] would have breached the [a]greement with plaintiff[] without [the defendant's] participation." <u>Antonios A. Alevizopoulos and Assocs. v. Comcast Int'l Holdings</u>, 100 F. Supp.2d 178, 187 (S.D.N.Y. 2000).

Gallagher v. Savarese, 2001 WL 1382581 (S.D.N.Y. 2001) is instructive. There the plaintiff boxing manager alleged that the defendant had held himself out as plaintiff's client's manager and purported to enter into a disadvantageous agreement on the client's behalf, for which the client blamed the plaintiff. <u>Id</u>. Judge McKenna denied defendant's motion to dismiss the plaintiff's tortious interference claim, holding that "these facts, if found, are sufficient to raise triable issues of fact concerning whether [defendant] triggered [client's] negative feelings toward plaintiff and subsequent breach of contract." <u>Id</u>. Other judges in this District have sustained tortious

<u>v. Marvel Enterprises, Inc.</u>, 155 F. Supp.2d 1, 18-19 & fn. 26 (S.D.N.Y. 2001).

15

interference claims that were supported by equally thin
allegations.  In <u>Wells Fargo Bank Northwest, N.A. v. Energy
Ammonia Transp. Corp.</u>, <u>supra</u>, 2002 WL 1343757 at * 2, the court
sustained two tortious interference claims where the "factual
predicates" for one were "sparsely stated" and the other was
"predicated on little more than the assertion that the allegedly
improper declaration of default . . . prevented defendants from
fulfilling the terms of the [contract]."  <u>See</u> <u>also</u> <u>Chronicle
Holdings, Ltd. v. Alexander Int'l Holding Corp.</u>, <u>supra</u>, 1992 WL
183424 at *2.

     <u>Union Carbide Corp. v. Montell N.V.</u>, 944 F. Supp. 1119,
shows quite clearly that plaintiffs need not allege causation in
exacting detail to support a tortious interference claim.  There
the court followed and quoted <u>Lane's Floor Coverings, Inc. v.
Ardex, Inc.</u>, 1996 WL 19182 (E.D.N.Y. 1996) as follows:

> Plaintiff properly alleges . . . that at some
> point following [the formation of the] agreement,
> the defendant knowingly interfered with that
> relationship and improperly induced [the third
> party] to breach its agreement with plaintiff.  In
> substance, if not literally, plaintiff's complaint
> alleges that, but for the actions of [defendant],
> [the third party] would not have breached its
> contract with plaintiff.

<u>Union Carbide</u>, 944 F. Supp. at 1138.

     Praxi has sufficiently alleged that Deutsche Bank
caused Cap Cana, S.A. to breach its joint venture agreement with
Praxi.  It alleges that, "instead of undertaking the financing it
purported to be negotiating with Praxi, Deutsche Bank . . .
intentionally persuaded, and thereby induced, Cap Cana, S.A. to .

16

. . breach the joint venture agreement by circumventing Praxi and developing the Cap Cana resort . . . to the exclusion of Praxi." (Exh. A: Complaint at ¶ 28)  It adds that "Cap Cana, S.A. and Deutsche Bank . . . agreed to circumvent Praxi and do business directly with each other . . . to the exclusion of Praxi."  Those parties thereafter negotiated a $500 million debt financing for Cap Cana (id. at ¶¶ 16, 19) which was inconsistent with the joint venture agreement.  Although Praxi does not explicitly assert that Cap Cana, S.A. would have performed its agreement without Deutsche Bank's inducement -- and the financing Deutsche Bank provided, which enabled Cap Cana, S.A. to do so -- that is the obvious implication.  See e.g Czech Beer Importers, 2005 WL 1490097 at * 7 and the other foregoing cases.

        The cases that Deutsche Bank cites are not to the contrary.  In three of them[12] the plaintiffs had alleged that their contracting counterparties had previously committed breaches or attempted to do so, thereby indicating (to those courts, at least) that the defendants' interference did not cause those counterparties' breaches.  Indeed, the court found in Granite Partners that plaintiff's allegations "negate[d] the possibility that the [defendants'] actions were the 'but for' cause for the alleged breaches." 17 F. Supp.2d at 293.  And, as the court explained in Four Finger Art Factory v. Dinicola, 2001

---

[12]    Granite Partners v. Bear, Stearns & Co., 17 F. Supp.2d 275, 293 (S.D.N.Y. 1998), Mina Investment Holdings v. Lefkowitz, 16 F. Supp.2d 355, 359 (S.D.N.Y. 1998), and Special Event Entertainment v. Rockefeller Center, Inc., 458 F. Supp. 72, 78 (S.D.N.Y. 1978).

WL 21248 at * 7 (S.D.N.Y. 2001), in words equally applicable to Praxi's complaint, "this is not a case like <u>Mina Inv. Holdings</u> . . . [on which Deutsche Bank relies] where . . . the party to the contract was already inclined to breach the contract because it had breached it nine times before."  Nor is <u>Crossland Federal Savings Bank v. 62nd and First Assocs.</u>, 1993 WL 410461 (S.D.N.Y. 1993) relevant.  There the defendant's allegations of interference and causation consisted of meaningless gibberish: specifically, that "plaintiff participated in efforts 'to conspire with Cineplex to breach or repudiate its Lease.'"  <u>Id</u>. at * 4.

## II.  PRAXI HAS STATED A CLAIM AGAINST DEUTSCHE BANK FOR TORTIOUS INTERFERENCE WITH FIDUCIARY DUTIES.

### A.  Praxi Has Adequately Alleged that Cap Cana Owes It Fiduciary Duties.

> [T]he "well settled elements of a New York claim for inducing or participating in a breach of fiduciary duty [are] . . . (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach.  Our recognition of this claim in <u>Whitney</u> and prior cases . . . is based upon the New York courts' longstanding acceptance of the principle that "[a]ny one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the cestui que trust."  <u>Wechsler v. Bowman</u>, 285 N.Y. 284, 281 (1941). . .

<u>S & K Sales Co. v. Nike, Inc.</u>, 816 F.2d 843, 847-48 (2d Cir. 1987).

To sustain a claim for participation in breach of fiduciary duties, the "factfinder is [not] required to do more

than find that the third party knew of the breach of duty and participated in it." S & K Sales Co., 816 F.2d at 848. Plaintiff must only plead such a claim sufficiently "to put defendants on notice as to [plaintiff's] claims." Banco de Desarrollo Agropecuario v. Gibbs, 709 F. Supp. 1302, 1307 (S.D.N.Y. 1989).

Praxi has alleged the existence of fiduciary duties because it has alleged a joint venture agreement with Cap Cana, S.A.[13] Deutsche Bank's contention that Praxi has not alleged the existence of fiduciary duties under the law of the Dominican Republic is unsupported and erroneous. For that proposition it relies on Cap Cana, S.A.'s papers. Cap Cana, S.A. simply argues that it did not owe any fiduciary duties because it did not enter into a joint venture agreement with Praxi. (Cap Cana brief at pp. 19-20) Cap Cana, S.A. cites New York law for that proposition. (Id.) On this motion that factual argument is of course worthless. Cap Cana, S.A.'s assertion that "the breach of fiduciary duties must be the 'inherent consequences of a binding contract'"[14] under Dominican law, to the extent intelligible, is consistent with Praxi's fiduciary duty claim. Additionally, because Cap Cana, S.A.'s supporting declaration regarding Dominican law does not establish material differences between it

---

[13]    See e.g. Abeles v. Creekstone Farms Premium Beef, supra, 2007 WL 1434990 at * 5 (E.D.N.Y. 2007); ESI, Inc. v. Coastal Power Production Co., supra, 995 F. Supp. at 434.

[14]    Cap Cana, S.A. brief at pp. 19-20, quoting February 7, 2008 declaration of Luis Miguel Pereyra C. at ¶ 48.

and New York law, the Court should decide the matter under New York law.  Haywin Textile Prods., Inc. v. Int'l finance Invt. and Commerce Bank, 152 F. Supp.2d 409, 413 (S.D.N.Y. 2001).[15]

> **B.    Praxi Has Sufficiently Alleged**
> **Deutsche Bank's Tortious Inter-**
> **ference with Cap Cana's Fiduciary Duties.**

Praxi's allegations of Deutsche Bank's interference with Cap Cana, S.A.'s breach of fiduciary duties are sufficient for the same reasons explained at pages 16-17 above.  As set forth there and in the Background section of this brief, Praxi alleges that Deutsche Bank induced Cap Cana, S.A. to enter into an agreement with it that excluded Praxi from the Las Iguanas opportunity.  Nothing about those allegations is "implausible," as Deutsche Bank repeatedly suggests without explanation or logic.  Deutsche Bank's motivation is obvious, as is the necessary effect of the transaction on Praxi's joint venture agreement.  Ironically, Deutsche Bank's characterization of Praxi's allegations as "baseless" and "unfounded" are, like so many of the assertions in its papers, little more than conclusory buzzwords.  In sum, Praxi has alleged Deutsche Bank's misconduct

---

[15]    See also Nigeria Charter Flights Lit., 520 F. Supp.2d at 457-58; AMC Film Holdings v. Rosenberg, 2006 WL 2827860 at * 4 (E.D.N.Y. 2006); Independent Order of Foresters v. Donaldson, Lufkin & Jenrette Inc., 919 F. Supp. 149, 152 (S.D.N.Y. 1996).

As shown above, the defendants' extensive -- indeed, for practical purposes virtually exclusive -- reliance on New York law should also result in the application of that law to Praxi's claims.  See e.g. Merrill Lynch Interfunding v. Argenti, supra, 155 F.3d at 121 n. 5; Spherenomics Global Contact Centers v. Vcustomer Corp., 427 F. Supp.2d 236, 246-47 (E.D.N.Y. 2006); Connecticut Indemnity Co. v. 21st Century Transport Co., 186 F. Supp.2d 264, 269 (E.D.N.Y. 2002).

in terms more than sufficient to meet the modest standards of Fed.R.Civ.P. 8.

### C.    **Praxi has Not Failed to Allege Causation.**

As the Second Circuit recited in <u>Hannex Corp. v. GMI, Inc.</u>, 140 F.3d 194, 203 (2d Cir. 1998) -- a case on which Deutsche Bank relies[15] -- one of the elements of a claim for tortious interference with fiduciary duties is that "the plaintiff suffered damages as a result of the breach" in which the defendant participated.  "The [causation of damages] element of the claim is clear on its face, and is satisfied upon a showing of pecuniary harm."  <u>Id</u>.

The holdings of some courts, that the plaintiff must show a causal relationship between the defendant's conduct and the plaintiff's harm, do nothing to undermine Praxi's claims. For example, in <u>Bloor v. Carro, Spanbock, London, et al.</u>, 754 F.2d 57 (2d Cir. 1985), which Deutsche Bank cites, the bankruptcy trustee of a corporate debtor asserted a tortious interference claim against a law firm that had drafted SEC filings for the corporate debtor.  The court rejected the trustee's contention that the law firm had through its drafting of those SEC filings enabled the corporation to earn money with which its officers could "perpetrate and maintain" a fraud to the corporation's ultimate detriment.  <u>Id</u>. at 61-62.  Indeed, the court found that the allegation that the corporation earned money in the transaction actually undermined the trustee's assertion that the

---

[15]    Deutsche Bank moving brief at p. 15.

21

transaction had caused loss to the corporation. <u>Id</u>. at 62.
Nothing similar can accurately be said of Praxi's complaint.

Another court held that, regarding the analogous claim
of aiding and abetting a breach of fiduciary duties, the
plaintiff must show that its damage was the "reasonably
foreseeable result of" the defendant's conduct. <u>Pension
Committee v. Banc of America Securities</u>, 446 F.Supp.2d 163, 201-
02 (S.D.N.Y. 2006). (<u>See</u> Deutsche Bank brief at p. 15)
Therefore attorneys, cab drivers, janitors, landlords, and mail
deliverers are normally safe from allegations of participation in
breaches of fiduciary duties absent their deeper involvement in
those breaches.

Praxi's allegations easily meet those causation
requirements. It alleges that Deutsche Bank instigated Cap Cana,
S.A.'s breach and participated in it by entering into a mutually
exclusive agreement with it. Pursuant to the financing
arrangement that it proposed and effected notwithstanding its
knowledge of Praxi's agreement, Cap Cana, S.A. was required to,
and did, breach its fiduciary duties to its co-joint venturer.
Cap Cana, S.A.'s breach was therefore obviously the reasonably
foreseeable result of Deutsche Bank's conduct.

### III. IF THE COURT DEEMS PRAXI'S ALLEGATIONS INSUFFICIENT IN ANY WAY, THEN PRAXI SHOULD BE <u>GIVEN LEAVE TO AMEND ITS COMPLAINT.</u>

Fed.R.Civ.P. 15(a) provides, in pertinent part, that ".
. . a party may amend the party's pleading only by leave of court
or by written consent of the adverse party; and leave shall be

freely given when justice so requires." "A liberal pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)." 3 Moore's Federal Practice at ¶ 15.14[1] (1997). As the Court of Appeals for the Second Circuit stated in <u>Rachman Bag Co.</u> <u>v. Liberty Mutual Ins. Co.</u>, 46 F.3d 230, 234-35 (2nd Cir. 1995), in upholding leave to amend an answer more than four years after commencement of an action:

> . . . Rule 15(a) specifies that "leave shall be freely given when justice so requires." <u>Id</u>. The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is "inconsistent with the spirit of the Federal Rules." <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). Accordingly,
>
> > [i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., etc. -- the leave sought should as the rules require, be "freely given."

<u>See also</u> <u>Nerney v. Valente & Sons Repair Shop</u>, 66 F.3d 25, 28-29 (2nd Cir. 1995) (reversing denial of leave to amend).

In the event that the Court deems Praxi's complaint insufficient in any way, then Praxi should be granted leave to submit an amended complaint. The purported deficiencies of which Deutsche Bank complains consist of lack of details that Praxi can easily add to an amended complaint. Praxi adds details to its allegations of Deutsche Bank's interference at paragraphs 16 to 19 of its draft second amended complaint (Rosenberg Dec. Exh. B). As Deutsche Bank helpfully points out, Praxi has amended the

complaint once.  However, Praxi did not serve its original complaint on the defendants.  Praxi amended that pleading only a week after it filed it and the only substantial change it made was to add Deutsche Bank Securities as a defendant.  Praxi has not previously had any opportunity to add more details to its allegations as the defendants (erroneously) insist is required.

## CONCLUSION

For the foregoing reasons, Deutsche Bank's motion to dismiss the claims against it should be denied.  In the alternative, Praxi should be given leave to file an amended complaint containing any additional detail the Court deems necessary to state a claim against Deutsche Bank.

Dated: February 29, 2008

ALTMAN & COMPANY P.C.

By: _____
    Eric Rosenberg

260 Madison Avenue
22nd Floor
New York, New York 10016
(212) 683-7600

Attorneys for Plaintiff
  Praxi, LLC

24