UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

PRAXI, LLC,

                Plaintiff,

vs.

CAP CANA, S.A., DEUTSCHE BANK A.G. and
DEUTSCHE BANK SECURITIES, INC.,

                Defendants.

Case No. 07 Civ. 9727

---

**SUPPLEMENTAL DECLARATION OF LUIS MIGUEL PEREYRA C.
IN FURTHER SUPPORT OF DEFENDANT CAP CANA, S.A.'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

      I, the undersigned, Luis Miguel Pereyra C., of legal age and a Dominican resident, hereby declare under the penalty of perjury under the laws of the United States of America that what I am herein stating is true and correct.

### I.    BACKGROUND

      1.    This declaration is submitted in further support of the motion to dismiss of Cap Cana, S.A. ("Cap Cana") in Praxi, LLC v. Cap Cana, S.A., Deutsche Bank A.G. and Deutsche Bank Securities, Inc., Civil Action No. 07 Civ. 9727 (the "Action") and in reply to

Praxi's opposition papers, which include: (1) Plaintiff's Memorandum of Law in Opposition to Cap Cana, S.A.'s Motion to Dismiss Claims Against It, (2) Declaration of Darien Dash, (3) Declaration of Eric Rosenberg, (4) Exhibit A: First Amended Complaint, (5) Exhibit B: Second Amended Complaint, (6) Exhibit C: CAP CANA – Summary Basis Bidding Development of Las Iguanas 10/04/2007, (7) Exhibit D: Advertisement for CAP CANA, (8) Exhibit E: Press Release and (9) Exhibit F: Executive Summary and Business Plan (Las Iguanas At Cap Cana).

2. This supplemental declaration examines Dominican law as it relates to the claims articulated by Praxi, LLC ("Praxi" or "Plaintiff") in its opposition papers.

3. I have reviewed the following documents: a) The First Amended Complaint filed by Praxi, b) the Bases Resumida Licitacion Desarrollo De Las Iguanas (the "Tender Specifications"), dated April 10, 2007, c) Praxi's Bid Documents, dated June 8, 2007, d) Praxi's Opposition and Reply papers and all documents attached thereto and e) other materials such as: (i) Dominican Procedural Court (and its amendments), (ii) Dominical Civil Code, and (iii) and other legal text and precedents as cited throughout this Declaration.

4. This declaration is based upon and refers to Dominican law. For its preparation I have reviewed and taken into consideration the statutes, decisions and scholarly works cited in this declaration as well as my general knowledge of Dominican law.

## II. JURISDICTION AND APPLICABLE LAW.

### A. THE FORUM SELECTION CLAUSE

5. Pursuant to the forum selection clause included in the Tender Specifications: "It is expressly understood that, in the event of conflicts or interpretation of the terms and regulations of this agreement, they shall be governed by the laws and law-courts of the Dominican Republic." Spence Dec. Ex. 2 § VIII. The Plaintiff erroneously argues that this clause only pertains to disputes directly concerning the Tender Specifications by omitting the second sentence which states that: "All documents to be executed as a result of this document shall be governed by the laws of the Dominican Republic." Under Dominican law, however, this second sentence broadens the first sentence, making it applicable to any other document that the parties may have entered into related to the tender bid as a result of the same. The terms of the Tender Specifications are clear and require this case to be litigated in the Dominican Republic.

6. Pursuant to Dominican legal precedents, however, even if Plaintiff was correct and only the first sentence of the forum selection clause applied, the case would still have to be heard in the Dominican courts. This is because, under Dominican law, the intent of the parties may be evidenced not only by the language employed for the drafting of a specific clause, but also by all actions in which such intent is further manifested. This criteria has been used by the Dominican Supreme Court in analyzing a venue dispute.[1]

7. Here, pursuant to Dominican law and based upon the allegations contained in the moving papers, as well as the documents submitted to the court in support of those papers, the alleged joint venture commitment, if any, may be interpreted in no other way than as a result

---

[1] Cass. Civil. April 11, 2007. B.J. 1157 (Pags. 59-73).

3

of the Tender Specifications. The purported purpose of the joint venture was the joint development of the Dominican project to be purchased by Praxi pursuant to the terms of the Tender Specifications. Opposition at 5. The forum selection clause demonstrates the intent of the parties to be bound by Dominican laws and courts. Additionally, other actions of the parties manifest the same intent; for example, they executed another agreement, the Escrow Agreement, which also deemed Dominican law and the Dominican courts controlling. As such, under Dominican law, Dominican courts could assert local jurisdiction with respect to Praxi's claims.

8.      Furthermore, based on the ratione personae vel loci criterion (after determining the competent court under the ratione materiae criterion) the basic rules to determine competence of a court considers with respect to personal matters that the competent court shall be the one of jurisdiction in the defendant's place of residence (actor sequitour forum rei principle), as further explained in section C below.

### B. INCONVENIENCE

9.      Praxi's argument that it would be inconvenienced by the burden of litigating outside of its jurisdiction would be rejected by a Dominican court. This is because, as indicated in our Declaration in support of Cap Cana's Motion To Dismiss Praxi's First Amended Complaint, Dominican law exhibits a preference for documentary evidence rather than live witness testimony (similar to other code-based, civil law countries), and even in cases of a commercial nature where witness testimony is more commonly allowed, the witnesses may be heard in one single hearing. Furthermore, in cases where witnesses are required to travel to the Dominican Republic, the judges routinely take into consideration such fact to schedule hearings to the reasonable convenience of the witnesses and also expedite the deposition process in deference of the witness' situation. Given such facts, it may not be necessary for Praxi's

witnesses to travel extensively. Additionally, if the declaration of Eric Rosenberg is correct, this may not be a matter with significant documentary evidence, so Praxi would not be inconvenienced in that way either. Rosenberg Dec. ¶ 8.

10. As to Praxi's claim that it would be inconvenienced because one of its three witnesses does not speak Spanish, Opposition at 12, when judges do allow a party to call and question witnesses in the Dominican Courts, if such witness speaks a language other than Spanish, the court will designate an official interpreter (Intérprete Judicial) to assist the witness with his/her testimony. An official interpreter may also be available to translate into Spanish any documents to be filed as evidence that have been drafted in another language.

### C. THE APPLICATION OF NEW YORK LAW

11. As indicated in my Declaration in support of Cap Cana's Motion To Dismiss Praxi's First Amended Complaint, pursuant to Dominican law, and under the ratione personae vel loci criterion (after determining the competent court under the ratione materiae criterion) the basic rules to determine competence of a court considers that:

  a. With respect to personal matters, the competent court shall be the one of jurisdiction in the defendant's place of reference (actor sequitour forum rei principle); based on the rational presumption that, unless the court decides otherwise, the defendant has committed no wrong doing; hence if the parties are not residing or are domiciled in the same jurisdiction, the costs and inconveniences inherent to a process outside one's jurisdiction shall be borne initially by the plaintiff and not by the defendant;

b. In the case of entities (as defendants), the above mentioned principle applies inasmuch as the competent court shall be the one with jurisdiction over the main domicile of the entity or where the same has a branch or established office.

c. In the event of multiple defendants, the competent court shall be the one with jurisdiction where any of the defendants has its domicile.

d. In connection with mixed issues (civil and commercial matters), the competent court shall be the one with jurisdiction over the litigious object or the defendant's domicile.

e. As a general rule, in the event that the parties have chosen a domicile or applicable jurisdiction, the competent court shall be the one thus chosen by the parties (unless the chosen jurisdiction is not competent based on the rationae materiae criterion or the Functional Competence criterion) or the one with jurisdiction at the location of the defendant's residence.

f. With respect to general commercial issues, rules of competence are basically as established above. However, other competence rules may apply as foreseen by Article 420 of the Civil Procedural Code, which also establishes competence to the courts with jurisdiction over the location where the promise has been made (agreement reached) or where payment should have been made (performance).

12. Here, Praxi either omits or makes oblique reference to performance of the contract and the location of the subject matter of the contract. In principle, the alleged joint venture agreement was (according to Praxi) to be perfected within a corporate vehicle within the Dominican Republic, and the argued purpose of such agreement (its subject matter) was the development of a project in the Dominican Republic. This last fact disabuses Praxi's analysis of the "gravity" of its claim to assert New York law applicability with respect to the joint venture.

13. Based on the applicability of Dominican law to the alleged relationship between the parties as explained above, the Complaint meets the criteria as foreseen by such Dominican law to assert the jurisdiction of the Dominican Courts over the same.

## III. PRAXI'S CLAIMS AGAINST CAP CANA

### A. THE ALLEGED JOINT VENTURE

14. According to Praxi, Cap Cana allegedly breached a supposed joint venture agreement by casting aside the bidding process and ceasing working with Praxi in favor of Deutsche Bank. Opposition at 6. This, according to Praxi, was a repudiation of the joint venture in violation of Cap Cana's "Fiduciary" and "Contractual" duties to Praxi. *Id.*

15. Pursuant to the Tender Specifications, Praxi was to complete the transaction for the acquisition of Las Iguanas within 30 days of the opening of the bids. Complaint ¶ 9. Praxi failed to comply and Cap Cana discretionally granted Praxi an additional 30 day term to execute the sale purchase agreement. Complaint ¶ 11. When Praxi failed to sign the sale purchase agreement, Cap Cana terminated the bidding process. Complaint ¶ 16.

16. Praxi does not claim that Cap Cana's termination of the bidding process with respect to Praxi in favor of other participants in the process was a breach of the Tender Specifications, and Cap Cana's rights pursuant to the same have not been contested by Praxi.

However, Praxi argues that Cap Cana's exercise of such right was a breach of a joint venture agreement purportedly entered between Praxi and Cap Cana for the development of Las Iguanas. Opposition at 6.

### B.    THE CONCEPT OF DOLUS OR BAD FAITH

17.    Pursuant to the criteria of the Dominican Republic Supreme Court "the normal exercise of a right by the party legally entitled to do so, may not give cause to loss and damages,"[2] except where the party claiming loss or damages asserts "dolus" or bad faith.

18.    The concept of dolus would be very important to a Dominican court considering this case under Dominican law. Dolus is basically an intentional fault (action or omission), comparable to bad faith, which entails an intentional action in order to obtain undue benefits from the counterparty. It is also comparable to fraud.[3]

19.    Pursuant to the provisions of Article 1116 of the Dominican Civil Code, dolus may not be presumed; it shall be proved. The court has the discretion to determine, within the parameters of the law and subject to control by the Supreme Court (acting as a Cassation or Appellate Court),[4] whether the facts support a finding of dolus. For example, facts might support a finding of dolus where the actions alleged are so egregious that they could not have been taken absent dolus. However, "the simple affirmations of those that considered themselves a victim of dolus are not enough to prove it and derive benefits in their favor."[5] The alleged victim of dolus

---

[2] Cas. Civ. November 15, 2000, B.J. 1080 (Pags. 108-122).

[3] Planiol, Marcel et Ripert, George, Tratado Práctico de Derecho Civil Frances. Tome VI (Las Obligaciones. Pag. 270-281).

[4] Cas. Civl. Jun 30, 1999, B.J. 1063. (Pags 345-353).

[5] Cas. Civ. May 8, 2002. B.J. 1063. (Pags. 65-72).

shall abide by the provisions of Article 1315 of the Civil Code by alleging facts to support its allegations.

20. In this case, Praxi has not alleged in its Complaint or argued in its papers any action or omission by Cap Cana preventing Praxi from compliance with its obligations under the Tender Specifications. Nor has Praxi argued that pursuant to the alleged joint venture commitment the terms of the Tender Specifications with respect to Praxi's obligations were amended or even partially waived to justify an inappropriate or dolus exercise of Cap Cana's rights to terminate bidding with respect to Praxi.

21. Furthermore, the Dominican Supreme Court has held that, as a matter of principle, "nobody may benefit from its own fault."[6] Consequently, even if a joint venture agreement existed, Cap Cana's exercise of its rights pursuant to the Tender Specifications may not give cause to liability under the alleged joint venture agreement. This is because, as set out in the Complaint, Praxi's failure to comply with the Tender Specifications was due to its inability to perform as agreed pursuant to the terms of the Tender Specifications. Complaint ¶ 16. Here, there is no dolus because there is no allegation, or even a suggestion, of any act or omission by Cap Cana which caused Praxi's breach of its obligations under the Tender Documents or which prevented Praxi's compliance thereunder. Additionally, there is no allegation or suggestion that the terms of the alleged joint venture commitment amended or partially waived Praxi's obligations pursuant to the terms of the Tender Specifications. Thus, there are no allegations to justify a claim of inappropriate conduct or dolus in connection with Cap Cana's exercise of its rights under the Tender Specifications.

---

[6] Cas. Civil. February 25, 1998.

### C. JOINT VENTURE

22. There are no provisions under Dominican law specifically governing joint ventures other than those related to general contractual law and commercial law as related to the formation of companies, partnerships and other legal entities.

23. Pursuant to article 1108 of the Dominican Civil Code, there are four essential elements for the validity of a convention (contract or agreement): (i) consent of the parties, (ii) ability to commit, (iii) object of the commitment and (iv) licit cause of the obligation.

24. *Consent*: With respect to the consent of the parties, Praxi's has not presented proof of Cap Cana's consent to enter into a joint venture or any other commitment other than as indicated in the Tender Specifications. Where the consent is missing the exisitence of a contract may not be asserted. The unilateral statements by Praxi indicating that such joint venture commitment existed are insufficient under Dominican law.

25. *Ability to Commit*: Ability to commit is simply the legal capacity to enter into a contract. This is not a disputed issue.

26. *Object and Licit Cause of the Commitment*: Assuming that a joint venture commitment did exist (which, as provided above, is not the case here), given the fact that the object of the commitment purportedly involved the purchase of Las Iguanas pursuant to the Tender Specifications, Praxi's failure to complete the purchase, due to no fault of Cap Cana, resulted in Praxi's inability to comply with its own commitment to contribute property pursuant to the alleged joint venture. Thus, under Dominican law, there was no longer a licit cause for the purported obligations supposedly assumed by Cap Cana under the joint venture commitment, rendering the alleged commitment invalid as per Article 1131 of the Dominican Civil Code.[7]

---

[7] An obligation without cause, or that is based on false or illicit cause, may not have effect.

10

This would be true unless the joint venture commitment required performance by Cap Cana whether or not Las Iguanas was purchased by Praxi, something not alleged by Praxi, and not possible, given the allegations in the Complaint and Opposition.

27. Furthermore, the interdependence of obligations under a synallagmatic contract (which impose reciprocal obligations to the contracting parties) is a matter of principle under Dominican Republic law. Based on such principle, one party may validly withhold compliance of its obligation when the counterparty has breached its obligations under the agreement, due to the reciprocity between the obligations contracted and the cause from where such obligations derive.[8] In this case, Praxi's failure to purchase Las Iguana, due to no fault of Cap Cana, resulted in Praxi's inability to comply with its commitment to contribute property to the alleged joint venture; hence, even if Praxi had properly asserted the existence of a joint venture with Cap Cana, the interdependence principle would allow Cap Cana to validly withhold compliance of its obligations under the joint venture, if any[9].

28. Given the above indicated facts and pursuant to the documents produced to the court thus far, a Dominican court would not find the existence of a joint venture commitment between the parties and/or the right to claim performance of or demand compensation from Cap Cana pursuant to a breach thereof.

### D. PROMISSORY ESTOPPEL

29. Under Dominican law, there are no specific actions for promissory estoppel, but the same may be covered by civil liability actions pursuant to section 1382 of the

---

[8] Cas. Civ. October 24, 2001 B.J 1091 (Pag. 212-222); Cas Civ. June 1999, B.J. 1063 (Pags 334-344); Cas. Civ. May 8, 2002. B.J. 1063. (Pags. 65-72).

[9] Non Adimpleti Contractus Exception.

11

Dominican Civil Code. As the issues herein addressed refer to Dominican general Civil Law and Civil Procedural Law matters, the same principles that apply to the alleged joint venture may also apply to the promissory estoppel claim.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 19th day of March of 2008.

Luis Miguel Pereyra C.